JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Hogarth, Susan J.

**DEFENDANTS**

Brinson Bell, Karen; Hirsch, Alan; Carmon, Jeff; Eggers, Stacy IV; Lewis, Kevin N.; O'Duffy Millen, Siobhan; Brinton, ☐

**(b)** County of Residence of First Listed Plaintiff    Raleigh
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
         THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
James M. Dedman IV
GALLIVAN WHITE & BOYD P.A.
6805 Carnegie Blvd, Ste. 200   ☐

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
      Plaintiff

☒ 3   Federal Question
      *(U.S. Government Not a Party)*

☐ 2   U.S. Government
      Defendant

☐ 4   Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Violation of First Amendment right to freedom of speech

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE          DOCKET NUMBER

DATE
Aug 22, 2024

SIGNATURE OF ATTORNEY OF RECORD
/s/ James M. Dedman IV

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

SUSAN JANE HOGARTH,

    *Plaintiff,*

 v.

KAREN BRINSON BELL, in her official capacity as Executive Director of the North Carolina State Board of Elections;

ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections;

JEFF CARMON, in his official capacity as Secretary of the North Carolina State Board of Elections;

STACY EGGERS IV, KEVIN N. LEWIS, and SIOBHAN O'DUFFY MILLEN, in their official capacities as Members of the North Carolina State Board of Elections;

DANIELLE BRINTON, in her official capacity as Investigator for the North Carolina State Board of Elections;

OLIVIA MCCALL, in her official capacity as Director of the Wake County Board of Elections;

ERICA PORTER, in her official capacity as Chair of the Wake County Board of Elections;

ANGELA HAWKINS, in her official capacity as Secretary of the Wake County Board of Elections;

Case No.: 5:24-cv-481

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

GREG FLYNN, GERRY COHEN, and
KEITH WEATHERLY, in their official
capacities as Members of the Wake
County Board of Elections;

LORRIN FREEMAN, in her official
capacity as Wake County District
Attorney; and

JOSH STEIN, in his official capacity as
North Carolina Attorney General;

*Defendants.*

## INTRODUCTION

1. A picture is worth a thousand words. That's why Susan Hogarth took a photo with her March 2024 North Carolina primary ballot and shared her "ballot selfie" on social media to show her thousands of followers her pride in voting for her chosen candidates.



2.    But North Carolina makes taking and sharing this picture a crime.

3.    North Carolina's state and county boards of elections regularly warn the public that ballot selfies are illegal and investigate voters who do nothing more than take and share these pictures, even when they know voters share ballot selfies to do nothing more than express "voting pride."

4.    In fact, one week after the 2024 primary election, the North Carolina State Board of Elections sent Hogarth a letter threatening criminal prosecution for taking and sharing her ballot selfie.

5.    In all, five provisions of North Carolina law criminalize ballot selfies, even though the photos are a "ubiquitous" way for voters to express their "voting pride." *Rideout v. Gardner*, 838 F.3d 65, 73 (1st Cir. 2016).

6.    Four of these five provisions outlaw taking or sharing photographs that contain an image of a completed ballot. These content-based speech restrictions are presumptively unconstitutional under the First Amendment. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). As applied to ballot selfies, the provisions cannot survive strict scrutiny to overcome this presumption because they are not "narrowly tailored to further a compelling government interest." *Id.* at 172.

7.    And North Carolina goes even further, with a fifth provision prohibiting photographs of voters—including voters' selves—in the room where voting takes place without permission from an election official. Because this provision is also a content-based speech restriction and lacks "objective, workable standards" to guide

officials' discretion, it likewise violates the First Amendment as applied to ballot selfies. *See Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018).

8.     Hogarth brings this lawsuit to protect her and all North Carolina voters' First Amendment right to express their political beliefs through taking and sharing a ballot selfie.

## THE PARTIES

*Plaintiff*

9.     Susan Jane Hogarth is a resident and registered voter of Wake County, North Carolina. In the last ten years, she has voted in nearly every national election. She has taken and shared ballot selfies and intends to do so again. She takes and shares ballot selfies to, among other reasons, promote her preferred candidates, challenge the narrative that voters can only vote for major party candidates, express her pride in participating in the electoral process, and express her disagreement with North Carolina's ban on ballot selfies.

10.     On March 5, 2024, Hogarth took a ballot selfie in the voting booth, which she then shared on social media. A week later the State Board threatened Hogarth with a "Class 1 Misdemeanor" prosecution and demanded that she take down the photo.

*Defendants*

11.     The North Carolina State Board of Elections supervises the State's primary and general elections. State Board members are required to "distribute to the electorate such materials explanatory of primary and election laws and

procedures as the State Board shall deem necessary," N.C. Gen. Stat. § 163-22(b); advise county election boards on how to conduct elections and "compel observance of the requirements of the election laws by county boards of elections and other election officers," N.C. Gen. Stat. § 163-22(c); investigate violations of election laws, N.C. Gen. Stat. §§ 163-22(d), 163-273, 163-274, 163-278; and report violations of election laws for prosecution, N.C. Gen. Stat. §§ 163-22(d), 163-278. The State Board enforces the State's ban on ballot selfies by issuing press releases telling voters that photographing a completed ballot is illegal, investigating voters who take and share ballot selfies, and referring these voters to county prosecutors—even when they know voters take and share the photos to do no more than express their "voting pride."

12. Defendant Karen Brinson Bell is the Executive Director of the North Carolina State Board of Elections. She is North Carolina's chief elections official and responsible for staffing, administration, and execution of State Board decisions and orders. N.C. Gen. Stat. §§ 163-82.2, 163-27(c). Brinson Bell warned voters in press releases coinciding with the March 2020 and November 2020 elections that taking ballot selfies with a completed ballot is illegal.

13. Defendant Alan Hirsch is the Chair of the North Carolina State Board of Elections. The Chair of the State Board is responsible for investigating violations of North Carolina election law and has the power to issue subpoenas, summon witnesses, and compel the production of evidence on behalf of the State Board. N.C. Gen. Stat. §§ 163-20(c), 163-23.

14.     Defendants Jeff Carmon, Stacy Eggers IV, Kevin N. Lewis, and Siobhan O'Duffy Millen are members of the North Carolina State Board of Elections. Defendant Carmon is the Secretary of the State Board. Each is responsible for investigating violations of North Carolina election law and has the power to issue subpoenas, summon witnesses, and compel the production of evidence in the Chair's absence. N.C. Gen. Stat. §§ 163-20(c), 163-23.

15.     Defendant Danielle Brinton is a State Board investigator. Investigator Brinton wrote the March 13, 2024 letter to Hogarth demanding Hogarth take down the social media post containing her March 5, 2024 ballot selfie or face criminal prosecution.

16.     The Wake County Board of Elections, through its members, issues instructions to guide elections officers and voters; appoints all elections officers including chief judge, judges, and assistants; investigates violations of election laws; and reports violations to the State Board. N.C. Gen. Stat. § 163-33. It also appoints a director and may delegate responsibilities to its director. N.C. Gen. Stat. § 163-35.

17.     Defendant Olivia McCall is the Director of the County Board. The County Board appointed McCall as Director in 2023. She has authority to establish election precincts and voting locations, appoint precinct officials including chief judge, judges, and assistants, investigate violations of North Carolina election law, and report violations to the State Board.

18.     Defendant Erica Porter is the Chair of the County Board. She is responsible for investigating violations of North Carolina election law and reporting violations to the State Board.

19.     Defendants Angela Hawkins, Greg Flynn, Gerry Cohen, and Keith Weatherly are members of the County Board. Defendant Hawkins is the Secretary of the County Board. County Board members enforce the State's ban on ballot selfies by appointing chief judges of precincts, investigating violations of North Carolina election law and reporting violations to the State Board.

20.     Lorrin Freeman is the Wake County District Attorney. She is responsible for "prosecut[ing] in a timely manner in the name of the State all criminal actions and infractions requiring prosecution in the superior and district courts of the district attorney's prosecutorial district." N.C. Gen. Stat. § 7A-61. The Wake County District Attorney has legal authority and responsibility to "initiate prosecution and prosecute any violations of" North Carolina's election laws, including the laws prohibiting ballot selfies. N.C. Gen. Stat. § 163-278.

21.     Josh Stein is the North Carolina Attorney General. Under North Carolina statute, the Attorney General has legal authority to prosecute ballot selfie cases upon district attorney request. N.C. Gen. Stat. § 114-11.6.

22.     At all relevant times, all Defendants were acting under color of state law.

23.     All Defendants are sued in their official capacity only.

## JURISDICTION

24.    This action arises under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiff Hogarth's First Amendment rights.

25.    Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction).

26.    Hogarth seeks declaratory and injunctive relief against the Defendants' enforcement of North Carolina statutes that, as applied, outlaw ballot selfies. Hogarth also asks the Court to declare that Investigator Brinton's March 13, 2024 letter violated the First Amendment and to enjoin the State Board Defendants from taking any action against Hogarth related to her March 5, 2024 ballot selfie.

27.    This Court has authority under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to decide this dispute and award relief because it presents an actual case or controversy within the Court's jurisdiction.

## VENUE

28.    Venue is proper in the Eastern District of North Carolina, Western Division, under 28 U.S.C. § 1391(b)(1) because each of the Defendants perform their official duties in Raleigh, North Carolina. In addition, on information and belief, at least one of the Defendants resides in this District and all Defendants reside in North Carolina.

29.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Hogarth's claims occurred within this District.

<u>**FACTUAL ALLEGATIONS**</u>

**Five Provisions of North Carolina Law Ban Ballot Selfies.**

30.     Since the proliferation of cell phone cameras, "ballot selfies"— voters' photos of their own completed ballots or of themselves in the voting booth—have become a popular form of political speech.

31.     Now legal in 31 states, ballot selfies "have taken on a special communicative value: they both express support for a candidate and communicate that the voter has in fact given his or her vote to that candidate." *Rideout*, 838 F.3d at 75.

32.     Nevertheless, five provisions of North Carolina law prohibit taking or sharing ballot selfies.

33.     Four of the five provisions ban taking or sharing a photograph of a completed ballot (the "Ballot Photography Provisions").

34.     First, N.C. Gen. Stat. § 163-166.3(c) prohibits photographing a completed ballot.

35.     N.C. Gen. Stat. § 163-166.3(c) states: "Photographing Voted Ballot Prohibited. – No person shall photograph, videotape, or otherwise record the image of a voted official ballot for any purpose not otherwise permitted under law."

36.     Second, N.C. Gen. Stat. § 163-273(a)(1) makes it a Class 2 misdemeanor with possible jail time for a voter to show their own ballot to anyone else.

37.     N.C. Gen. Stat. § 163-273(a)(1) states: "Any person who shall, in connection with any primary or election in this State, do any of the acts and things declared in this section to be unlawful, shall be guilty of a Class 2 misdemeanor. It

shall be unlawful: (1) For a voter, except as otherwise provided in this Chapter, to allow his ballot to be seen by any person."

38.     Third, N.C. Gen. Stat. § 163-165.1(e) makes it a Class 1 misdemeanor with possible jail time for anyone with access to an electronic record of a completed ballot to disclose the contents of the ballot.

39.     N.C. Gen. Stat. § 163-165.1(e) states:

Voted ballots and paper and electronic records of individual voted ballots shall be treated as confidential, and no person other than elections officials performing their duties may have access to voted ballots or paper or electronic records of individual voted ballots except by court order or order of the appropriate board of elections as part of the resolution of an election protest or investigation of an alleged election irregularity or violation. Voted ballots and paper and electronic records of individual voted ballots shall not be disclosed to members of the public in such a way as to disclose how a particular voter voted, unless a court orders otherwise. Any person who has access to an official voted ballot or record and knowingly discloses in violation of this section how an individual has voted that ballot is guilty of a Class 1 misdemeanor.

40.     Fourth, N.C. Gen. Stat. §163-274(b)(1) specifies that disclosing how an individual voted, as described in § 163-165.1(e) is a Class 1 misdemeanor.

41.     N.C. Gen. Stat. § 163-274(b)(1) states, in relevant part: "Any person who, in connection with any primary or election in this State, violates any provision of this subsection is guilty of a Class 1 misdemeanor. It shall be unlawful to do any of the following: (1) For any person who has access to an official voted ballot or record to knowingly disclose in violation of G.S. 163-165.1(e) how an individual has voted that ballot."

42.    The Ballot Photography Provisions prohibit voters from taking or sharing photos of completed ballots anywhere, anytime—whether they voted in-person or absentee.

43.    The Ballot Photography Provisions include no exceptions for voters' photos of their own ballots.

44.    A fifth statutory provision, N.C. Gen. Stat. § 163-166.3(b), prohibits photographing voters in the voting enclosure without permission from both the voter and an election official—unless the voter is a political candidate (the "Voting Enclosure Provision").

45.    N.C.  Gen.  Stat.  § 163-166.3(b)  states: "Photographing Voters Prohibited. – No person shall photograph, videotape, or otherwise record the image of any voter within the voting enclosure, except with the permission of both the voter and the chief judge of the precinct. If the voter is a candidate, only the permission of the voter is required."

46.    The "voting enclosure" is broadly defined as the room within the polling place where voting takes place. N.C. Gen. Stat. § 163-165(9).

47.    County boards appoint the "chief judge of the precinct," who can deny permission to take a photo of a voter for any reason.

48.    The Voting Enclosure Provision makes no exceptions for ballot selfies—voters' photos of themselves in the voting enclosure.

**Hogarth Takes a Ballot Selfie and Shares It on Social Media.**

49. Plaintiff Susan Hogarth, like many Americans, expresses her pride in voting and who she voted for by taking ballots selfies and sharing them on social media.

50. Hogarth has taken and shared ballot selfies in past elections.

51. Hogarth takes and shares ballot selfies to:

   (a) Promote the candidates she typically votes for;

   (b) Show voters they can vote for third-party candidates;

   (c) Challenge the narrative that voters can only vote for major party candidates;

   (d) Encourage potential voters to vote;

   (e) Commemorate her vote for herself and for posterity;

   (f) Express her personal pride in participating in the electoral process; and

   (g) Express her disagreement with North Carolina's ban on ballot selfies.

52. Hogarth's assigned precinct for primary and general elections is Precinct 18-04, in Raleigh, North Carolina.

53. On March 5, 2024, Hogarth went to Yates Mill Elementary School, her precinct's polling place, to vote in the North Carolina primary election.

54. From the time Hogarth arrived at her polling place until the time she left, no more than three other voters entered the voting enclosure.

55.     Hogarth received a paper ballot and entered a voting booth, a section of

a table separated from other voters by a privacy screen.

56.     Hogarth then cast her votes for president and governor by filling the

ovals next to the names of her preferred candidates.

57.     Using her cell phone camera, Hogarth then took a photograph of herself

in the voting booth, holding up her ballot to show who she voted for:



58.     Hogarth's ballot selfie also captured a sign in the voting booth

prohibiting photography.

59.     Taking the photo took approximately 45 seconds.

60.     Hogarth then submitted her ballot and left the polling place.

61.     No one had to wait to access a voting booth while Hogarth voted.

62.     No poll worker notified Hogarth that her time in the booth had expired.

63.     No poll worker notified Hogarth that she was taking too long to exit the

voting booth.

64.     No one at the polling place that day said anything to Hogarth about taking a photograph of her completed ballot or of herself in the voting enclosure.

65.     Susan asked no one at the polling place for permission to take her ballot selfie.

66.     Minutes after Hogarth left the polling place, she shared her ballot selfie by posting it on X (the social network formerly known as Twitter):



67.     In her post, Hogarth wrote above her ballot selfie: "(1) Laws against #ballotselfie are bullshit. (2) I guess this is my endorsement for @ChaseForLiberty and @FireTheUniparty."

68.     Hogarth's post identified the candidates she voted for by their usernames on X.

69.     "@ChaseForLiberty" is Chase Oliver, the 2024 Libertarian Party presidential candidate.

70.    "@FireTheUniparty" is Mike Ross, the 2024 North Carolina Libertarian Party gubernatorial candidate.

71.    To date, Hogarth's ballot selfie post has been viewed 2,896 times, 87 X users have "liked" the post, and 23 X users have either reposted or quoted the post.

**The State Board Demands Hogarth Remove Her Ballot Selfie, Threatening Criminal Prosecution.**

72.    Two weeks later, Hogarth received a letter dated March 13, 2024 from State Board Investigator Danielle Brinton. A true and accurate copy of the State Board's Letter is attached as Exhibit A.

73.    The single-page letter warns Hogarth four times that photographing a completed ballot is illegal.

74.    The letter also threatens Hogarth with criminal prosecution for taking and sharing her ballot selfie.

75.    Investigator Brinton advises that someone forwarded Hogarth's March 5, 2024 ballot selfie to the State Board.

76.    Investigator Brinton next warns Hogarth that she committed a crime by photographing her completed ballot in violation of N.C. Gen. Stat. § 163-166.3(c).

77.    Investigator Brinton then quotes N.C. Gen. Stat. § 163-166.3(c) in its entirety.

78.    Investigator Brinton also warns Hogarth that sharing her ballot selfie on X violated the law.

79.    Investigator Brinton then threatens Hogarth with criminal consequences.

80. Investigator Brinton calls Hogarth's ballot selfie a "violation[] of election laws" that she has a duty to investigate.

81. She then warns, for the fourth time, that "photographing a voted ballot is prohibited by law," adding that it is "punishable as a Class 1 Misdemeanor." Ex. A.

82. North Carolina's Class 1 misdemeanors are criminal offenses punishable by fines, probation, and/or jail time. N.C. Gen. Stat. § 15A-1340.23.

83. Investigator Brinton closes her letter by demanding Hogarth take down her March 5, 2024 ballot selfie X post.

**The State Board Warns Voters That Photographing Their Ballots Is Illegal, Investigates Reports of Ballot Selfies, and Refers Ballot Selfies to District Attorneys for Prosecution.**

84. The State Board knows taking and sharing ballot selfies is expressive activity.

85. As State Board Executive Director Brinson Bell said ahead of the March 2020 primary election: "We understand wanting to photograph yourself voting, especially with the popularity of selfies . . . However, there are legal ways to display your voting pride, such as wearing your 'I Voted' sticker or taking a picture outside of the precinct."

86. The State Board repeatedly warns voters that taking ballot selfies is illegal.

87. The State Board warns voters in press releases at election time that taking ballot selfies is illegal.

88. The State Board warns voters on its website that taking ballot selfies is illegal.

89.     The State Board warns voters on social media that taking ballot selfies is illegal.

90.     The State Board investigates reports of ballot selfies.

91.     Between March 2016 and March 2024, the State Board investigated at least 50 reports of voters photographing completed ballots from primary and general elections.

92.     The State Board has investigated ballot selfies taken in voting enclosures.

93.     The State Board has investigated ballot selfies taken outside voting enclosures.

94.     The State Board has investigated ballot selfies taken with absentee ballots.

95.     The State Board has investigated ballot selfies based on reports from county election officials, candidates for office, and members of the public, among others.

96.     State Board investigators have conducted their own reviews of posts North Carolina voters shared on social media, to identify ballot selfies for investigation.

97.     The State Board refers individuals who have taken or shared photos of completed ballots to district attorneys for criminal prosecution.

**The County Board Warns Voters That Ballot Selfies Are Illegal and Reports Election Law Violations to the State Board.**

98.     Like the State Board's website, the County Board's website warns voters that photographing a completed ballot is illegal.

99.     The County Board's website warns voters that it is illegal to photograph a voter in the voting enclosure without permission from an election official.

100.     During election cycles from November 2018 through March 2024, officials from at least eight different North Carolina county boards sent reports of voters photographing completed ballots to the State Board.

101.     On November 8, 2022, David Sims, then director of the County Board, reported a Wake County voter's violation of North Carolina's ban on photographing completed ballots to the State Board.

102.     Sims reported a photo he had seen on Facebook, of a voter's minor daughter filling out the voter's midterm election ballot.

103.     Sims reported the photo as a violation of North Carolina's ban on photographing a completed ballot and not as a violation of any other election law.

104.     During the March 2024 primary election cycle, at least two other county boards submitted reports of voters photographing completed ballots to the State Board.

**Hogarth Will Not Take Down Her Ballot Selfie and Will Continue Taking and Sharing Ballot Selfies in the Future.**

105.     Hogarth has not taken down her March 5, 2024 X post sharing her ballot selfie from the March 5 primary election.

106.     She does not intend to take down her March 5, 2024 X post.

107. Hogarth intends to vote in future elections in Wake County: on November 5, 2024, March 3, 2026, November 3, 2026, and beyond.

108. In past elections, Hogarth has voted early and on other occasions she has voted on election day.

109. Hogarth votes in person when she is able.

110. She will vote absentee if she is unable to appear at the polling place in person.

111. Hogarth intends to take ballot selfies with her completed ballot in future elections despite the State's threatened criminal prosecution.

112. Hogarth intends to take ballot selfies with her completed ballot in future elections, whether she votes in person or via absentee ballot.

113. She also intends to share those photographs on X or other social media platforms.

**Hogarth Will Vote for Herself in the November 5, 2024 Election and Plans to Take and Share a Ballot Selfie That Day.**

114. Hogarth is a member and past Chair of the Libertarian Party of North Carolina.

115. In past elections, Hogarth has actively supported Libertarian Party candidates up and down the ballot by appearing on radio and television as a candidate surrogate, promoting candidates on social media, handing out flyers on election day and, of course, voting for them.

116. On November 5, 2024, Hogarth will appear as the Libertarian Party candidate for State Senate on ballots for North Carolina State Senate District 13.

117. North Carolina State Senate District 13 is in Wake County.

118. Hogarth intends to vote in person on November 5, 2024.

119. Hogarth intends to vote for all the Libertarian Party candidates that will appear on her November 5, 2024 general election ballot.

120. She also intends to vote for herself.

121. After she votes for herself, Hogarth intends to take a photograph of herself in the voting booth, holding her completed ballot so her vote can be seen.

122. Hogarth also intends to photograph herself with the portion of her ballot showing her vote for Libertarian Party presidential candidate Chase Oliver.

123. To commemorate and celebrate the occasion, she plans to share her ballot selfie with family and friends, and on social media.

## INJURIES TO PLAINTIFF

124. North Carolina's ban and Defendants' policies implementing it and their active enforcement of it forces Hogarth to choose to either take and share ballot selfies under the threat of criminal prosecution or to self-censor by forgoing expressing herself as such.

125. North Carolina's five statutory provisions banning ballot selfies deprive Hogarth and other voters of their constitutional right to express their core political beliefs through taking and sharing ballot selfies.

126. The four Ballot Photography Provisions chill the First Amendment-protected expression of a reasonable person of ordinary firmness by prohibiting voters from taking and sharing a ballot selfie—a photo of themselves with their completed ballot—because criminal penalties deter a reasonable person of ordinary firmness.

127. The Voting Enclosure Provision chills the First Amendment-protected expression of a reasonable person of ordinary firmness by prohibiting voters from taking pictures of themselves in the voting enclosure without permission from an election official.

128. Each of these five statutory provisions place Hogarth and other voters in immediate risk of criminal prosecution when they engage in First Amendment-protected expression by taking and sharing ballot selfies.

129. The State Board Defendants' March 13, 2024 letter threatening Hogarth with criminal prosecution for taking a ballot selfie further burdens Hogarth's First Amendment-protected expression.

130. The State Board Defendants' March 13, 2024 letter threatening Hogarth with criminal prosecution further burdens Hogarth's First Amendment-protected expression by demanding she remove her March 5, 2024 ballot selfie from X.

131. Absent prospective injunctive relief, Hogarth faces an ongoing and credible threat of prosecution for her March 5, 2024 ballot selfie.

132. Hogarth also faces a credible threat of prosecution if she takes and shares a ballot selfie during the upcoming November 2024 election and subsequent elections, as she plans to do.

133. The State Board's March 13, 2024 letter to Hogarth threatening criminal prosecution, the State Board's and County Board's consistent warnings to voters that it is illegal to take ballot selfies, and the State Board's and County Board's

investigations into and referrals for prosecution of past incidents of ballot selfies make this threat of prosecution highly credible.

134. Hogarth seeks declaratory and injunctive relief because she plans to continue to take and share ballot selfies to promote the lesser-known candidates she typically votes for, show voters they can vote for third-party candidates, challenge the narrative that voters can only vote for major party candidates, encourage potential voters to vote, commemorate her vote for herself and posterity, express her personal pride in participating in the electoral process, and express her disagreement with North Carolina's ban on ballot selfies.

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

### FIRST CAUSE OF ACTION
### The Ballot Photography Provisions Violate the First Amendment
### (As-Applied Challenge Against All Defendants)

135. Hogarth re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

136. The First Amendment provides "Congress shall make no law . . . abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

137. "The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010).

138.   Ballot selfies have become a popular way for voters to express their support for their preferred candidates. As the First Circuit explained, ballot selfies "both express support for a candidate and communicate that the voter has in fact given his or her vote to that candidate." It is therefore no surprise that they "have taken on a special communicative value." *Rideout*, 838 F.3d at 75.

139.   The First Amendment protects the "creation of information" just "as much . . . as its dissemination." *PETA v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 829 (4th Cir. 2023).

140.   The First Amendment therefore protects both taking and sharing ballot selfies.

141.   The four Ballot Photography Provisions, N.C. Gen. Stat. §§ 163-166.3(c), 163-273(a)(1), 163-165.1(e), and 163-274(b)(1), burden Hogarth's exercise of her First Amendment freedoms by prohibiting or criminalizing her protected expression.

142.   The State Board warned in its March 13, 2024 letter that Hogarth committed a Class 1 Misdemeanor by taking and sharing her ballot selfie.

143.   The Ballot Photography Provisions make no exception for a voter taking or sharing a picture of their own completed ballot.

144.   The Ballot Photography Provisions make it illegal for voters to even take and share ballot selfies of absentee ballots taken in the comfort of their own homes.

145.   The Ballot Photography Provisions "single[] out specific subject matter for differential treatment." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S.

610, 619 (2020). Specifically, they outlaw taking or sharing a photograph only if it contains an image of a completed ballot.

146.    The Ballot Photography Provisions are therefore content-based restrictions on speech, targeting "the topic discussed or the idea or message expressed" and are "presumptively unconstitutional." *Reed*, 576 U.S. at 163.

147.    Content-based speech restrictions are subject to strict scrutiny. *Id.* at 163–64.

148.    Defendants cannot meet their burden to prove the Ballot Photography Provisions are narrowly tailored to further a compelling government interest.

149.    The State Board has claimed the Ballot Photography Provisions further an interest in preventing vote-buying schemes.

150.    To survive strict scrutiny, North Carolina must demonstrate that its concerns are "real, not merely conjectural, and that [its laws] alleviate these harms in a direct and material way." *Ross v. Early*, 746 F.3d 546, 556 (4th Cir. 2014) (cleaned up).

151.    The Ballot Photography Provisions are not narrowly tailored to the prevention of vote buying because they curtail more protected speech than is necessary to accomplish that goal.

152.    The Ballot Photography Provisions make it illegal for voters to take and share ballot selfies that have no connection to vote buying.

153.    The Ballot Photography Provisions prohibit ballot selfies that logically cannot have a connection to vote buying. Hogarth, for example, intends to photograph

her completed ballot showing that she voted for herself for State Senate in November 2024. It is irrational to suggest that she could be bribed to vote for herself.

154. The State Board treats taking a ballot selfie as a distinct offense regardless of whether there is any connection to vote-buying schemes.

155. The State thus impermissibly bans "large quantities of political expression" based on "[t]he mere possibility [of] . . . misconduct" *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 304 (4th Cir. 2008).

156. In doing so, the Ballot Photography Provisions curtail more speech than necessary.

157. The Ballot Photography Provisions are not narrowly tailored to the prevention of vote buying because there are less restrictive means North Carolina could use to prevent vote-buying schemes.

158. Instead of banning ballot selfies, North Carolina could enforce existing criminal laws against buying or selling votes as a less speech-restrictive means of achieving its professed goal.

159. This is the "normal method of deterring unlawful conduct" rather than punishing "speech by a law-abiding possessor of information." *Bartnicki v. Vopper*, 532 U.S. 514, 529–30 (2001).

160. Both state and federal laws already ban vote buying and selling. *See* N.C. Gen. Stat. § 163-275(2); 18 U.S.C § 597.

161.    Hogarth plans to take a ballot selfie depicting herself in the voting booth holding her completed ballot for the general election on November 5, 2024, and in every future election she votes in.

162.    Hogarth also plans to share those ballot selfies on social media.

163.    As applied to ballot selfies, the Ballot Photography Provisions objectively chill the constitutionally protected speech of a "person of ordinary firmness." *Cooksey v. Futrell*, 721 F.3d 226, 236–37 (4th Cir. 2013).

164.    As a direct and proximate cause of the Ballot Photography Provisions, Hogarth has suffered and continues to suffer irreparable injury, including the burdening of her First Amendment-protected right to take and share ballot selfies on social media free from government interference. *See N.C. Right to Life, Inc.*, 168 F.3d at 710; *Rideout*, 838 F.3d at 75.

165.    The deprivation of constitutional rights is an irreparable injury per se. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

166.    Hogarth is entitled to a declaration under 28 U.S.C. § 2201 that the Ballot Photography Provisions violate the First Amendment as applied to ballot selfies.

167.    Hogarth is entitled to injunctive relief under 42 U.S.C. § 1983 preventing the Defendants from enforcing the Ballot Photography Provisions as applied to ballot selfies. *See PETA*, 60 F.4th at 838 (invalidating recording ban as applied to all newsgathering activities).

168.   Hogarth has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to her First Amendment rights.

169.   Without declaratory and injunctive relief against the Ballot Photography Provisions, Defendants' actions and enforcement authority to suppress Hogarth's First Amendment expressive rights will continue, and Hogarth will suffer *per se* irreparable harm, indefinitely.

**SECOND CAUSE OF ACTION**
**The Voting Enclosure Provision Violates the First Amendment**
**(As-Applied Challenge Against All Defendants)**

170.   Hogarth re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

171.   The First Amendment protects the taking and sharing of ballot selfies. *See supra* ¶¶ 135–39.

172.   The Voting Enclosure Provision requires voters to receive permission from the chief judge of a precinct to take a photograph of themselves in the voting enclosure, unless they are a political candidate.

173.   The Voting Enclosure Provision makes no exception for ballot selfies.

174.   Any restriction on protected speech in a limited or "non-public" forum like a polling place must be both reasonable and viewpoint neutral. *Mansky*, 585 U.S. at 19.

175.   The Voting Enclosure Provision is not a reasonable regulation on speech in a non-public forum because it provides no "objective, workable standards" to guide

the chief judge in deciding whether to give a voter permission to take a selfie and to ensure "reasoned application." *Id.* at 22.

176.   The Constitution does not permit government officials to exercise this kind of "arbitrary discretion" to suppress speech. *Id.*

177.   The Voting Enclosure Provision is also unreasonable because it makes an arbitrary and irrational distinction between candidates and any other voter wanting to take a ballot selfie which does not further the "purpose of the forum." *Id.* at 13; *see also Multimedia Pub. Co. of S.C. v. Greenville-Spartanburg Airport Dist.*, 991 F.2d 154, 159 (4th Cir. 1993).

178.   There is no legitimate reason why Hogarth needed consent from the chief judge of the precinct to take a ballot selfie on March 5, 2024, but will not need that consent in November 2024 just because she will now be a candidate. *See The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 577 (4th Cir. 2010) (holding government must have a valid justification for impairing speech in a nonpublic forum).

179.   Hogarth plans to take and share ballot selfies of herself in the voting enclosure holding her completed ballot on November 5, 2024, and in every future election she votes in.

180.   Hogarth will be a candidate on November 5, 2024, but she plans to take ballot selfies in future elections in which she will not be a candidate and will therefore be required to first seek permission from the chief judge of her precinct, who can grant or deny that permission for any reason.

181.  As applied to ballot selfies, the Voting Enclosure Provision objectively chills the constitutionally protected speech of a "person of ordinary firmness." *Cooksey*, 721 F.3d at 237.

182.  As a direct and proximate result of the Voting Enclosure Provision, Hogarth has suffered and continues to suffer irreparable injury, including being deprived of her constitutional right to take and share expressive images on social media, which continues so long as Defendants have the legal authority to enforce the Voting Enclosure Provision.

183.  The denial of constitutional rights is an irreparable injury per se. *Elrod*, 427 U.S. at 373.

184.  Hogarth is entitled to a declaration under 28 U.S.C. § 2201 that N.C. Gen. Stat. § 163-166.3(b) violates the First Amendment.

185.  Hogarth is entitled to injunctive relief under 42 U.S.C. § 1983 preventing the Defendants from enforcing the Voting Enclosure Provision, as applied to ballot selfies. *See PETA*, 60 F.4th at 838 (invalidating recording ban as applied to all newsgathering activities).

186.  Hogarth has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to her First Amendment rights.

187.  Without declaratory and injunctive relief against the Voting Enclosure Provision, Defendants' actions and enforcement authority to suppress Hogarth's First

Amendment expressive rights will continue, and Hogarth will suffer per se irreparable harm indefinitely.

### THIRD CAUSE OF ACTION
### The State Board's March 13, 2024 Demand Letter
### Violates the First Amendment
### (As-Applied Challenge Against State Board Defendants, Wake County
### District Attorney, and North Carolina Attorney General)

188.     Hogarth re-alleges and re-incorporates the preceding paragraphs as though fully set forth herein.

189.     The First Amendment protects the taking and sharing of ballot selfies. *See supra* ¶¶ 135–39.

190.     When Hogarth voted in North Carolina's primary election on March 5, 2024, she took a photograph of herself in the voting booth with her completed ballot.

191.     Hogarth then shared her ballot selfie on X to promote the candidates she voted for, show voters they can vote for third-party candidates, challenge the narrative that voters can only vote for major party candidates, encourage potential voters to vote, commemorate her vote for herself and posterity, express her personal pride in participating in the electoral process, and express her disagreement with North Carolina's ban on ballot selfies.

192.     One week later, State Board Investigator Brinton sent Hogarth a letter threatening her with criminal prosecution for both taking and sharing her March 5, 2024 ballot selfie.

193.     Investigator Brinton warned Hogarth that taking a ballot selfie is a Class 1 misdemeanor.

194.    Investigator Brinton demanded Hogarth take down the ballot selfie post she shared on X on March 5, 2024, or potentially face criminal prosecution for having taken a ballot selfie.

195.    The State Board Defendants' threat to criminally prosecute Hogarth for taking a ballot selfie impermissibly regulates protected expression based on content.

196.    The State Board Defendants' threat to prosecute Hogarth for sharing a ballot selfie impermissibly regulates protected expression based on content.

197.    Prohibiting voters from taking and sharing photographs of their completed ballots cannot survive strict scrutiny because it is not narrowly tailored to preventing vote-buying schemes. Instead, it prohibits expression that is not used in vote-buying schemes despite the existence of less speech-restrictive alternatives. *See supra* ¶¶ 154–67.

198.    The State Board Defendants had and have no reason to believe Hogarth shared her ballot selfie to facilitate vote buying.

199.    By threatening Hogarth for taking and sharing a ballot selfie and demanding that she remove her post, the State Board Defendants violate Hogarth's First Amendment rights and attempt to chill her constitutionally protected expression.

200.    Hogarth intends to take and share ballot selfies on social media during future elections and reasonably expects the State Board to demand she take down her future ballot-selfie posts or face prosecution.

201. Hogarth is entitled to a declaration under 28 U.S.C. § 2201 that the State Board's March 13, 2024 letter demanding Hogarth remove her March 5, 2024 ballot selfie post violates the First Amendment.

202. Hogarth is entitled to injunctive relief under 42 U.S.C. § 1983 preventing the State Board Defendants, the Wake County District Attorney, and the North Carolina Attorney General from taking further action against Hogarth as threatened by their March 13, 2024 letter demanding Hogarth take down her March 5, 2024 ballot selfie post.

203. Hogarth has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to her First Amendment rights.

204. Without declaratory and injunctive relief preventing the State Board Defendants from taking further action against Hogarth based on her March 5, 2024 ballot selfie, the State Board Defendants' actions and enforcement authority to suppress Hogarth's First Amendment expressive rights will continue and Hogarth will suffer per se irreparable harm, indefinitely.

## PRAYER FOR RELIEF

Hogarth respectfully requests this Court enter judgment against Defendants and provide the following relief:

A. Declare ballot selfies are protected expression under the First Amendment to the U.S. Constitution;

B.      Declare Hogarth's taking and sharing of her March 5, 2024 ballot selfie was and is protected expression under the First Amendment to the U.S. Constitution;

C.      Declare the Ballot Photography Provisions, N.C. Gen. Stat. §§ 163-166.3(c), 163-273(a)(1), 163-165.1(e) and 163-274(b)(1), are content-based speech restrictions that violate the First Amendment as applied to ballot selfies;

D.      Declare the Voting Enclosure Provision, N.C. Gen. Stat. § 163-166.3(b), is an unreasonable restriction on speech that violates the First Amendment as applied to ballot selfies;

E.      Declare the State Board's March 13, 2024 letter demanding Hogarth remove her March 5, 2024 ballot selfie from X violates the First Amendment;

F.      Preliminarily and permanently enjoin the Defendants from enforcing the Ballot Photography Provisions and the Voting Enclosure Provision against anyone who takes or shares their own ballot selfie;

G.      Preliminarily and permanently enjoin the Defendants from enforcing the Ballot Photography Provisions and the Voting Enclosure Provision against Hogarth for taking or sharing her past ballot selfies, including her March 5, 2024 ballot selfie;

H.      Preliminarily and permanently enjoin the Defendants from enforcing the Ballot Photography Provisions and the Voting Enclosure Provision

against Hogarth for taking and sharing her own ballot selfies in the future;

I.    Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law; and,

J.    Award all other relief as this Court deems just and proper.

Respectfully Submitted,


Dated: August 22, 2024

/s/ James M. Dedman IV
JAMES M. DEDMAN IV
    (NC Bar # 37415)
GALLIVAN WHITE & BOYD P.A.
6805 Carnegie Blvd, Ste. 200
Charlotte, NC, 28211
(704)-552-1712
jdedman@gwblawfirm.com

ERIC SPENGLER
    (NC Bar # 47165)
SPENGLER + AGANS PLLC
352 N. Caswell Rd.
Charlotte, NC 28204
(704) 999-8733
eric@sab.law

/s/ Jeffrey D. Zeman
JEFFREY D. ZEMAN*
    (Pa. Bar No. 328570)
DANIEL M. ORTNER*
    (Ca. Bar No. 329866)
JAMES M. DIAZ*
    (Vt. Bar. No. 5014)
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
jeff.zeman@thefire.org
daniel.ortner@thefire.org
jay.diaz@thefire.org

*Special Appearance pursuant to Local
Rule 83.1(e) Forthcoming


*Attorneys for Plaintiff Susan Hogarth*

# VERIFICATION OF SUSAN HOGARTH

Pursuant to 28 U.S.C. § 1746, I, SUSAN HOGARTH, declare as follows:

1.  I am a Plaintiff in the present case and a citizen of the United States of America.

2.  I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief.

3.  I have personal knowledge of the factual allegations in paragraphs 1,4, 9, 10, 49–81, 83, 105–123, 134, 161, 162, 179, 180, 190–194, and 200 of the Verified Complaint and know them to be true.

4.  I verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed on August 20, 2024

Susan Hogarth