Exhibit A

Declaration of Adam Steele

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:24-cv-481-FL

|  |  |  |
|---|---|---|
| SUSAN JANE HOGARTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DECLARATION OF** |
| | ) | **ADAM STEELE** |
| KAREN BRINSON BELL, in her official | ) | |
| capacity as Executive Director of the North | ) | |
| Carolina State Board of Elections, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I, Adam Steele, swear under penalty of perjury that the following information is true to the best of my knowledge and state as follows:

1.      I am over 18 years old. I am competent to give this declaration and have personal knowledge of the facts set forth herein.

2.      I am associate general counsel for the North Carolina State Board of Elections ("State Board"), a position I have held since October of 2022. In my role as associate general counsel, I am familiar with, have prepared, and have assisted in the preparation of, trainings, training materials, and other guidance provided to the county boards of election ("county boards") by the State Board.

3.      In even years, the State Board holds two statewide training conferences, one prior to the primary, and the other prior to the general election. In odd years, the Board holds one conference before the municipal elections. These conferences are mandated by state law. *See* N.C.G.S. § 163-82.24(a). State law also requires county board directors to attend these statewide trainings and requires county board members to attend two conferences within their first two years

of having been appointed. *Id.* The State Board holds additional trainings each year for new and recently-hired county board directors.

4.      As associate general counsel to the State Board, I have access to and am familiar with documents in the care and custody of that state agency, including the training materials and other guidance provided to county boards by the State Board at its statewide training conferences and in the new director trainings.

5.      Also as associate general counsel, I have attended and myself given training presentations at the statewide training conferences and new director trainings.

6.      In addition to providing training to county board elections officials at the statewide training conferences, the State Board provides guidance, instructions, and other materials needed to administer elections, including required polling place signage and training documents and presentations, to county board staff through the Board's Elections Resource Center. This is an electronic document repository administered through the Board's internal SharePoint site, to which county board staff members are given access.

7.      As associate general counsel to the State Board, I have access to and am familiar with documents in the care and custody of that state agency, including the training and other materials provided to county boards through the State Board's Elections Resource Center.

8.      Also as associate general counsel, I have prepared and participated in the preparation of materials posted to the Elections Resource Center.

9.      Attached to this declaration as Declaration Exhibit 1 is a PowerPoint presentation entitled "Conduct at the Polls" that accompanied a training session of the same name given by State Board General Counsel Paul Cox at the State Board's Winter Elections Training Conference,

2

which occurred in February 2024, and was subsequently posted to the State Board's Elections Resource Center.

10.     Attached to this declaration as Declaration Exhibit 2 is a PowerPoint presentation entitled "The Act of Voting In Person – Part II" prepared by State Board In-Person Voting Program Specialist Allison Blackman and State Board Elections Administration Manager Parker Holland, given by them at a new director training in early June of 2024, and subsequently posted to the State Board's Elections Resource Center.

11.     Attached to this declaration as Declaration Exhibit 3 is a sign that is provided to county boards, along with other polling place signage approved for use prior to each election, through the State Board's Elections Resource Center. County boards are informed that this sign is required signage for polling places. The sign informs voters, "It is *illegal* to record a voted ballot or to communicate via an election electronic device while voting." (Emphasis in original).

This concludes my declaration.

**Pursuant to 28 U.S.C. § 1746(2), I verify under penalty of perjury that the foregoing Declaration is true and correct in substance and in fact to the best of my knowledge and belief.**

This the 17ᵗʰ day of September, 2024.

Adam Steele
Associate General Counsel
North Carolina State Board of Elections

3

Exhibit 1


Conduct at the Polls - Winter 2024

EXHIBIT 1



# Conduct at the Polls

Paul Cox, NCSBE General Counsel
Feb. 5, 2024 - WINTER ELECTIONS TRAINING CONFERENCE

Case 5:24-cv-00481-FL   Document 41-1   Filed 09/17/24   Page 6 of 97

# ROADMAP

## 01
**Duty to Maintain Order**

## 02
**Maintaining Order**

## 03
**De-Escalation**

## 04
**Observers**

## 05
**Voter Intimidation**

## 06
**Scenarios**



# 01

## Duty to Maintain Order



# Duty to Maintain Order

Chief judge and judges have duty to maintain "peace and good order" at the voting place. G.S. § 163-48

Officials must:

- Keep open and unobstructed access to buffer zone and voting enclosure voting.

- Ensure voters can freely access the voting place without fear of intimidation or harassment.

- Prevent riots, violence, tumult, or disorder.



# General guidelines

Address complaints of harassment, interference, or intimidation immediately.

Use <u>de-escalation tactics</u> to defuse potential disturbances. Issue verbal warnings about behaviors that could lead to person's ejection or arrest.

If chief judge is unable to stop the behavior and it causes a disruption or prevents free access to the polls, they must immediately contact the county board of elections or law enforcement, as appropriate.





# Requesting Assistance

G.S. 163‑48:

- The chief judge and judges may call upon the sheriff, the police, or other peace officers to aid them in enforcing the law.

- They may order the arrest of any person violating any provision of the election laws, but such arrest shall not prevent the person arrested from registering or voting if he is entitled to do so.



- The sheriff, police officers, and other officers of the peace shall immediately obey and aid in the enforcement of any lawful order made by the precinct election officials in the enforcement of the election laws.



# Documenting Incidents

Proper documentation of incidents is critical.

- Reliable record of events
- Follow up from investigators
- Protects poll workers from unfounded allegations

Poll workers should document any disturbances on an Incident Report.

County board should immediately report any significant incidents to the State Board.

After the election, upload all incident reports to Secure FTP.



## 02

# Maintaining Order

(Numbered Memos 2022-12 and 2023-06)

Case 5:24-cv-00481-FL   Document 41-1   Filed 09/17/24   Page 13 of 97

# Buffer Zone

Area 25-50 feet from door of entrance to voting place

Exists so voters can freely access the voting place without intimidation or harassment

No electioneering or interference in buffer zone:

No person or group of persons shall hinder access, harass others, distribute campaign literature, place political advertising, solicit votes, or otherwise engage in election-related activity in the voting place or in a buffer zone which shall be prescribed by the county board of elections around the voting place.

G.S. § 163-166.4

# Curbside Voting

Conduct prohibited in buffer zone is also prohibited at curbside voting.

The curbside voter's vehicle is considered a voting enclosure, and the buffer zone shall be at least six feet from the vehicle.

# Outside the Buffer Zone

A public forum protected by the First Amendment.

County board must carefully weigh any limitations on speech (including display of signs or symbols) by private individuals.

May enforce reasonable regulations ensuring safe and unobstructed access to parking lots, parking spaces, the voting place itself, and curbside voting, while also accommodating electioneering activity adjacent to the buffer zone.

# Voting Enclosure – Who May Be Inside



1. Elections officials
2. Voters in the process of voting (including their minor children)
3. Appointed observers and runners
4. Individuals providing voter assistance
5. Voters lodging a lawful challenge

# Voting Enclosure – Prohibited Behavior

Individuals may <u>not</u>:



- Hinder voter access
- Harass or interfere with voters or others
- Electioneer
- Interfere with election officials in performing their duties
- Photograph, videotape, or otherwise record the image of a voter, except with the permission of the voter and the chief judge

# Voting Enclosure – Prohibited Behavior *(cont.)*

Individuals may <u>not</u>:



- Attempt to see how a voter voted, or disclose this information
- Retain confidential voter information
- Provide false information about the voting process
- Knowingly swear falsely on a challenge form
- Interfere with election officials' possession of election materials
- Assault or intimidate an election official
- Remove official ballots, records of individually voted ballots, etc.



# 03

## De-Escalation

# De-Escalation

Tensions <u>escalate</u> when people:



- Feel unheard
- Feel judged
- Think they're being attacked or threatened
- Think their needs are not being recognized
- Think one person is dominating the process
- See negative behavior is not pointed out
- Make a concession or accept responsibility and are not acknowledged

# De-Escalation

Tensions <u>de-escalate</u> when :

- There is a safe neutral environment, clear ground rules, and balanced attention
- Reality of an issue is validated, issues are clarified, and feelings acknowledged
- People given enough time to talk and express their perceptions
- People talk about issues that are difficult, embarrassing, or frightening, yet important to finding resolution
- You identify and acknowledge specific behavior that is cooperative, positive, or helpful in moving towards a resolution
- You identify negative behavior and describe its impact

# De-Escalation

Do:

- Request and Suggest before commanding or demanding
- Maintain a calm, non-threatening physical presence
- Make clear, concise, and simple requests
- Policy is not personal: state "the law does not allow this" instead of "you are not allowed"

Don't:

- Order or threaten
- Attempt to argue disinformation
- Be defensive

# De-Escalation

"CLARA"

- <u>Calm</u>: Center yourself. Avoid pointing, crossing your arms or other more aggressive postures.

- <u>Listen</u> : Let the person vent and be sure to listen explicitly for feelings, needs, or values.

- <u>Acknowledge</u> : Begin by acknowledging the feelings, needs, or values you have heard. Doesn't mean you're *agreeing*. Ex: "I sense your aggravation at this situation. I hear your concern for safety."

- <u>Respond</u> : After acknowledging, offer open-ended or choice questions; address the issue; make a clear request or proposal. Ex: "Will you tell me more about your concerns?" "I understand you have every right to feel angry, but it is not ok to threaten people here."

- <u>Assess</u>: Determine what else may need to be done, if anything. Trust your instincts: If de-escalation is not working, STOP. Get help.



 **04** **Observers**

**(Numbered Memo 2023-06)**

Case 5:24-cv-00481-FL   Document 41-1   Filed 09/17/24   Page 25 of 97

# Observer Check In

Chief judge should verify observer's identity, which may include asking the observer to show ID

Chief judge may maintain a log for observers

Observers must wear a tag identifying their role

No more than three observers from the same political party may be in the voting enclosure at one time



# Permitted Behavior
## G.S. 163-45.1(g)



✓ Take notes, including using an electronic device to do so

✓ Listen to conversations between a voter and election official

✓ Move about the voting place, including the curbside area

✓ Leave and reenter the voting enclosure

✓ Communicate via phone outside the voting enclosure

✓ Witness any opening and closing procedures and take photos during this time

# Prohibited Behavior
## G.S. 163-45.1(h)



✕ Look at, photograph, or videotape a voter's marked ballot

✕ Impede a voter's access to the voting place

✕ Inhibit or interfere with election officials performing official duties

✕ Electioneer

✕ Make or receive phone calls in the voting place

✕ Interfere with a voter's privacy

✕ Interfere with the conduct of the election

*See Numbered Memo 2023-06 for more information.*

# Prohibited Behavior (cont.)

Other provisions of law provide additional prohibitions on disruptive or interfering behavior.



- ✖ Interfering with voter (not just privacy) or election official
- ✖ Intimidating voter or election official
- ✖ Assaulting anyone
- ✖ Harassing voters and officials
- ✖ Knowingly swear falsely on challenge form
- ✖ Removing official election materials

Case 5:24-cv-00481-FL   Document 41-1   Filed 09/17/24   Page 29 of 97

*See Numbered Memo 2023-06 for more information.

# Removal of Observers

Chief judge may remove observer for:

- Engaging in conduct specifically prohibited by the observer statute; and

- "Good cause," including evidence that the observer could impact the conduct of the election.





# Procedure for Removal

Give verbal or written warning first, if possible. Use warning template.

May remove observer without warning if warranted by the seriousness of the situation.

If chief judge removes observer, must immediately notify the county director, who will notify the appointing authority so a replacement observer can be appointed.

Document in an incident report.



# 05

# What is Voter Inimidation

# What Is Voter Intimidation

Conduct that would make a voter reasonably fearful, threatened, or coerced during the voting process.

Includes threats of violence or bodily harm as well as threats of economic harm, legal action, dissemination of personal information, or surveillance.

Includes an attempt that is not completed or successful.

*See [Numbered Memo 2023-06](Numbered%20Memo%202023-06)

# What Is Voter Intimidation

Election officials should ask themselves:

Would the specific circumstances confronting the voter make the voter reasonably fearful, threatened, or coerced during the voting process, considering those circumstances from the voter's point of view.

*See Numbered Memo 2023-06



# 06

## Scenarios



Case 5:24-cv-00481-FL   Document 41-1   Filed 09/17/24   Page 35 of 97

# Scenario #1

A group is standing at the buffer zone with t shirts on that some voters report make them feel intimidated. The voters will not go into the voting enclosure, as the group is screaming at them when they try to enter. The chief judge asked the group to refrain from this type of behavior, but they are still doing it.

# Scenario #2

At a smaller voting location, an observer is able to get fairly close to the voting booth section in the voting enclosure. As is permitted, the observer is using an electronic device to take notes while in the voting location. At one point during the day, a voter informs the chief judge that they believe the observer is either using the electronic device to take pictures or to record voters in the act of voting.

# Scenario #3

A campaigner will not give the curbside voter room to vote their ballot. The campaigner keeps interjecting their candidate's name as the voter is trying to mark their ballot. A poll worker tries to get the campaigner to adhere to a buffer zone around the car, but the campaigner is not listening.

# Scenario #4

A voter shows up to the polling place with a handgun on his side. He is asked to remove the gun from his side, but he exclaims he has a concealed carry permit. The facility that early voting is in is government property and there are signs posted that state no handguns allowed. The voter refuses to leave and return without their gun.

# Scenario #5

Multiple voters who need assistance are being assisted by the same person on a regular basis. Precinct officials are following the process outlined in statute for who may receive voter assistance. However, a candidate continues to enter the precinct accusing election officials of unlawful actions. This creates shouting matches between voters, the person rendering assistance, and the candidate. Local news outlets have arrived on site and are seeking answers, communication, and details on what is happening. The candidate is interviewed by the news where he says that he saw the assistant mark the ballot without asking the voter how the voter wanted it marked.

# Scenario #6

Two brothers are at an early voting site and become angry when they discover their party isn't listed correctly to allow them to participate in their preferred primary. They left one early voting site after cursing loudly to the entire staff. They then went to the early voting site at the county board office and did the same thing, cursing loudly and refusing to accept their assigned ballot style or a provisional ballot. They threatened to go to their car and come back and "take care of" the chief judge.

# Resources

 [Numbered Memo 2022-12](#)

 [Numbered Memo 2023-06](#)

[Elections Reference Guide for North Carolina Law Enforcement](#)

 [Observers 2-Page Handout](#)

# Resources

## De-Escalation Skills for Election Workers

NCSBE Summer Conference, Day 2
August 31, 2022

Available on Election Resource Center (ERC):

Conference \ Past Conferences \ Summer 2022

# THANK YOU

Questions:  elections.sboe@ncsbe.gov

Exhibit 2

NDT Part II_May2024



# The Act of Voting In Person – Part II

Early Voting & Election Day Preparation and Processes

Allison Blackman

Parker Holland

Case 5:24-cv-00481-FL   Document 41-1   Filed 09/17/24   Page 46 of 97





# Learning Objectives

When given the statues and requirements individuals will be knowledgeable about:

- Supply Distribution and Return
- Security of person/place/things
- Voting Site Setup
- Accessibility
- Key things to remember for Election Official training
- Observers/Campaigners/Media



# Supply Distribution

- Set a time for each Chief Judge
- Ensure enough time to review processes and complete chain of custody document
- Ensure secure supplies stay secure
  - No ballots sitting out unsecured
  - No cards/media unsecured
- List can be edited to meet the needs of your county
- Best practice: pack by station

Use Supply Distribution Checklist



# Ballot Chain of Custody

- Provide a Ballot Style Statistics Report
  - Found in Ballot Styles Module
  - Review Report – be mindful of voters who have not yet voted when assessing ballot distribution number
- Ballots
  - Count packages together with Chief Judge
  - Seal & sign box
  - Use ballot *Reconciliation & Chain of Custody* form.





# Supply Delivery to Polling Place

- Ensure each set of supplies are marked clearly with the correct polling place

- Chief Judge should audit supplies on Monday night and ensure everything is there and that it's the correct set of supplies

- Have rovers/coordinators available with extra supplies

- If there is a mis-delivery of a tabulator the emergency bin can be used until a properly programmed machine arrives



Case 5:24-cv-00481-FL    Document 41-1    Filed 09/17/24    Page 50 of 97



# Voting Site

Voting Site Security, Layout, Accessibility and Signage



The guide advises law enforcement to:
- Designate an Elections Liaison in advance of the election.
- Know dates and times of early voting, Election Day and postelection meetings.
- Coordinate response and determine jurisdictional response areas with other law enforcement agencies in the county.
- Know your local Election Day and early voting sites and the room within each site where voting takes place.
- Be familiar with surrounding areas and traffic routes to and from the location.

**Officers should not be stationed at a voting site.**

# ELECTIONS REFERENCE GUIDE

*for*

## North Carolina Law Enforcement

Revised January 2024

# Accessibility

- Complete Accessibility Survey every two years

- Entrance must be ADA (Americans with Disabilities Act) Compliant

- Accessibility device on and available

- Provide accessible booths

- Ensure enough space for wheelchairs to move about the enclosure



# Curbside Setup



- Do not use accessible spots for curbside

- Accessible spots should remain available for voters with disabilities who intend to enter the voting enclosure

- Curbside should be placed in separate area

- Do not block curb cuts





# Service Animals

- ADA requires that service animals are allowed in any polling place.

- The ADA requirement is limited to service animals, not comfort animals.

- You may not ask the handler about the nature of their disability.

- A service animal is limited to a dog or miniature horse





# Area for Campaigners & Monitors



- Buffer zone = no campaigning zone
- Generally 50 feet from the door of entrance to voting place
- Can be 25 feet
- Provide your election officials with a diagram to ensure accurate marking
- Designate clearly
- Ensure the area adjacent to buffer zone is in a safe area – you don't want people electioneering in traffic

- May distribute literature
- May place signs
- Solicit votes
- Conduct other election-related activities

NORTH CAROLINA
STATE BOARD OF ELECTIONS

# Signs



- Placed Directing Voters to
  - Building
  - Parking
  - Entrance
- Display at Entrance of Enclosure
  - Voter Information Posters (HAVA)
  - Sample Ballots
  - Absentee List
  - "You Certify" Poster
  - Photo ID
- Make Additional Discretionary Signs

# Polling Place Layout Best Practices



- Ensure Accessibility Standards
- Provide Signage to Assist Voters
- Help Station Must Have Voting Booth
- Tabulator Should be Near Exit
- Have a plan for line management – don't put stations too close together
- Don't put check-in station too close to the entrance
- Have separate entrance and exits whenever possible










# Required Signage

- Voter Information Poster (HAVA) (E/S)
- You Certify (E/S)
- Photo ID Required (E/S)
- No Photos/Recording
- Sample ballots
- List of Absentee Voters
- Review ballot



# Election Day





# Election Morning SITE CHECK

- Turn on tabulator
- Ensure device for assistance is on
- All stations have required materials
- Buffer zone is clearly marked
- Curbside is set up and working





# FINAL Election Morning PREP

- Discuss emergency procedures
  - Have an evacuation plan for people and ballots
  - Have emergency numbers ready
- **Mark any additional absentee voters in registration list**
- Ensure phone is working for incoming and outgoing calls



# Election Day Emergencies



**ELECTION DAY DUTIES**

**EMERGENCY PROCEDURES**

In the event of a serious emergency, remember 1-2-3

1. Get to a safe place
2. Call 911 (if necessary)
3. Call the Board of Elections

Never hesitate to call 911 if you feel it is necessary. You do not have to notify the County Board if you determine that you need to call 911.

**ELECTRICITY OUTAGE**

1. Allow voting to continue if there is enough natural light. The tabulator, AutoMARK, and laptop will operate on battery power for a limited amount of time.
2. Call the County Board of Elections immediately.

**EVACUATION PLAN**

| Items to Evacuate | Official Assigned to item(s) |
|---|---|
| Tabulator<br><br>• Leave tabulator on gray ballot box and roll them out if possible<br>• If not possible, remove tabulator from top of box and remove emergency bin ballots | |
| Pollbooks | |
| Completed ATVs (Ballot Station) | |
| Help Referral forms | |
| Opened packs and boxes of unvoted ballots | |
| Sealed boxes of voted ballots | |
| Completed provisional envelopes and provisional Pollbook pages | |

- Loss of electricity
  - Tabulators will continue on battery power, then use emergency bin
  - Laptops will continue on battery power
- Evacuation
  - Before the emergency designate a meeting location
  - Responsibility for equipment, ballots, and ATVs
- Serious emergency?
  - Get to a safe place
  - Call 911
  - Call the board of elections


NORTH CAROLINA
STATE BOARD OF ELECTIONS



# Special Requirements in Case of Delay of Voting or Extension of Hours

- Ideally there will never be a delay in voting
- However, if there is and voters want to leave instruct officials to get their contact information
- If the voting hours are extended, voters must vote provisionally if voting during those extended hours.







# Stations

| | | |
|---|---|---|
| Greeter | Check In | Ballot Table |
| Curbside | Help Desk | Exit |



# Greeter

- First interaction with voter so must be knowledgeable
- Should have list of acceptable photo ID options AND must let voter know that they can cast a ballot with or without photo ID
- Manages traffic, removes electioneering materials left by voters
- Greeter can also keep an eye out for electioneering violations of buffer zone



# Check in - Photo ID

## Quick Reference: Check-in Station

| Step | Details |
|---|---|
| **Step 1: Voter Greeting** | • Determine if the voter requires assistance<br>• Ask the voter's name<br>• Ask voter to show photo ID |
| **Step 2: Photo ID Review** | • Determine if the photo ID is acceptable type<br>• Determine if the photo ID meets expiration requirements (if applicable)<br>• Determine reasonable resemblance of photo on the ID to the person presenting to vote<br>• Determine if the name on the ID is the same as or substantially equivalent to name in voter record<br>• Return photo ID to voter |
| **Step 3: Address Review** | • Ask the voter to state their residential address (voting address is based on where voter resided 30 days prior to the election)<br>• Compare stated address with address in voter record |
| **Step 4: Voter Status Review** | • Determine the voter's registration status<br>• Determine whether there are voter status issues that need to be resolved before a ballot can be issued ⚠ |
| **Step 5: Party Affiliation Review (partisan primary only)** | • Ask the voter for registered party<br>• If voter is registered unaffiliated, ask the voter for a primary ballot preference ⚠ |
| **Step 6: Voting Authorization** | • Repeat information back to voter (name, address, party affiliation)<br>• After determining the voter is eligible, prepare the Vote Authorizing Document (ATV or One- Stop Application)<br>• Ask voter to review and sign Vote Authorizing Document<br>• Check-in official initials/signs document |

⚠ Refer an issue encountered here to the Help Station

## VOTER ASSISTANT LOG (G.S. § 163-166.8)

The undersigned individuals in _____ County entered the voting place to provide assistance to a voter and did not vote. This log shall not include observers, runners, or minor children under the age of 18 who are in the care of a voter.

| No. | Print your name (Must be printed legibly) | Address | City | ZIP code | Time Entered | Signature |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |

*Voting Place Name*_____     Date_____

G.S. § 163- 166.8.  Assistance to voters.
(a)    Any registered voter qualified to vote in the election shall be entitled to vote in the election shall be entitled to assistance with entering and exiting the voting booth and in preparing ballots in accordance with the following rules:
    (1)    Any voter is entitled to assistance from the voter's spouse, brother, sister, parent, grandparent, child, grandchild, mother-in-law, father-in-law, daughter-in-law, son-in-law, stepparent, or stepchild, as chosen by the voter.
    (2)    A voter in any of the following four categories is entitled to assistance from a person of the voter's choice, other than the voter's employer or agent of that employer or an officer or agent of the voter's union:
        a.    A voter who, on account of physical disability, is unable to enter the voting booth without assistance.
        b.    A voter who, on account of physical disability, is unable to mark a ballot without assistance.
        c.    A voter who, on account of illiteracy, is unable to mark a ballot without assistance.
        d.    A voter who, on account of blindness, is unable to enter the voting booth or mark a ballot without assistance.
(b)    A qualified voter seeking assistance in an election shall, upon arriving at the voting place, request permission from the chief judge to have assistance, stating the reasons. If the chief judge determines that such assistance is appropriate, the chief judge shall ask the voter to point out and identify the person the voter desires to provide such assistance. If the identified person meets the criteria in subsection (a) of this section, the chief judge shall request the person indicated to render the assistance. The chief judge, one of the judges, or one of the assistants may provide aid to the voter if so requested, if the election official is not prohibited by subdivision (a) (2) of this section. Under no circumstances shall any precinct official be assigned to assist a voter qualified for assistance, who was not specified by the voter.
(c)    A person rendering assistance to a voter in an election shall be admitted to the voting booth with the voter being assisted. The State Board of Elections shall promulgate rules governing voter assistance, and those rules shall adhere to the following guidelines:
    (1)    The person rendering assistance shall not in any manner seek to persuade or induce any voter to cast any vote in any particular way.
    (2)    The person rendering assistance shall not make or keep any memorandum of anything which occurs within the voting booth.
    (3)    The person rendering assistance shall not, directly or indirectly, reveal to any person how the assisted voter marked ballots, unless the person rendering assistance is called upon to testify in a judicial proceeding for a violation of the election laws.
(d)    Precinct officials shall maintain a log of any individual, other than a minor child under the age of 18 in the care of a voter, who enters the voting place pursuant to this section and is not seeking to vote in that voting place. The log shall include the printed name and address of the individual entering the voting place, the time the individual entered the voting place, and a space for that individual's signature. This subsection shall not apply to observers and runners pursuant to G.S. 163 45.1 and G.S. 163 45.2.

2024.01

# Voter Assistance

**Election officials should follow the script below to determine if a voter is entitled to assistance:**

1. **Ask the voter: "Is this person here to assist you?"**
   a. If YES, go to question 2.
   b. If NO, instruct the person that they need to wait outside the voting enclosure.
2. **Ask the voter: "Is this person a near relative?"** *Refer to explanation of who can assist a voter.*
   a. If YES, the voter may receive assistance. No further information is needed.
   b. If NO, go to question 3.
3. **Say: "A voter who needs assistance because the voter is blind, disabled, or unable to read, speak, or write English may receive assistance from a person of the voter's choice. Do you need assistance for one of these reasons?"**
   a. If YES, go to question 4.
   b. If NO, the voter is not entitled to receive assistance from someone who is not a near relative. If requested by the voter, an assistant, judge, or chief judge may assist the voter.
4. **Ask the voter: "Is this person your employer, employer's agent, officer of your union, or agent of your union?"**
   a. If YES, the person may not assist the voter. The voter may select someone else to assist him or her. If requested by the voter, an assistant, judge, or chief judge may assist the voter.
   b. If NO, the voter may receive assistance. No further information is needed.

NUMBERED MEMO 2016-16 Voter Assistance
NUMBERED MEMO 2022-11 Court Order Regarding Assistance

# Check-in Station















# Ballot Station

- REQUIRED to use barcode scanner if more than one ballot style
- Ballot Station official should confirm with Chief Judge that all ballots from report are styles are available
- Ensure required forms are available including
  - Spoiled ballot log
  - Tabulator/ATV match sheet
  - 10-2-4 sheet
- Ballots must be kept orderly & secure
- Best practice – assign two people if more than one ballot style







# At Ballot Station – Complete the ATV

- Receive and review ATV
  - Is it signed
  - Is it initialed
  - If there are voter status issues, have they been satisfied
- Confirm correct ballot was pulled
- Sequentially number ATV







# Health of ATVs = Health of Precinct Processes

- Chief Judge should flip through ATVs early and regularly to ensure all are complete
- Coordinator/rover should also do this
- If there are issues they can be caught and addressed early





# Help Station

- Station Guide Required
- Separate voting booth
- All forms complete/signed





# Help Station – Provisional Voting

- Write Prov and Precinct where voter SHOULD have voted
- Rules require that each Photo ID prov option is equally provided
- Chief Judge and Coordinator/Rover should be reviewing provisional applications/envelopes
- Trifold ballots

## Provisional Voting Reasons

1. Photo ID Exception
2. A. No Photo ID (has a Photo ID but does not have it with them), OR
   B. Voter Does Not Have Acceptable HAVA ID (has eligible photo ID)
3. No Record of Registration
4. Unreported Move
5. Incorrect Precinct
6. Unrecognized Address
7. Previously Removed
8. Other Provisional Issues

## Provisional Voting Procedures (Manual)

1. Accept Help Referral Form from voter and ask voter for Photo ID (Unless form indicates no Photo ID).
2. Complete provisional poll book.
3. Complete administrative section of **Provisional Voting Application.**
4. Affix PIN labels to poll book log, provisional application, and provisional instructions.
5. Ask voter to complete and sign **Provisional Voter Application.**
6. *If voter is unable to provide photo ID and has a qualifying exception,* ask voter to complete Photo ID Exception Form.
7. Accept and review all forms with voter. Sign or initial where needed.
8. Obtain appropriate ballot and write the word "Provisional" and the precinct number of the voter's eligible precinct on the ballot. Present voter with ballot, provisional application and envelope, and provisional instructions.
9. Provide voter with verbal instructions on voting ballot in private, placing voted ballot in envelope, and returning voted ballot sealed in the provisional envelope.
10. If applicable, provide voter with instructions on time for providing the county board of elections with acceptable Photo ID and/or HAVA ID.



Official Ballot
Onslow County, North Carolina
November 6, 2018

PROV RS2

G003

**BALLOT MARKING INSTRUCTIONS:**
A. With the marking device provided or a black ball point pen, completely fill in the oval to the left of each candidate or selection of your choice as shown.
B. Where authorized, you may write in a candidate by filling in the oval and writing the name on the Write-in line.
C. If you tear, deface or wrongly mark this ballot, return it to request a replacement.

# Help Station – Photo ID/Exception

- Voter should complete the form if printed.
- In SOSA/OVRD/EVID review form with voter
- Voter MUST sign form
- Ensure form is fully complete
  - name
  - contact information
  - boxes properly checked
  - signed



| NORTH CAROLINA [COUNTY] COUNTY | PHOTO ID EXCEPTION FORM | ELECTION DATE XX/XX/XXXX | PROVISIONAL POLL BOOK NO XXXXXXXXXX |
|---|---|---|---|

**Voter, please complete this form to explain why you cannot show photo ID.**
**Your vote _will_ count if you truthfully complete and sign this form.**

Name: _____ Last Name _____ First Name _____ Middle Name _____ Suffix

Contact: _____ Email _Address_ (if available) _____ Phone

I AFFIRM that I am the registered voter _identified above_, that I am casting a provisional ballot while voting in person, and that: (choose from the exceptions below)

**EXCEPTION 1: REASONABLE IMPEDIMENT**

☐ I suffer from a reasonable impediment that prevents me from presenting photo ID.
(CHOOSE ONE OR MORE REASONS BELOW)

1. I cannot get photo ID due to:
   - ☐ Lack of transportation
   - ☐ Disability or illness
   - ☐ Lack of birth certificate or other documents needed to get photo ID
   - ☐ Work or school schedule
   - ☐ Family responsibilities
2. ☐ My photo ID is lost, stolen, or misplaced
3. ☐ I applied for photo ID but have not received it
4. ☐ Other reasonable impediment to presenting photo ID (you _must_ write the reason if choosing this option):
   _____
   _____
5. ☐ State or federal law prohibits me from listing my reason

**EXCEPTION 2: RELIGIOUS OBJECTION TO BEING PHOTOGRAPHED**

☐ I have a religious objection to being photographed.

**EXCEPTION 3: VICTIM OF A NATURAL DISASTER**

☐ I was a victim of a natural disaster occurring within 100 days before election day that resulted in a disaster declaration by the President of the United States or the Governor of North Carolina.

**VOTER, SIGN BELOW** FRAUDULENTLY OR FALSELY COMPLETING THIS FORM IS A CLASS I FELONY UNDER CHAPTER 163 OF THE NC GENERAL STATUTES.

X _____

VOTER'S SIGNATURE (_REQUIRED_)

**ELECTION OFFICIAL TO COMPLETE**

| Voting Site: | VRN: | Official's Name: |
|---|---|---|

v.2023.07

**NORTH CAROLINA** STATE BOARD OF ELECTIONS



# Help Station – Instructions

- Mark the correct reason (SEIMS does not mark this for you)
- Show the voter their reason and what they need to do next
- Give the timeline for any action
- Explain how to check their provisional outcome



<county name> COUNTY BOARD OF ELECTIONS
County Street Address
City, State Zip
County Mailing Address
City, State Zip
Phone, Fax, Email

**Provisional Voter Instructions**
(How to Check the Status of Your Provisional Vote)

You were required to vote a provisional ballot today because of the following reason(s):

☐ **I did not have a photo ID to present, and I completed a Photo ID Exception Form.** If you completed a Photo ID Exception Form and are otherwise eligible to vote, the County Board of Elections will count your ballot if you truthfully completed that form. No further action is required. If there is a reason to question whether your form is accurate, the County Board will contact you to address that issue.

☐ **I did not have my photo ID with me when voting, and I plan to bring it to the county board of elections. I did not complete a Photo ID Exception Form.** You must bring acceptable photo ID in person to the County Board of Elections by 5 p.m. on 03/14/2024 to have your ballot counted.

☐ **I was required to provide a HAVA ID and was not able to provide one when voting.** If you were required to vote a provisional ballot because you did not show acceptable HAVA identification, you must provide this identification to the county board of elections no later than 5 p.m. on 03/14/2024 by mail, fax, email, or in person. It would be helpful if you include this document.

☐ **All other provisional reasons:** Your provisional ballot application will be researched to determine whether you are eligible to vote.

The County Board of Elections will meet to count all eligible provisional ballots before the election is final.

**You may check the status of your provisional application and ballot no earlier than ten (10) days after election day using one of the following methods:**

| | | |
|---|---|---|
| **ONLINE** | www.ncsbe.gov<br>Select "Check Your Provisional Vote"<br><br>Remember to Wait 10 Days | You will be asked for the following:<br><br>• County<br>• Election<br>• Birth Date<br>• Personal Identification Number (PIN) |
| **CALL** | <COUNTY NAME> COUNTY<br>BOARD OF ELECTIONS<br><br><county phone number><br>(During normal business hours)<br><br>Remember to Wait 10 Days | ▼ YOUR PIN ▼ |
| **CALL** | STATE BOARD OF ELECTIONS<br>1-866-522-4723<br>(During normal business hours)<br><br>Remember to Wait 10 Days | **Protect your PIN!**<br><br>Your PIN is the key to your provisional information. If you lose your PIN, you must visit the County Board of Elections in person to determine if your ballot was counted. |

NCSBOE-PROV VOT INS

Revised 2024-01



# Curbside

- Only eligible voter can vote curbside (not people with them)
- Read affidavit to voter
- Enforce buffer zone
- Two-person process







# Exit



- Always provide training on any tabulator alerts and how to address them

- Remind Exit Station to stand close enough to hear alerts but not close enough to see how a person marked their ballot

- Keep an eye out for any ballots with creases as it could be an absentee voter or provisional voter attempting to place their ballot in the tabulator



# Election Night Returns

- Ensure precinct officials know how to pack supplies for return
- Color coding is helpful
  - Voted ballots
  - Unvoted ballots
  - Spoiled ballots
  - Completed ATVS
  - Provisional applications/Exception Forms with ballots sealed
  - Spoiled ATVs or other documents
- Remind them to return media (Stick) and how you want that done (SECURELY)





# Supply Return at CBE

- Ensure you have enough trained staff to handle returns
- Student election assistants could be a good resource
- Use supply return checklist and complete the ballot custody checklist
- Ensure all secure supplies and supplies required for reconciliation are returned







# Voters
# Observers
# Campaigners
# Media



# Limited Access to the Voting Enclosure

**§ 163-166.3. Limited access to the voting enclosure.**

(a) Persons Who May Enter Voting Enclosure. – During the time allowed for voting in the voting place, only the following persons may enter the voting enclosure:

(1) An election official.

(2) An observer or student election assistant acting in accordance with Article 5 of this Chapter.

(3) A runner only to the extent necessary to announce that runner's presence and to receive the voter list as provided in G.S. 163-45.2.

(4) A person seeking to vote in that voting place on that day but only while in the process of voting or seeking to vote.

(5) A voter in that precinct while entering or explaining a challenge pursuant to G.S. 163-87 or G.S. 163-88.

(6) A person authorized under G.S. 163-166.8 to assist a voter but, except as provided in subdivision (7) of this section, only while assisting that voter.

(7) Minor children of the voter under the age of 18, or minor children under the age of 18 in the care of the voter, but only while accompanying the voter and while under the control of the voter.

(8) Persons conducting or participating in a simulated election within the voting place or voting enclosure, if that simulated election is approved by the county board of elections.

(9) Any other person determined by election officials to have an urgent need to enter the voting enclosure but only to the extent necessary to address that need.



# Move along…

After voting, the voter must leave the enclosure

Candidates cannot enter the voting enclosure unless they are voting

Campaigners cannot enter the voting enclosure "just to check the number on the machine"





# Electronic Devices



Place signs at entrance & throughout enclosure

- Allowed as long as they don't distract or interfere
- Can be used to
  - Reference notes
  - Locate information
- Cannot be used to
  - Take photos, video (ballot selfies)
  - Communicate via voice, text, email or other method



# Observers

An Important part of our transparent process

Numbered Memo 2023-06 Election Observers

Case 5:24-cv-00481-FL   Document 41-1   Filed 09/17/24   Page 85 of 97





# Appointment of Observers

- Chair of county political party may
  - Designate two site-specific observers per voting place (including early voting and Election Day sites) wherever the party has a candidate on the ballot
  - Designate ten at-large observers who may serve at any voting site in the county.
- Chair of state party may designate 100 at-large observers who may serve at any site in the state
- No more than three observers from same party in enclosure at any time
- UNA candidate may designate two site-specific observers per voting place where they are on the ballot
- Proponents and Opponents of ABC elections may appoint two per voting place



# Submission of lists of Observers

- Submitted electronically or in writing by noon on the business day before the observer is scheduled to observe
  - Site-specific or county at-large observers submitted to county elections director.
  - State at-large observers submitted to the Executive Director of the State Board of Elections, who will forward a copy to each county board of elections.

- Numbered Memo 2023-06



NORTH CAROLINA
STATE BOARD OF ELECTIONS

P.O. Box 27255
Raleigh, NC 27611
(800) 522-4723
www.ncsbe.gov

**Numbered Memo 2023-06**

TO:      County Boards of Elections

FROM:    Karen Brinson Bell, Executive Director[1]

RE:      Election Observers

DATE:    December 13, 2023

This numbered memo provides guidance about election observers in accordance with the changes made by Session Law 2023-140 (SB 747). It replaces Numbered Memo 2016-21.

Election observers appointed by political parties and candidates serve an important role in our elections, by making the voting process transparent to representatives of the parties and candidates vying for office. Observers are in the voting place to witness the conduct of voting. They can report any perceived problems to the chief judge, the boards of elections, or the party or candidate that appointed them. The State Board and county boards are accustomed to regularly communicating with the parties during the conduct of voting, to address any such perceived issues. By law, the voting place must remain peaceful and orderly. To that end, observers should be welcome to witness the voting process, but may not be permitted to interfere with voters or election officials, or to engage in any other conduct that is unlawful or disruptive.

1. Appointment of Observers

Observers shall be appointed as follows:[2]

- The chair of a county political party may:
  - Designate two site-specific observers per voting place (including early voting and Election Day sites) wherever the party has a candidate on the ballot;[3] and

[1] This memo is issued under the authority delegated by the State Board to the executive director pursuant to G.S. § 163-22(p).

[2] See G.S. § 163-45.1(b) (S.L. 2023-140, sec. 7(b)).

[3] As of January 1, 2024, the parties may appoint observers where the party "has a candidate appearing on the ballot." G.S. § 163-45.1(b)(1)-(3) (S.L. 2023-140, sec. 7(b)). This means that there must be an official party nominee on the ballot, identified on the ballot with the party. This change in the law means that political parties are no longer entitled to appoint observers in nonpartisan elections.



VOTE NORTH CAROLINA
STATE BOARD OF ELECTIONS

# Updated Materials for Observer Management

1. Observer Guide
2. Observer Tags
3. Observer Written Warning Template
4. Observer Numbered Memo

On Filezilla at:
Election_Administration\Election_Forms\Voting_Site_Man
agement\Polling Place Materials\Observer Materials



**NORTH CAROLINA**
STATE BOARD OF ELECTIONS

P.O. Box 27255
Raleigh, NC 27611
(866) 522-4723
www.ncsbe.gov

**Numbered Memo 2023-06**

| | |
|---|---|
| **TO:** | County Boards of Elections |
| **FROM:** | Karen Brinson Bell, Executive Director[1] |
| **RE:** | Election Observers |
| **DATE:** | December 13, 2023 |

This numbered memo provides guidance about election observers in accordance with the changes made by Session Law 2023-140 (SB 747). It replaces Numbered Memo 2016-21.

Election observers appointed by political parties and candidates serve an important role in our elections, by making the voting process transparent to representatives of the parties and candidates vying for office. Observers are in the voting place to witness the conduct of voting. They can report any perceived problems to the chief judge, the boards of elections, or the party or candidate that appointed them. The State Board and county boards are accustomed to regularly communicating with the parties during the conduct of voting, to address any such perceived issues. By law, the voting place must remain peaceful and orderly. To that end, observers should be welcome to witness the voting process, but may not be permitted to interfere with voters or election officials, or to engage in any other conduct that is unlawful or disruptive.

1. Appointment of Observers

Observers shall be appointed as follows:[2]

- The chair of a county political party may:
  - Designate two site-specific observers per voting place (including early voting and Election Day sites) wherever the party has a candidate on the ballot;[3] and

---

[1] This memo is issued under the authority delegated by the State Board to the executive director pursuant to G.S. § 163-22(p).

[2] See G.S. § 163-45.1(b) (S.L. 2023-140, sec. 7(b)).

[3] As of January 1, 2024, the parties may appoint observers where the party "has a candidate appearing on the ballot." G.S. § 163-45.1(b)(1)–(3) (S.L. 2023-140, sec. 7(b)). This means that there must be an official nominee on the ballot, identified on the ballot with the party. This change in the law means that political parties are no longer entitled to appoint observers in nonpartisan elections.



## NORTH CAROLINA
### STATE BOARD OF ELECTIONS

## OBSERVING THE ELECTION INSIDE (appointed by political party)

Members of the public may not enter a voting site to observe the election. Only observers appointed in advance by a political party may be inside. In general, observers are permitted to move around the voting place and observe the voting process. Observers are not permitted to interfere with the privacy of any voter or the conduct of the election, or to violate any other election law. Each county party may assign site-specific observers and at-large observers for the county. No more than 3 observers from the same party may be in the voting place at the same time. Site-specific observers may be relieved after serving no less than four hours. At-large observers (statewide and countywide) may be relieved at any time throughout the day. Observers who engage in misconduct are subject to removal from the voting place.

### Observers may:
- Take notes in the voting place, including on an electronic device (but video or audio recording in the voting place is prohibited)
- Listen to non-private conversations between a voter and election official that take place in the voting place (see FAQ 8)
- Move around the voting place, including the designated area for curbside voting, with some limitations (see FAQ 8)
- Leave and reenter the voting enclosure
- Communicate via phone outside of the voting enclosure
- Witness opening and closing procedures at the voting place
- Take photographs inside the voting place BEFORE voting begins and AFTER voting has concluded, if it does not impair any election official in the opening and closing procedures or compromise the security of ballots, election equipment, or election results. Observers may not photograph security features of the voting system, including passwords entered into the tabulator or the Election Qualification Code (EQC) on tabulator tapes, or record video or audio of opening or closing procedures

### Observers may NOT:
- Interfere with the privacy of the voter
- Look at, photograph, videotape, or otherwise record the image of any voter's marked ballot
- Attempt to see how a vote voted or, if an observer somehow learns how a voter voted, reveal that information
- Photograph, videotape, or otherwise record the image of any voter within the voting enclosure, except with the permission of both the voter and the chief judge
- Impede the access of any voter to the voting place
- Interfere with a voter at any point inside the voting enclosure, including questioning voters inside the voting place
- Harass voters, voter assistants, election officials, or other observers
- Intimidate voters
- Interfere with the conduct of the election
- Assault, intimidate, or attempt to intimidate a chief judge, judge, or other election official
- Inhibit or interfere with any election official in the performance of his or her duties, including interfering with the transport of sealed ballot boxes, election equipment, or election results to the county board of elections
- Interfere with the performance of any duty imposed by law on election officials (duties related to voters include determining a voter's qualifications at check-in, instructing voters on voting procedures, assisting provisional voters, deciding whether a voter bears a reasonable resemblance to their photo ID, and counting ballots)
- Engage in electioneering including wearing campaign paraphernalia
- Make or receive phone calls while in the voting place
- Retain a voter's signature, full or partial Social Security number, date of birth, the identity of the public agency at which the registrant registered, any email address submitted for the voter's registration, or driver's license number
- Provide false information to voters about the voting process
- Knowingly swear falsely on a voter challenge form
- Remove official ballots, paper records or copies of individually voted ballots, or any other device or item whose removal from the voting enclosure could permit compromise of the integrity of either the machine count or the paper record

## RUNNERS (appointed by political party)

Runners are appointed in advance by a political party to collect lists of people who have voted at the voting site specified intervals (generally 10am, 2pm, 4pm). The runner must identify themselves to the chief judge and immediately leave the voting enclosure after receiving the list of voters. G.S. 163-45.1. Observers are also entitled to obtain a list of the individuals who have voted.

### OUTSIDE MONITORS

Anyone has the right to watch or monitor the election outside the voting place. This activity must remain outside the buffer zone, which typically extends 50 feet from the entrance of the voting place and is clearly marked. Outside monitors must stay within the area designated for election-related activity, if provided. Outside monitors may not disrupt voting, intimidate voters, or otherwise impede access to the polls. On-site elections officials have the duty to ensure a safe and orderly voting site where voters are not obstructed. These officials are authorized to remove anyone who is disruptive. G.S. 163-48.

## Frequently Asked Questions About Observers

1. A countywide observer arrives at the voting site at 8am and leaves at 9am, when they are replaced by a different countywide observer. Is this allowed?

   Yes. There is no minimum amount of time a countywide or statewide observer may serve before being replaced.

2. How will election officials and voters know that there is an observer on-site?

   Observers will check in with the chief judge on arrival at the voting site and the chief judge will confirm the identity of the observer. Observers are required to wear an identification tag to indicate their role at the voting site.

3. When may a site-specific observer be replaced?

   A site-specific observer, whether on Election Day or at an early voting site, may be replaced after serving for at least four hours. For example, if the observer arrives at 8:30 a.m., the observer may be replaced by another site-specific observer at 10:30 a.m. This assumes that there are two site-specific observers from that party serving. If there is only one site-specific observer serving, a second site-specific observer may arrive and serve at the same time.

4. An observer continually leaves and returns to the voting place. Is this allowed?

   In general, yes. An observer is allowed to leave and reenter the voting enclosure. However, if the observer's activity interferes with the conduct of the election or otherwise constitutes prohibited conduct, the observer is subject to removal.

5. What should county boards of elections do if an observer refuses to comply with this guide?

   If possible, the chief judge must first give the observer a written or oral warning. It is preferable that the warning be in writing to document the warning. The warning shall include the time and nature of the offense, and if possible, the observer should be provided a reasonable opportunity to correct the behavior. If the observer does not correct their behavior and the chief judge determines the observer should be removed, and the chief judge must immediately notify the director of the county board of elections. The director of the county board of elections must immediately notify the appointing authority so that a replacement observer can be appointed.

6. Are observers permitted to board a bus that contains curbside voters?

   Observers may observe the voting process from outside the vehicle provided they respect the privacy of the voter, including not standing so close that they may observe how the voter marks their ballot. The county board of elections cannot authorize observers to board a vehicle.

7. Are immediate family members of candidates allowed to be observers?

   Yes. A candidate who appears on the ballot may not serve as an observer, but a family member of the candidate may serve as an observer.

8. Where is an observer allowed to be in the voting place?

   In general, observers are permitted to move around the voting place. However, observers are not permitted to interfere with the privacy of any voter or the conduct of the election, or to violate any other election law. Observers may not stand so close to a voting booth or tabulator that they can see how a voter voted. Depending on the setup of a given voting place, there are certain areas that may be completely off-limits, such as in a small voting place where all the voting booths are located close together.

   - To protect the privacy of the voter, an election official may not allow an observer to listen to a voter (1) discussing how they will vote their ballot (with an election official or an authorized voter assistant), or (2) sharing personal information with an election official that the law makes confidential (e.g., birth date, Social Security number, driver's license number, confidential address for confidential voters).
   - State law requires county boards to provide a space in the voting place for private discussion with voters concerning irregular situations. Election officials should exercise their discretion to prevent observers from listening to conversations with voters concerning sensitive personal matters (e.g., discussions of impairments or disabilities, registration while applying for public assistance, domestic issues and restraining orders, etc.).

9. What constitutes voter intimidation?

   Voter intimidation is conduct that would make the voter reasonably fearful, threatened, or coerced during the voting process. It is a crime under state and federal law. Voter intimidation can include threats of violence, bodily harm, economic harm, legal action, dissemination of personal information, and surveillance. Voter intimidation includes an attempt to intimidate a voter that is not completed or is not successful. Whether an action constitutes voter intimidation depends on the circumstances. In determining whether a person's conduct is voter intimidation, the election official should ask themselves whether the specific circumstances confronting the voter would make the voter reasonably fearful, threatened, or coerced during the voting process, considering those circumstances from the voter's point of view.

10. Who may receive voter assistance?

    Any voter is entitled to assistance entering/exiting the voting booth and filling out a ballot. Any voter may receive such assistance from a near relative. A near relative is a spouse, parent, grandparent, sibling, child, grandchild, mother- or father-in-law, son- or daughter-in-law, stepparent, or stepchild. Voters who need assistance due to disability, blindness, or illiteracy (including lack of English proficiency) may receive assistance from anyone the voter chooses, except the voter's employer or agent of the voter's union.

    Assistants may not influence the voter's selections, take notes on anything occurring in the voting booth, or reveal how the person voted. There is no limit on the number of voters an assistant may assist. Anyone entering the polling place to assist a voter will complete a voter assistant log.

v. 2024.01



# Observer Tags

- Check in with Chief Judge
- Chief judge confirms identity and ensures person is eligible and appointed observer
- Issue a name tag (all observers are required to wear one)



**Observer**

_____
**Political Party Name/Candidate**

_____
**County Board of Elections**

**Observer**

_____
**Political Party Name/Candidate**

_____
**County Board of Elections**

**Observer**

_____
**Political Party Name/Candidate**

_____
**County Board of Elections**

**Observer**

_____
**Political Party Name/Candidate**

**Observer**

_____
**Political Party Name/Candidate**

_____
**County Board of Elections**

**Observer**

_____
**Political Party Name/Candidate**

_____
**County Board of Elections**

**Observer**

_____
**Political Party Name/Candidate**

_____
**County Board of Elections**

**Observer**

_____
**Political Party Name/Candidate**



# Observer Written Warning Template

- Chief judge has a duty to maintain order at the voting place
- May remove an observer for:
  - Engaging in conduct specifically prohibited by GS 63-45.1
  - "Good cause" which "shall include evidence that the observer could impact the conduct of the election"
- If possible, the Chief Judge will first issue a warning to the observer
- In writing using the provided template – take a photo as a record and give paper to observer
- Document on Incident Form
- If more serious, Chief Judge can remove immediately


NORTH CAROLINA
STATE BOARD OF ELECTIONS

# Observer Written Warning Template

_____ County Board of Elections

Observer Written Warning

Pursuant to G.S. § 163-45.1, the chief judge may remove an observer for:

1. Engaging in conduct specifically prohibited by G.S. § 163-45.1. Under that law, an observer may not:
   - Look at, photograph, videotape, or otherwise record the image of any voter's marked ballot;
   - Impede the access of any voter to the voting place;
   - Inhibit or interfere with any election official in the performance of his or her duties, including interfering with the transport of sealed ballot boxes, election equipment, or election results to the county board of elections;
   - Engage in electioneering including wearing campaign paraphernalia;
   - Make or receive phone calls while in the voting place;
   - Interfere with the privacy of the voter;
   - Interfere with the conduct of the election;

2. "Good cause," which "shall include evidence that the observer could impact the conduct of the election." An observer may not engage in the following conduct that the law prohibits at the voting place and which may impact the conduct of the elections, depending on the circumstances:
   - Photograph, videotape, or otherwise record the image of any voter within the voting enclosure, except with the permission of both the voter and the chief judge;
   - Interfere with a voter at any point inside the voting enclosure, including questioning voters inside the voting place;
   - Attempt to see how a voter voted or, if an observer somehow learns how a voter voted, reveal that information;
   - Retain a voter's signature, full or partial Social Security number, date of birth, the identity of the public agency at which the registrant registered, any email address submitted for the voter's registration, or driver's license number;
   - Provide false information to voters about the voting process;
   - Knowingly swear falsely on a voter challenge form;
   - Harass voters, voter assistants, election officials, or other observers;
   - Interfere with the performance of any duty imposed by law on election officials (duties related to voters include determining a voter's qualifications at check-in, instructing voters on voting procedures, assisting provisional voters, deciding whether a voter bears a reasonable resemblance to their photo ID, and counting ballots);
   - Assault, intimidate, or attempt to intimidate a chief judge, judge, or other election official;
   - Remove official ballots, paper records or copies of individually voted ballots, or any other device or item whose removal from the voting enclosure could permit compromise of the integrity of either the machine count or the paper record; and
   - Intimidate voters.

Additionally, engaging in conduct that is not clearly prohibited by the law but which could nonetheless impact the conduct of the election, is also grounds for removal.

You, _____ (observer name), are receiving a written warning for your actions.

At _____ (date and time), you engaged in the following prohibited conduct (list reason here):

If you continue to engage in this conduct, you may be removed as an observer for this election. Your removal could also impact your ability to serve as on observer in future elections.

X_____

Chief Judge

Printed Name: _____

Voting Site: _____



# Campaigners

- Cannot block access
- If you have set the electioneering zone in advance, managing campaigners will be easier
- Not allowed in enclosure
- Issues?  Call campaign/candidate

*For activities outside the buffer zone, county boards must carefully weigh and consider any limitations on speech, including the display of signs or symbols, by private individuals. The area outside the buffer zone is a type of public forum, and the First Amendment provides strong protection for political activity in public forums. We must balance these First Amendment protections with the right of every voter to enter the voting place freely. Consistent with this balance, county boards may enforce reasonable regulations ensuring safe and unobstructed access to parking lots, parking spaces, the voting place itself, and curbside voting, while also accommodating electioneering activity adjacent to the buffer zone—e.g., traffic controls, stanchions, gates, or other tools.   NM 2022-12*





# Media

- Must get approval from Chief Judge before entering voting enclosure
- The Chief Judge may allow the media to photograph or record video inside the voting enclosure, with consent of the voter(s) being filmed or photographed.
- May not interview voters within the voting enclosure.
- If photographing or videotaping a candidate in the voting enclosure, only the permission of the candidate (not the Chief Judge) is required.
- It is a violation of law to photograph or videotape a marked ballot.





Questions?



Exhibit 3


Electronics Notice Sign



# NOTICE

It is <u>illegal</u> to record a voted ballot or to communicate via an electronic device while voting.