# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| SUSAN JANE HOGARTH, | |
| *Plaintiff*, | Case No.: 5:24-cv-00481-LF |
| v. | Hon. Louise W. Flanagan |
| KAREN BRINSON BELL, et al., | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| *Defendants*. | |

# TABLE OF CONTENTS

**Pages:**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

    I.    Hogarth Has Standing Against All Defendants and All Provisions. ........................................................................................ 1

        A.    Hogarth sued the proper defendants because each has authority to enforce North Carolina's Ballot Selfie Ban. ................................................................................ 2

        B.    Hogarth has standing to challenge the Ballot Photography Provisions as to absentee ballots. .......................... 4

        C.    Hogarth has standing to challenge the Voting Enclosure Provision. ............................................................ 5

    II.    The Ballot Photography Provisions Fail the Relevant First Amendment Tests. ............................................................................. 5

        A.    Defendants fail to provide evidence to meet their burdens under strict or intermediate scrutiny. ........................... 5

        B.    The Ballot Photography Provisions are subject to strict scrutiny and would fail under both the nonpublic forum balancing test and *Anderson-Burdick* in any event. ............................................................ 7

    III.    The Voting Enclosure Provision is an Unreasonable Restriction on Speech in a Nonpublic Forum. ......................................... 9

    IV.    The Remaining Factors Favor Entry of a Preliminary Injunction. ............................................................................................ 10

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)Cases**

*303 Creative v. Elenis*,
   600 U.S. 570 (2023) ............................................................................................... 4

*Bostic v. Schaefer*,
   760 F.3d 352 (4th Cir. 2014) .................................................................................. 2

*Brown v. Ent. Merch. Ass'n*,
   564 U.S. 786 (2011) ............................................................................................... 6

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013) .................................................................................. 1

*Elrod v. Burns*,
   427 U.S. 347 (1976) ............................................................................................. 10

*Giovani Carandola, Ltd. v. Bason*,
   303 F.3d 507 (4th Cir. 2002) ................................................................................ 10

*Goldfarb v. Mayor and City Council of Baltimore*,
   791 F.3d 500 (4th Cit. 2015) .................................................................................. 4

*Grabarczyk v. Stein*,
   No. 5:19-CV-48-BO, 2019 WL 4235356 (E.D.N.C. Sept. 5, 2019) ...................... 4

*Kendall v. Balcerzak*, 650 F.3d 515, 525 (4th Cir. 2011) ............................................. 8

*Laufer v. Naranda Hotels, LLC*,
   60 F.4th 156 (4th Cir. 2023) ................................................................................... 3

*Lujan v. Def. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................... 1

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ........................................................................................... 6, 7

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ............................................................................................... 8

*McLaughlin v. N.C. Bd. of Elections*,
   65 F.3d 1215 (4th Cir. 1995) .............................................................................. 8, 9

*Merrill v. Milligan*,
   142 S. Ct. 879 (2022) ........................................................................................... 10

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,
   597 F.3d 570 (4th Cir. 2010) .................................................................................. 9

*N.C. Right to Life, Inc. v. Bartlett*,
   168 F.3d 705 (4th Cir. 1999) .............................................................................. 2, 3

*PETA v. N.C. Farm Bureau Fed'n, Inc.*,
  60 F.4th 815 (4th Cir. 2023) .......................................................................... 8

*Porter v. Clarke*,
  852 F.3d 358 (4th Cir. 2017) .......................................................................... 3

*Rideout v. Gardner*,
  838 F.3d 65 (1st Cir. 2016) ........................................................................ 6, 10

*Rideout v. Gardner*,
  123 F. Supp. 3d 218 (D.N.H. 2015) ................................................................ 8

*S.C. Wildlife Fed'n v. Limehouse*,
  549 F.3d 324 (4th Cir. 2008) .......................................................................... 2

*Silberberg v. Bd. of Elections of N.Y.*,
  272 F. Supp. 3d 454 (S.D.N.Y. 2017) ............................................................ 6

*Turner Broad. Sys. v. FCC*,
  512 U.S. 622 (1994) .................................................................................. 5, 6

*Waste Mgmt. Holdings, Inc v. Gilmore*,
  252 F.3d 316 (4th Cir. 2001) .......................................................................... 4

**Statutes**

N.C. Gen. Stat. § 114-11.6 ................................................................................ 3

N.C. Gen. Stat. § 163-166.2 .............................................................................. 6

N.C. Gen. Stat. § 163-273 .................................................................................. 6

N.C. Gen. Stat. § 163-274 .................................................................................. 6

N.C. Gen. Stat. § 163-48 .................................................................................... 6

**Rules**

Fed. R. Civ. P. 19 ............................................................................................... 2

## INTRODUCTION

Ballot selfies combine two cherished American freedoms—voting and political expression. As the First Circuit and several district courts have held, ballot selfies are core political speech that the State cannot ban without supplying concrete evidence of their harm to compelling state interests. But North Carolina comes to the court empty-handed. Defendants' ban is a content-based regulation of speech, so they must provide evidence showing it is narrowly tailored to achieve a compelling government interest. They establish neither. North Carolina's Ballot Selfie Ban—like bans in New Hampshire, Georgia, Indiana, and Colorado—thus violates the First Amendment and should meet the same fate: an injunction.

Contrary to their attempts to distance themselves from the laws they enforce, each of the Defendants has a tangible and legally recognized link to enforcing the Ban and to Plaintiff Susan Hogarth's harm. The County Board admits to investigating and reporting violations of the Ban. The District Attorney and Attorney General admit to prosecutorial authority for the same. As Hogarth has taken ballot selfies and intends to continue doing so, she is squarely in the statute's sights, and the enforcement letter she received threating prosecution for a past ballot selfie removes any doubt. This Court should uphold the First Amendment and enjoin the Ban.

## ARGUMENT

I. **Hogarth Has Standing Against All Defendants and All Provisions.**

Hogarth has Article III standing to challenge each provision of the Ballot Selfie Ban against each Defendant. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992); *cf. Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (standing requirements are

"somewhat relaxed in First Amendment cases" to prevent chilling speech). She suffers injury in fact through a "credible threat of prosecution" as is presumed with a challenge to "a non-moribund statute." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999). Her injury is traceable to each Defendant because each has authority to enforce the Ballot Selfie Ban and plays a role in doing so. And Defendants do not dispute that an injunction against each of them would redress Hogarth's injury by allowing her to take and share ballot selfies free from threats and fear of prosecution.

### A. Hogarth sued the proper defendants because each has authority to enforce North Carolina's Ballot Selfie Ban.

Hogarth has standing to sue the Wake County Board of Elections members, District Attorney Freeman, and Attorney General Stein in their official capacities because each has authority to enforce the Ballot Selfie Ban.

<u>Wake County Board of Elections</u>. Hogarth's First Amendment injuries are traceable to the County Board Defendants because they are the "boots on the ground" (ECF No. 40 at 3–5), responsible for "carrying out" the challenged laws. *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008); *see also Bostic v. Schaefer*, 760 F.3d 352, 372 (4th Cir. 2014) (clerk was proper defendant in challenge to marriage laws he implemented). They claim their role is purely "ministerial" (ECF No. 40 at 4), but that is not so. They post polling place signs banning ballot photos (ECF No. 41-1 at 59, 84)—including ballot selfies—and investigate and refer Ballot Selfie Ban violations to the State Board. (ECF No. 1 at ¶¶ 14, 16.) They are proper defendants and necessary parties for complete relief. *See* Fed. R. Civ. P. 19(a)(1)(A).

Wake County District Attorney. The District Attorney acknowledges she is "specifically empowered to prosecute violations" of all "the challenged statutes." (ECF No. 42 at 7). This "credible threat of prosecution" creates an injury in fact, *N.C. Right to Life*, 168 F.3d at 710, which is traceable to the District Attorney's statutory authority and redressable by an injunction. Her declaration "disavow[ing] prosecuting Hogarth for her past or future ballot selfies pending determination of the constitutionality of the challenged statutes" does not impact standing. (ECF No. 42 at 7.) Hogarth had standing "at the time the complaint was filed," which is when courts assess standing. *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (internal quotation marks omitted). The declaration cannot vitiate that jurisdiction because the District Attorney has not entered an "irrevocable" or "unconditional" agreement not to prosecute and "retains the authority and capacity to repeat an alleged harm." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (internal quotation marks omitted) (voluntary cessation does not typically defeat jurisdiction).

North Carolina Attorney General. Hogarth has standing to sue Attorney General Stein because his office "may prosecute or assist in the prosecution" of Ballot Selfie Ban violations if asked. State Br. at 24; *see also* N.C. Gen. Stat. § 114-11.6. That authority sufficiently establishes Attorney General Stein's connection to enforcing the Ban because if he is not enjoined, he may bring criminal charges against Hogarth. This Court has found jurisdiction over injunctive relief claims against Attorney General Stein for similar reasons. *See Grabarczyk v. Stein*, No. 5:19-CV-48-

3

BO, 2019 WL 4235356, at *3 (E.D.N.C. Sept. 5, 2019) (Attorney General's "authority to prosecute or assist in the prosecution of criminal cases" at the request of district attorneys conferred jurisdiction and satisfied Article III).[1] The same rule applies here.

## B. Hogarth has standing to challenge the Ballot Photography Provisions as to absentee ballots.

Hogarth has standing to challenge the Ballot Photography Provisions in full because she will take a ballot selfie each time she votes and may vote by absentee ballot in the future. Her intent to vote absentee is not, as the State Defendants claim, "speculative" (ECF No. 41 at 10–11), because Hogarth has voted by absentee ballot before,[2] and may do so again.[3] Hogarth need only plead that she may again take an absentee ballot selfie in the future—as she has done (Verified Compl. ¶¶ 110–12)—not a specific timeline for doing so. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 581 (2023) (standing lied where plaintiff alleged "*if* she enters the wedding website business to celebrate marriages she does endorse, she faces a credible threat" of a First Amendment violation) (emphasis added).

---

[1] None of the cases Attorney General Stein cites are relevant. Only one is on point, dismissing a Governor who had only a "general duty to enforce the laws." *Waste Mgmt. Holdings, Inc v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). Attorney General Stein's duty is more specific because it deals with prosecution specifically rather than simply a general duty to enforce the law.

[2] *See* Exhibit A (voting record for Susan Jane Hogarth accessed from the North Carolina Board of Election's voter search website showing she voted absentee in 2004). Voters' records are public, showing whether voters voted absentee or not. The Court may therefore take judicial notice of Hogarth's voter record. *See Goldfarb v. Mayor and City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). ("[A] court may properly take judicial notice of matters of public records[.]" (citations omitted)).

[3] North Carolina permits voters to vote absentee without an excuse, *see* N.C. Gen. Stat. § 163-226, so Hogarth may choose to vote absentee without any intervening reason. She cannot—and need not—know in advance when an unexpected event may prevent her from voting in person.

### C. Hogarth has standing to challenge the Voting Enclosure Provision.

Banning Hogarth from photographing herself without a county official's permission creates an injury in fact. She not only wants to photograph her ballot (ECF No. 41 at 19), but to photograph herself, too. That puts her in the crosshairs of the Voting Enclosure Provision. While true that, as a candidate, Hogarth will not need a county official's permission to take a selfie in the voting enclosure this year (*see* ECF No. 40 at 5–6), she has photographed herself when not a candidate and will again in the future. (ECF No. 1 ¶¶ 112, 179–80.) The requirement that she seek the government's permission to photograph herself thus burdens her speech, and she may still face investigation or charges relating to past ballot selfies taken without a county official's permission. She therefore has standing to challenge the Provision.

## II. The Ballot Photography Provisions Fail the Relevant First Amendment Tests.

Defendants fail strict and intermediate First Amendment scrutiny because they present no evidence supporting their asserted government interests. Their invocations of nonpublic forum or *Anderson-Burdick* analyses also fail—and even if those tests applied, the lack of evidence would be fatal to both.

### A. Defendants fail to provide evidence to meet their burdens under strict or intermediate scrutiny.

Defendants have not met their burden to prove their "recited harms are real, not merely conjectural" as the First Amendment requires. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994). They assert banning ballot selfies advances interests in preventing "vote buying," "social coercion," "delays," "distraction," "voter

5

intimidation," and the violation of other voters' privacy. (ECF No. 41 at 12–13.) But they rely on the same four stale and never-prosecuted vote-buying allegations that Hogarth addressed in her opening brief, and they fail to show any of them involved ballot selfies. (ECF No. 41 at 14–15; ECF No. 11 at 15–16.)

Without evidence tying ballot selfies to their asserted interests, Defendants cannot meet their burden under strict or intermediate scrutiny. *See* ECF No. 11 at 13–16; *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 799–800 (2011) (regulation of speech failed strict scrutiny absent evidence of "direct causal link" between the speech regulated and asserted harm); *Turner Broad. Sys.*, 512 U.S. at 664 (speech regulation failed intermediate scrutiny absent evidence it would alleviate asserted harms in a direct and material way"). The same lack of evidence of a causal link doomed nearly every other ballot selfie ban. (*See* ECF 11 at 9 n.2 (listing cases).) And the *only* case to uphold one relied on "ample evidence" of "vote buying and voter intimidation in New York, both historic and contemporary," *Silberberg v. Bd. of Elections of N.Y.*, 272 F. Supp. 3d 454, 471 (S.D.N.Y. 2017). Defendants show nothing of the sort.

Defendants also fail to prove the Ban is narrowly tailored under either strict or intermediate scrutiny. (*See* ECF No. 11 at 14 n.7, 17–20.) The state must consider "less intrusive" and "more targeted" means than broad speech bans. *McCullen v. Coakley*, 573 U.S. 464, 492–93 (2014) (applying intermediate scrutiny); *see Rideout v. Gardner*, 838 F.3d 65 (1st Cir. 2016) (same). Defendants do not claim (much less establish) that existing laws that directly criminalize vote buying are inadequate. (*See* ECF No. 11 at 20.) Nor do they do so for existing laws that address their other

6

Case 5:24-cv-00481-FL    Document 43    Filed 09/24/24    Page 10 of 16

asserted harms.⁴ In short, the State cannot meet all of its interests without burdening the core political speech of every North Carolina adult.

The State Defendants claim allowing ballot selfies will require poll workers to do more work to identify voters who use photography to disrupt or who engage in election fraud. Putting aside that Defendants offer no evidence to support this, their argument that "the state need not risk these outcomes in the name of narrow tailoring" (ECF No. 41 at 18), is wholly at odds with the rule that First Amendment tailoring exists *precisely* to "prevent[] the government from too readily 'sacrific[ing] speech for efficiency.'" *McCullen*, 573 U.S. at 486. And enjoining the Ballot Photography Provisions will not cause additional disruption or unduly burden poll workers because voters can already freely photograph everything in the voting enclosure besides a completed ballot or non-candidate voter. (ECF No. 11 at 12–13.) North Carolina's unjustified, content-based regulations are thus unconstitutional.

**B.     The Ballot Photography Provisions are subject to strict scrutiny and would fail under both the nonpublic-forum balancing test and *Anderson-Burdick* in any event.**

The Ballot Photography Provisions must face strict scrutiny as content-based regulations notwithstanding Defendants' claims that they regulate either speech in a nonpublic forum or the mechanics of elections subject to the *Anderson-Burdick* test. (ECF No. 41 at 8–10, 11–12.) As to the former, the government cannot call a law that

---

⁴ *See* N.C. Gen. Stat. §§ 163-274(a)(7) (social coercion and intimidation); 163-273(a)(5) (delay in voting booth); 163-166.2 (requiring elections officials to organize voting enclosures to ensure voters can vote in secret); 163-48 (requiring chief judges to prevent intimidation). Notably, as to the last of these, the State Board guide for law enforcement includes eight "signs of voter intimidation," none of which is photography. (Steinbaugh Decl. ¶ 13 and Ex. J at 7.)

applies beyond the polling place a regulation of a "nonpublic forum." Voters can fill out absentee ballots in a park, at their kitchen table, or in any number of areas "far away from the polling place." *Rideout v. Gardner*, 123 F. Supp. 3d 218, 230 (D.N.H. 2015), *aff'd,* 838 F.3d 65. And perhaps more to the point, ballot selfies are almost always shared "far away from the polling place," so bans on ballot photography are not "merely a restriction on speech in a nonpublic forum."[5] *Id.* Strict scrutiny applies. *See PETA v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 829–30 (4th Cir. 2023). (ECF No. 11 at 9 (discussing *PETA*).)

The *Anderson-Burdick* test is likewise inapposite, as it does not apply when challenged election-related laws: (1) are direct regulations of "pure" speech rather than of election "mechanics" like who is eligible to vote or how candidates get on the ballot, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 344–46 (1995); (2) impose "severe[] burden[s]" on protected speech, *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 (4th Cir. 1995); or (3) are not "content neutral," *Kendall v. Balcerzak*, 650 F.3d 515, 525 (4th Cir. 2011). Defendants ignore these controlling tests, all of which the Ballot Photography provisions fail: (1) they directly ban taking and sharing photographs that are not part of an election's "mechanics"; (2) they severely burden Hogarth's speech by enacting a total ban;[6] and (3) they are content based, targeting

---

[5] Defendants also argue that speech *on* a ballot is a nonpublic forum, but that is irrelevant to whether a ban on taking or sharing a picture *of* a ballot regulates speech *in* a nonpublic forum. (ECF No. 41 at 8.)

[6] A burden on the content of speech cannot get more severe than a total ban. Defendants' proposed substitute, photographing a sample ballot, amounts to "say something else." It does not show how Hogarth actually voted and would, instead show an obviously marked "sample ballot." See [Exhibit B](#) (sample ballot for Hogarth's precinct from the Wake County Board of Elections' Website with the phrase "sample ballot" appearing 45 times on her sample ballot).

only images that include completed ballots. There is a reason no court reviewing ballot selfie bans has applied *Anderson-Burdick*. (*See* ECF No. 11 at 9 n. 2. (listing cases).)

Even if the nonpublic-forum balancing test or *Anderson-Burdick* balancing applied to the Ballot Photography Provisions, Hogarth would still likely prevail as both tests require evidence to outweigh restrictions on protected speech under Fourth Circuit precedent. *See News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth*ority. 597 F.3d 570, 579–81 (4th Cir. 2010) (invalidating regulation in nonpublic forum because government "offered no evidence" of purported harms). (ECF No. 11 at 22–23.) Under *Anderson-Burdick*, "the character and magnitude" of a total ban is severe, while there is no evidence that ballot selfies produce harm at the polling place—let alone cause "chaos" or contribute to fraud. *McLaughlin*, 65 F.3d at 1221. Because Defendants have provided no evidence to support their speculative claims, Hogarth would likely prevail under either test, had they applied.

### III. The Voting Enclosure Provision is an Unreasonable Restriction on Speech in a Nonpublic Forum.

The Voting Enclosure Provision is an unreasonable restriction on speech in a nonpublic forum and Defendants fail to refute that. The State Defendants' assurance that "officials are provided with clear direction to guide their decisions" enforcing the "Voter Enclosure Provision" (ECF No. 41 at 21), is baseless. In fact, their own documents offer nothing on the Provision other than simply restating it. (ECF No. 41-1 at 18, 94.) Recitation is not explanation. The Provision grants quintessential unbridled discretion—it has no "objective, workable standards" and is unreasonable

9

Case 5:24-cv-00481-FL    Document 43    Filed 09/24/24    Page 13 of 16

under *Minn. Voters All. v. Mansky*. 585 U.S. 1, 21 (2018). (*See* ECF No. 11 at 20–23.) It also fails the nonpublic forum and *Anderson-Burdick* tests because Defendants provide no evidence to support their asserted interests. *See* Part II.B, *supra*. Hogarth is likely to prevail on her challenge to the Voting Enclosure Provision.

**IV.     The Remaining Factors Favor Entry of a Preliminary Injunction.**

The remaining preliminary injunction factors collapse into the above merits given this is a First Amendment case. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir. 2002). Irreparable harm is presumed, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and banning ballot selfies, despite their "special communicative value," *Rideout*, 838 F.3d at 75, is far from a "minimal limit" on voters. (ECF No. 41 at 25.)  Nor do proximity to the election or alleged delay in suing weigh against an injunction given that the State Board took almost four months to respond to Hogarth's public records request. (ECF No. 29 at 2.) As to the State's burden, Hogarth actually asks Defendants to *do less*: stop prohibiting ballot selfies. Staying the hands of poll workers hardly imposes "significant cost, confusion, or hardship" that warrants courts abstaining from deciding election-related matters. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (cited at ECF No. 11 at 25).

## CONCLUSION

For the foregoing reasons, Hogarth asks the Court to grant her preliminary injunction motion.

Respectfully submitted,

| | |
|---|---|
| /s/ James M. Dedman IV | /s/ Jeffrey D. Zeman |
| JAMES M. DEDMAN IV | JEFFREY D. ZEMAN* |
|    (NC Bar # 37415) |    (Pa. Bar No. 328570) |
| GALLIVAN WHITE & BOYD P.A. | DANIEL M. ORTNER* |
| 6805 Carnegie Blvd, Ste. 200 |    (Ca. Bar No. 329866) |
| Charlotte, NC, 28211 | JAMES M. DIAZ** |
| (704)-552-1712 |    (Vt. Bar. No. 5014) |
| jdedman@gwblawfirm.com | FOUNDATION FOR INDIVIDUAL |
| |    RIGHTS AND EXPRESSION |
| ERIC SPENGLER | 510 Walnut St., Ste. 900 |
|    (NC Bar # 47165) | Philadelphia, PA 19106 |
| SPENGLER + AGANS PLLC | (215) 717-3473 |
| 352 N. Caswell Rd. | jeff.zeman@thefire.org |
| Charlotte, NC 28204 | daniel.ortner@thefire.org |
| (704) 999-8733 | jay.diaz@thefire.org |
| eric@sab.law | |
| | *Special Appearance pursuant to Local Rule 83.1(e) |
| | |
| | **Special Appearance pursuant to Local Rule 83.1(e) Forthcoming |

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2024, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Jeffrey D. Zeman
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
