IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:24-CV-481

| | |
|---|---|
| SUSAN JANE HOGARTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KAREN BRINSON BELL, in her | ) |
| official capacity as Executive Director of | ) |
| the North Carolina State Board of | ) |
| Elections; et al., | ) |
| | ) |
| Defendants. | ) |

**WCBOE DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS (F.R.Civ P. 12(b)(1)) IN LIEU OF ANSWER**

NOW COME the defendants Olivia McCall, in her official capacity as Director of the Wake County Board of Elections ("WCBOE") (hereinafter "Defendant Director McCall"); Erica Porter, in her official capacity as Chair of the WCBOE (hereinafter "Defendant Chair Porter"); Angela Hawkins, in her official capacity as Secretary of the WCBOE (hereinafter "Defendant Secretary Hawkins"); and Greg Flynn, Gerry Cohen and Keith Weatherly (hereinafter "Defendant Member Flynn" "Defendant Member Cohen" and "Defendant Member Weatherly"), in their official capacities as Members of the WCBOE, (hereinafter collectively referred to as "WCBOE Defendants"), by and through undersigned counsel, and pursuant to Local Civil Rule 7.2, F.R.Civ. P. 12(b)(1) hereby submit this Brief in Support of WCBOE Defendants' Motion to Dismiss in Lieu of Answer filed contemporaneously herewith.

## STANDARD OF LEGAL REVIEW

Rule 12(b) authorizes dismissal based on a dispositive issue of law. *Neitzke v. Williams*, 90 U.S. 319 (1989). A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a plaintiff's complaint, whereby the defendant may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[ ] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.,* 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555.

## NATURE OF THE CASE

Plaintiff filed this action on August 22, 2024, in this Court alleging a violation of her First Amendment rights. Plaintiff seeks declaratory and injunctive relief declaring that "North Carolina's state and county boards of elections regularly warn the public that ballot selfies are illegal and investigate voters who do nothing more than take and share these pictures" [DE 2, ¶ 3] and that North Carolina law "criminalize(s) ballot selfies", which plaintiff claims are a way for voters to express "voter pride." [DE 2, ¶ 5]

## STATEMENT OF THE FACTS

Plaintiff, Susan Jane Hogarth (hereinafter "Plaintiff") is a resident and registered voter in Wake County, North Carolina [DE 2, ¶ 9] On March 5, 2024, Plaintiff took a ballot selfie while in the voting booth and shared it on social media. [DE 2, ¶ 10] On March 13, 2024, the State Board of Elections sent a letter to Plaintiff requesting that she take the post down citing N.C.G.S. 163-166.3(c), which states that it is unlawful to "photograph, videotape, or otherwise record the image of a voted ballot for any purpose not otherwise permitted under law." [DE 11-3]

Plaintiff is a member and past Chair of the Libertarian Party of North Carolina and will appear on the November 5, 2024 ballot as a candidate for North Carolina State Senate District 13 [DE 2, ¶ 116] According to her Complaint, Plaintiff intends to vote in person on November 5th and also to take a photograph of herself in the voting booth with her completed ballot, including the portion of her ballot showing her vote, and post her photograph on social media. [DE 2, ¶¶ 118 – 123] Plaintiff claims that by doing so, she is in immediate risk of criminal prosecution. [DE 2, ¶ 128] Plaintiff further alleges that she faces ongoing and credible threat of prosecution for her March 5, 2024 ballot selfie. [DE 2, ¶ 131]

## ARGUMENT

I. *Plaintiff has identified no injury or potential injuries that can be fairly traceable to any action of The Wake County Board of Elections and its Director Olivia McCall and thus they are not proper Parties with respect to plaintiff's First and Second Causes of Action and the WCBOE Defendants and McCall should be dismissed.*

Plaintiff's First and Second Causes of Action challenge the constitutionality of what she characterizes as the five "ballot photography" provisions of Chapter 163 of the North Carolina General Statutes. Her Third Cause of Action does not involve these defendants. The five provisions can be generally denominated as four ballot photography provisions (ballot selfies) and one voter photography provision (voter enclosure photos). Plaintiff claims injury (or

3

Case 5:24-cv-00481-FL   Document 54   Filed 10/18/24   Page 3 of 10

potential injury) as a result of the threat of criminal prosecution, something these defendants are without power to do. Even so, this claimed "injury" cannot be plausibly said to be fairly traceable to any challenged action of a county board of elections. Simply put, the WCBOE defendants are not in a position to provide redress to any of the claimed injuries plaintiff purports to suffer or have suffered and thus the court lacks subject matter jurisdiction over these defendants for lack of standing. Irrespective of the merits of the claims, plaintiff has the wrong party named here. Accordingly, the court lacks subject matter jurisdiction.

*Ballot Selfies*

Of the five provisions plaintiff challenges, four of them generally involve varying prohibition of photographing voted ballots, disclosing contents of a voted ballot or disclosing how another individual voted. First, it is axiomatic that county boards of elections have no legislative authority. Indeed, the powers and duties of the one hundred (100) county boards are limited and well defined. County boards act only by authority given to them under state or federal law, directives from the State Board or from court orders. N.C.G.S. § 163-33 enumerates eighteen (18) specific powers and duties of county boards of elections, and these include making rules, regulations and instructions, not inconsistent with law, with directives of the state director and the state board. N.C.G.S. § 163-33(1). Plaintiff admits this in paragraph eleven (11) of the complaint. ("The North Carolina State Board of elections supervises the state's primary and general elections…[and] advise[s] county election boards on how to conduct elections and 'compel observance of the elections laws by county boards of elections and other elections officers'" *citing* N.C.G.S. § 163-22(c)). [DE 2, ¶ 11]

In paragraph ninety-eight (98) and ninety-nine (99) plaintiff alleges that WCBOE "warns" voters that photographing a ballot is illegal – in other words, the county boards inform

voters what the law says. Plaintiff then alleges that eight (8) unnamed county boards reported alleged violations of the ballot photography statutes and in paragraph one hundred and one (101) alleges that on November 8, 2022, the (then) director of WCBOE reported a single photo violation to the state board of elections – a duty imposed by law. (Among the enumerated duties of county boards is the duty to "investigate irregularities, nonperformance of duties, and violations of laws by election officers and other persons, *and to report violations to the State Board of Elections (emphasis added))*. N.C. Gen. Stat. Ann. § 163-33(3) Plaintiff further mischaracterizes the limited investigatory powers of county boards of elections with that of the state board of elections and completely disregards the county board of elections lack of authority to investigate alleged voter misconduct outlined in Article 22 of Chapter 163. N.C.G.S. § 163-278 (a) confers all investigatory authority on the state board and district attorney for ballot selfie violations arising under N.C.G.S. § 163-273 by stating: "*It shall be the duty of the State Board and district attorneys to investigate violations of this Article, and the State Board and district attorneys are authorized and empowered to subpoena and compel the attendance of any person before them for the purpose of making such investigation.*"

In analyzing plaintiff's allegations of constitutional "injury", it is clear that the central injury she claims is an infringement on her first amendment right to free speech because these five statutory provisions identified in the complaint force her to choose to "either take and share ballot selfies under the threat of criminal prosecution or to self-censor by forgoing expressing herself." (DE 2, ¶ 124). It is important to note that while plaintiff alleges that as many as ten (10) different county boards have "submitted reports of voters photographing completed ballots to the state board" (see DE 2, ¶¶ 101, 104), she alleges nowhere in the complaint that any county board has referred any one of these "reports" for criminal prosecution. In other words, plaintiff has

5

identified no action which could be fairly traceable to any act of a county board of elections or its director.

The United States Supreme Court has established three elements required for a party invoking federal jurisdiction to establish standing. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is concrete and particularized, (internal citations omitted). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court." *Citing Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976); Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

"The 'fairly traceable' requirement ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000). A party does not satisfy the traceability requirement when they "can only speculate" about whether a party will pursue a certain action in a specific way. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). A plaintiff must merely show that "a particular defendant's [actions] has affected or has the potential to affect his interests." *Meyer v. McMaster*, 394 F. Supp. 3d 550, 561 (D.S.C. 2019) *citing Friends of the Earth*, *supra*.

Here, the alleged "injury" is not based upon any action remotely traceable to these defendants. In a case very analogous, this court similarly found a lack of standing because the alleged injury was not fairly traceable to an action of the defendant City – in that case, an

emergency order prohibiting travel to Dare County by non-residents.[1] *Blackburn v. Dare County.,* 486 F. Supp. 3d 988, 994 (E.D.N.C. 2020), aff'd, 58 F. 4th 807 (4th Cir. 2023)

Here, the allegations of plaintiff's complaint do not identify any nexus between plaintiff's threatened prosecution and any action, actual or potential, which could be taken by the Wake County Board or its Director. Plaintiff alleges that the State Board refers individuals who have taken or shared photos of completed ballots to district attorneys for criminal prosecution. (DE 2, ¶ 97). However, the complaint is completely void of any allegation that a county board, much less the Wake County Board, has referred anyone for criminal prosecution. At most, plaintiff identified one instance of a report to the State Board of a ballot photo by a Wake County Director – and that action was mandated by law. Thus, the constitutional infirmity of these challenged ballot photography statutes, if indeed any exists, cannot be fairly attributable to a non-elected, non-legislative local body whose responsibilities and powers emanate directly from the North Carolina General Assembly and the State Board of Elections.

*Voting Enclosure Provision*

Perhaps the provision challenged by plaintiff that even remotely touches upon an "action" of the county is the provision of N.C.G.S. § 163-166.3(b). This provision provides in pertinent part that "[n]o person shall photograph, videotape, or otherwise record the image of any voter within the voting enclosure, except with the permission of both the voter and the chief judge of the precinct. If the voter is a candidate, only the permission of the voter is required." Plaintiff specifically alleges that "county boards appoint the 'chief judge of the precinct' who can deny permission to take a photo of a voter for any reason." (DE 2, ¶ 47). First, how enforcement of this provision would be attributable to the county board is unknown. While it is true that the

---

[1] This Court noted that "[t]he challenged regulation, which prohibited travel to the county by nonresident property owners, was promulgated by defendant County." *Blackburn v. Dare Co.*, 486 F. Supp. 3d at 994.

county board appoints these judges, the position is created by statute. Plaintiff does not consider the fact that the purpose of this "voting enclosure" statute is obvious on its face- voters in the voting enclosure do and should have the right to some privacy and be given the right to consent or not consent to have their likeness potentially distributed via social media or elsewhere. Second, the chief judge is there for a reason – they are appointed by law and are required to "conduct the primaries and elections within their respective precincts." N.C.G.S. § 163-41.

Plaintiff's concern with this provision seems to be that it does not have an exception for ballot selfies – voters' photos of themselves in the voting enclosure." (DE 2, ¶ 48). This concern is misplaced since a voter seeking to take a selfie would, by the definition of a selfie, necessarily consent to having their own photo taken. Moreover, plaintiff cannot seriously argue that a chief judge should not have some leeway in keeping order in their respective precincts when conducting elections in the event a photographer desires to photograph voters in the voting enclosure. Secondly, the chief judge is statutorily charged with conducting the primary and elections within their respective precincts and this responsibility carries with it the duty to maintain order. The paramount priority of election officials "on the ground" on election day is the orderly, efficient administration of the bedrock of our democracy – the electoral process. The intimation that a chief judge would prohibit a voter who takes a selfie is not only speculative, it is also improbable – and plaintiff seems to agree in that she alleges that she has voted in nearly every national election in the last ten (10) years and "taken and shared ballot selfies and intends to do so again." (DE 2, ¶ 9). Nowhere in the complaint does plaintiff allege that any Wake County Board of Elections official has prohibited her from taking a ballot selfie or directly communicated with her in any manner related to her ballot selfies. Plaintiff admits this in her complaint by stating she took the ballot selfie without requesting permission from a chief judge

or poll worker. (DE 2, ¶ 65) Finally, plaintiff admits she is a candidate standing for election this year and is excepted from this provision. Thus, there is no injury or potential injury that can be fairly traceable to the local county board of elections, its director or members.

## CONCLUSION

WHEREFORE, because the plaintiff has not identified a causal connection between any alleged or potential injury which is or could be fairly traceable to any challenged action of the WCBOE Defendants, these defendants pray the Court dismiss this action as to them and for such other relief that the Court may deem just.

Respectfully submitted this the 18th day of October, 2024.

/s/ *Roger A. Askew*
Roger A. Askew, NCSB # 18081
Senior Deputy County Attorney

/s/ *Allison P. Cooper*
Allison P. Cooper, NCSB #34160
Senior Deputy County Attorney
Office of the Wake County Attorney
Post Office Box 550
Raleigh, North Carolina 27602
Phone: (919) 856-5500
Fax:    (919) 856-5504
*Attorneys for WCBOE Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **WCBOE DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (F.R.CIV P. 12(B)(1)) IN LIEU OF ANSWER** was electronically filed with the Clerk of Court using the CM/ECF filing system and served via electronic transmission through the Court's CM/ECF system in accordance with Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure and applicable local rules upon the parties of record who participate in the CM/ECF system.

This the 18th day of October, 2024.

/s/ *Roger A. Askew*
Roger A. Askew, NCSB # 18081
Senior Deputy County Attorney
Post Office Box 550
Raleigh, North Carolina 27602
Phone: (919) 856-5500
Fax:   (919) 856-5504