IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:24-cv-481-FL

| | |
|---|---|
| SUSAN JANE HOGARTH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KAREN BRINSON BELL, in her official ) <br> capacity as Executive Director of the North ) <br> Carolina State Board of Elections, et al., ) <br> ) <br> Defendants. ) <br> ) | **STATE DEFENDANTS'** <br> **MEMORANDUM OF LAW** <br> **IN SUPPORT OF** <br> **MOTION TO DISMISS** |

Defendants Karen Brinson Bell, State Board Executive Director, the members of the State Board, Danielle Brinton, State Board Investigator, and Josh Stein, North Carolina Attorney General, all named in their official capacities only ("State Defendants"), provide this memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).[1]

## NATURE OF THE CASE

After deliberately violating North Carolina election laws during the primary election cycle earlier this year, Plaintiff now challenges five longstanding provisions of North Carolina law designed to protect the privacy of the voter and to prevent voter intimidation and vote buying. In Plaintiff's view, those laws infringe on her free-speech rights by prohibiting her from disseminating a photograph of her voted ballot. [D.E. 2].

Plaintiff lacks standing to assert these claims against all State Defendants and the Attorney

---

[1] Pursuant to the Consent Scheduling Order entered by the Court on October 15, 2024, this motion to dismiss is limited to lack of subject matter jurisdiction under Rule 12(b)(1), and by filing same, Defendants are not waiving any other applicable defenses under Rule 12(b). [D.E. 50].

General is entitled to Eleventh Amendment Immunity.

In Plaintiff's Verified Complaint, she claims that because state law prohibits her from taking a photo of herself and her voted ballot, her ability to voice her disagreement with the prohibition on photographing voted ballots, endorse other candidates for office, encourage voting for third-party candidates, challenge the narrative that voters can only vote for major party candidates, encourage voting in general, commemorate her vote for herself and for posterity, and express her pride in participating is inhibited. *Id.*, ¶¶ 1, 51, 134, and 191. However, the laws challenged do not prevent her from expressing these positions, only from taking a photograph of her voted official ballot. She remains free to engage in speech on all of these subjects in myriad other ways. Because the laws challenged do not infringe on her speech, she lacks an injury to establish standing.

Even if Plaintiff's allegations were sufficient to establish an injury, her alleged injury is not traceable to State Defendants due to their lack of enforcement authority. The State Board Executive Director, State Board members, and Investigator Brinton ("State Board Defendants"), are required to investigate election law violations, but their role ends with referral of those investigations to a District Attorney. N.C.G.S. § 163-22(d). None of the State Board Defendants have authority to prosecute a violation under the challenged laws. *Id.*

As for the Attorney General, in 2014, the North Carolina General Assembly amended the statute authorizing prosecution for violations of the challenged laws, found in N.C.G.S. §§ 163-273 and -274, and removed any role or reference to the Attorney General in the statute. N.C.G.S. § 163-278, as amended by 2014 N.C. Sess. Laws 100, sec. 17.1(p). Prosecuting violations under Article 22 of Chapter 163 (which encompasses sections 163-273 and 274) instead falls to district attorneys alone. N.C.G.S. § 163-278 ("The district attorney shall initiate prosecution and

prosecute any violations of this Article."). As a result, if any injury does arise from enforcement of the challenged law, it is not traceable to State Defendants.

Plaintiff's claims also fail the redressability prong under Article III because Plaintiff remains capable of making the type of speech she wishes to make with or without taking a photograph of her voted ballot. She is equally as capable of engaging in her desired speech with or without the existence of the challenged statutes, such that enjoining them provides no new relief that she does not already have.

Finally, because prosecutorial authority is fixed with district attorneys, the Attorney General is not subject to the *Ex Parte Young* exception to the Eleventh Amendment and is therefore entitled to sovereign immunity.

## STATEMENT OF THE FACTS[2]

### A.  Statutes in Question.

#### 1.  Ballot Photography Provisions

Plaintiff challenges five interrelated North Carolina statutes, all of which have existed for decades or longer and are designed to protect the privacy of the ballot, prevent voter intimidation, and discourage vote-buying schemes. Section 163-273(a)(1), enacted in 1929, makes it a misdemeanor for a voter to allow their own voted ballot to be seen by another person. N.C.G.S. § 163-273(a)(1); 1929 Chap. 164, § 29.[3] Section 163-165.1(e), enacted in 2002, declares voted

---

[2] In support of the motion to dismiss, State Defendants reference and provide hyperlinks to several documents. This Court may take judicial notice of materials available through these hyperlinks, as each is an official government record that is publicly available on the State Board's or the North Carolina General Assembly's website. *Fauconier v. Clarke*, 652 F. App'x. 217, 220 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem. Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record"); *see also* Fed. R. Evid. 201.

[3] Available at https://www.ncleg.gov/Files/Library/sessionlaws/1921-1930/pubs_publiclawsresolu1929.pdf, last visited Sept. 16, 2024.

3

ballots to be confidential and prohibits access to voted ballots, other than by elections officials performing their duties or by order of a court or board of elections. N.C.G.S. § 163-165.1(e); 2002 N.C. Sess. Law 159, § 5.[4] Section 163-274(b)(1), enacted in 2007, makes it a misdemeanor for any person to knowingly disclose a voted ballot in violation of 163-165.1(e). N.C.G.S. § 163-274(b)(1); 2007 N.C. Sess. Law 391, § 9.(b).[5] Finally, section 163-166.3(c), also enacted in 2007, prohibits photographing the image of a voted ballot for any purpose not otherwise permitted by law. *Id.*[5]

### 2. Voting Enclosure Provision

Section 163-166.3(b), also enacted in 2007, prohibits photographing a voter within the voting enclosures, except with the permission of the voter and the chief judge of the voting site. N.C.G.S. § 163-166.3(b); 2007 N.C. Sess. Law 391, § 23.[5] It also prohibits candidates from photographing a voter within the voting enclosures, except with the permission of the voter. *Id.* It does not prohibit a candidate from taking a picture of themselves voting, or even a voter from doing so with permission, so long as it does not include another voter or violate another provision of law, such as the prohibition on photographing an official voted ballot. *Id.*, §§ 163-166.3(b) and (c).

## B. The State Board's Role in Administering the Challenged Laws.

The State Board has "general supervision over the primaries and elections in the State, and it shall have authority to make such reasonable rules and regulations with respect to the conduct of primaries and elections as it may deem advisable so long as they do not conflict with any

---

[4] Available at https://www.ncleg.gov/Sessions/2001/Bills/Senate/PDF/S1217v6.pdf, last visited Sept. 16, 2024
[5] Available at https://www.ncleg.gov/Sessions/2007/Bills/House/PDF/H1743v8.pdf, last visited Sept. 16, 2024

provisions of [Chapter 163]." N.C.G.S. § 163-22(a). The Board also has a duty to "compel observance of the requirements of the election laws by county boards of elections and other election officers;" to "investigate when necessary or advisable, the administration of election laws, frauds and irregularities in elections in any county and municipality and special district" and to "report violations of the election laws to the State Bureau of Investigation for further investigation and prosecution." *Id.* § 163-22(c) and (d).

The State Board has issued guidance on the challenged laws, both to voters and local election officials. The Board has, for example, reminded voters in past elections and upon receiving complaints that photographing voted ballots is illegal.[6] And it has instructed voters to remove such photographs from social media when it has learned of their existence.[7]

Specifically, as it concerns the violation of criminal laws related to elections contained in Article 22 of General Statutes Chapter 163, the State Board and the district attorneys have a duty "to investigate any [such] violations." N.C.G.S. § 163-278(a)." However, the State Board itself has no authority to prosecute election law violations. It is mandated by statute that "the State Board shall furnish the district attorney a copy of any investigations of violations of [Article 22]." *Id.* at § 163-278(c). It is then up to North Carolina's district attorneys, who retain broad discretion as to whether and how to proceed when charging any crime, to "initiate prosecution and prosecute any violations of this Article." *See id.*; *see, e.g.*, *State v. Diaz-Tomas*, 888 S.E.2d 368, 376 (N.C. 2022) ("[A] trial court may not invade the purview of the exclusive and discretionary power of a district attorney which was granted to the official through the provisions of the North Carolina

---

[6] *See e.g.*, Press Release available on the State Board's website, https://www.ncsbe.gov/news/press-releases/2020/10/02/state-board-reminds-voters-not-photograph-their-ballots, last visited Sept. 16, 2024.
[7] *See id*.

Constitution and the statutory laws enacted by the General Assembly, absent a determination that the prosecutorial discretion was being applied in an unconstitutional manner." (cleaned up)). The Attorney General is not referenced or given a role under this statute. N.C.G.S. § 163-278.

C. **Factual Allegations in Plaintiff's Complaint.**

Plaintiff is a registered voter in Wake County, active in her political party, and a candidate for office in the November 2024 general election. [D.E. 2, ¶¶ 9, 114-19].

On March 5, 2024, Plaintiff voted in person in the primary election. *Id.*, ¶ 1. After completing her ballot, and while still standing within the voting enclosure and at her voting booth, Plaintiff took a photograph of herself, her completed ballot, and the sign in the voting booth that informs voters that photographs are prohibited inside the voting enclosure. *Id.*, ¶¶ 1, 55-58. Plaintiff had her cell phone out for approximately 45 seconds to take this photograph. *Id.*, ¶ 59. Plaintiff did not ask for permission to take a photograph in the voting enclosures. *Id.*, ¶ 65. Plaintiff then shared the photograph on social media, voicing her disagreement with the prohibition on photographing voted ballots, and endorsing other candidates for office. *Id.*, ¶ 1. Although not included in her posting to social media, Plaintiff also claims that a photograph of herself and her voted ballot encourages voting for third-party candidates, challenges the narrative that voters can only vote for major party candidates, encourages voting in general, commemorates her vote for herself and for posterity, and expresses her pride in participating. *Id.*, ¶ 51.

On March 13, 2024, State Board investigative staff sent a letter to Plaintiff informing her that the State Board was forwarded information that she took a photograph of her voted ballot and posted it on social media. The State Board described Plaintiff's actions as "a possible violation of N.C.G.S. § 163-166.3(c)," which prohibits photographing a voted ballot. *See* March 13, 2024 State Board Letter attached as Exhibit A to Plaintiff's Complaint [D.E. 2-1, p. 2]; *see also* Fed. R.

6

Civ. P. 10(c).[8] The letter also informed Plaintiff of the State Board's duty to investigate violations of election laws in North Carolina and the fact that Plaintiff's alleged actions are prohibited and punishable as a misdemeanor. *Id.* Finally, the letter expressly stated that "[t]he purpose of this letter is to explain the law and request that you take the post down." *Id.* The letter lists none of the other statutes challenged in this action. *Id.*

Plaintiff does not allege in her Complaint that she has been charged with any election law violations.

## LEGAL ARGUMENT

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "Without jurisdiction the court cannot proceed at all in any cause." *Stop Reckless Econ. Instability Caused By Democrats v. FEC*, 814 F.3d 221, 228 (4th Cir. 2016) (quoting, *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

In the present case, Defendants rely on both the face of the Verified Complaint and public documents to support their Rule 12(b)(1) challenge to subject matter jurisdiction. When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647; *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

---

[8] In Plaintiff's Verified Complaint, Plaintiff mischaracterizes the content of the letter sent to her by the State Board. The letter itself is attached to the Verified Complaint and is incorporated into it pursuant to Fed. R. Civ. P. 10(c). The characterization of the letter above is based upon the letter itself, not the allegations in the Verified Complaint.

Under Article III of the United States Constitution, this court's subject matter jurisdiction is limited to deciding "cases" and "controversies." *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Standing is "an integral component of the case or controversy requirement." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (internal quotation marks omitted); *see, e.g., Greenville County Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 Fed. Appx. 244, 250 (4th Cir. 2015).

To satisfy Article III's standing requirement, a plaintiff must establish the following:

> (1) the plaintiff . . . suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there [is] a causal connection between the injury and the conduct complained of; and (3) it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 458 (4th Cir. 2005) (internal quotations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff bears the burden of establishing the elements of standing and must support each element with sufficient factual allegations. *White Tail Park, Inc.*, 413 F.3d at 458. If a plaintiff cannot establish each of the three elements, there is no standing, *see Allen v. Wright*, 468 U.S. 737, 750-66 (1984), and the matter should then be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See, e.g., White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

### I. PLAINTIFF LACKS STANDING AS TO CLAIM I.

In Claim I, Plaintiff alleges that North Carolina's restrictions on taking and disseminating photographs of and information about voted ballots, N.C.G.S. §§ 163-166.3(c), -273(a)(1), -165.1(e), and -274(b)(1), what she refers to as the "Ballot Photograph Provisions," violate the First

8

Amendment as applied to individuals taking and sharing "ballot selfies."[9]

Plaintiff cannot establish an injury-in-fact, traceability, or redressability for Claim I.

### A. Plaintiff Has Not Suffered Any Injury-in-Fact and Any Fear of Injury Is Too Attenuated to Support Standing.

As a threshold matter, Article III standing exists only when a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Beck*, 848 F.3d at 270-71 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). "Although 'imminence' is "concededly a somewhat elastic concept, it cannot be stretched beyond its purpose." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Allegations of a merely possible future injury do not create standing. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Here, Plaintiff claims two injuries: a restriction on her speech and her potential prosecution for knowingly violating North Carolina election laws. [D.E. 2, ¶ 124]. With respect to the restriction on her speech, Plaintiff claims her inability to take a photograph of herself and her official voted ballot infringes on her free speech to:

> [P]romote the candidates she typically votes for, show voters they can vote for third-party candidates, challenge the narrative that voters can only vote for major party candidates, encourage potential voters to vote, commemorate her vote for herself and posterity, express her personal pride in participating in the electoral

---

[9] In Claim III, Plaintiff alleges the State Board's March 13, 2024 letter violates the First Amendment. [D.E. 2, ¶¶ 188-204]. It is unclear why Plaintiff brings this as a claim separate from Claim I. The letter reflects notice of the potential application of N.C.G.S. § 163-166.3(c), one of the four statutes challenged in Claim I. In any regard, based upon the standing arguments in Part I, to the extent the application of this provision is reflected in the State Board's letter, Plaintiff cannot establish standing as to Claim III for the same reasons argued against Claim I.

process, and express her disagreement with North Carolina's ban on ballot selfies. [D.E. 2, ¶ 51, 134, and 191]. Yet none of the challenged statutes prevent her from encouraging others to vote, promoting third-party and down-ballot candidates, challenging the idea that people should only vote for major-party candidates, commemorating her vote for candidates that she endorsed or supported, or opposing the prohibition on photographs of voted ballots. *Id.* Stated differently, other than sharing a photograph of her voted official ballot, Plaintiff can say and do everything she claims she is seeking to accomplish with the present lawsuit. *See Silberberg v. Bd. of Elections of N.Y.*, 272 F. Supp. 3d 454, 480 (S.D.N.Y. 2017) ("The no photography policy leaves open ample alternative means by which voters can signal their support for a candidate. Voters can still post to social media (using messages that contain both words and images, attend rallies, donate to campaigns, volunteer, or express their views in a multitude of ways without taking photographs at polling sites."). Plaintiff is free to issue public statements on social media encouraging others to vote, encouraging others to vote for third parties or for her preferred candidates, and announcing that she voted and who she voted for. She can take pictures of herself at the voting site, even within the voting site as a candidate or with permission if she is not a candidate, and post those to social media. Plaintiff can even print out her sample ballot, mark it as if she had voted it as an official ballot, take a ballot selfie, and post that selfie on social media without violating any provisions of North Carolina law or suffering any criminal consequence.[10] Plaintiff is only prohibited from taking a picture of her actual voted ballot. This is a minimal limit on how she communicates speech to the public, not an injury sufficient to demonstrate standing.

Plaintiff also alleges that she faces the threat of prosecution for violating the challenged statutes, but the district attorney who would carry out that prosecution, District Attorney Freeman,

---

[10] All sample ballots for the State are available on the State Board's website, https://dl.ncsbe.gov/?prefix=data/SampleBallots/2024-11-05/, last visited September 15, 2024.

10

has already filed a sworn declaration to the Court that she will not prosecute Plaintiff for any violation of the challenged laws so long as this litigation remains with this Court. [D.E. 42-1]. And, as stated above, the State Defendants lack any independent authority to initiate prosecutions of the challenged statutes.

Finally, Plaintiff's own allegations note that she has repeatedly and regularly taken photographs of herself and her voted ballot and shared it without any allegation that she was interfered with by poll workers or that she disrupted other voters. [D.E. 2, ¶¶ 9 and 50] Therefore, to the extent she belatedly attempts to assert a new injury on those grounds, such injury would be too speculative to support standing. *See Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.)

Thus, Plaintiff has failed to establish an injury for standing purposes.

**B. Plaintiff's Alleged Risk of Injury is Not Traceable to Defendants.**

Plaintiff also lacks standing because she cannot show that the injury she complains of is traceable to an action by State Defendants. *Friends of the Earth*, 528 U.S. at 180-81; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Moreover, in a pre-enforcement challenge to the constitutionality of a statute, when a plaintiff has not yet experienced an injury, they must show that the defendant is the government official charged with enforcing the challenged statute. *Bronson v. Swensen*, 500 F.3d 1099, 1109-10 (10th Cir. 2007); *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

For the reasons stated above, Plaintiff has failed to show any connection between State Defendants and any prosecution or threat of prosecution to support her injury. The State

Defendants have no prosecutorial authority under the statute. That authority rests solely with District Attorney Freeman. [D.E. 42-1]. Thus, State Defendants have not prosecuted this violation or threatened to prosecute this violation, nor can they. Plaintiff's citation to the letter from Investigator Brinton mischaracterizes the purpose of that letter, which was expressly stated in the letter itself: "[t]he purpose of this letter is to explain the law and request that you take the post down." [D.E. 2-1]. Ultimately, the letter is incorporated by reference in Plaintiff's Complaint, speaks for itself, and demonstrates on its face that it is not a threat of prosecution. *Id.* This interpretation of the letter, moreover, is consistent with the State Defendants' lack of authority to prosecute any of the challenged statutes. Thus, the complained of injury, threat of prosecution, is too attenuated to assert against State Defendants when it requires a third party. *Murthy v. Missouri*, 144 S. Ct. 1972, 1992 n.8 (2024) ("The whole purpose of the traceability requirement is to ensure that 'in fact, the asserted injury was the consequence of the defendants' actions,' rather than of 'the independent action' of a third party.)(quoting *Simon* v. *Eastern Ky. Welfare Rights Organization*, 426 U. S. 26, 42, 45, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976). Here, even the third party who could prosecute, District Attorney Freeman, took no action against Plaintiff either.

Thus, Plaintiffs' claimed injuries are not traceable to the conduct of State Defendants.

**C. Plaintiff's Proposed Remedy Does Not Redress the Alleged Injuries.**

The final element of standing requires that Plaintiff's proposed remedy, enjoining Defendants from enforcing this statute, must redress the injury she claims. Redressability requires that it be "likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Beck*, 848 F.3d at 269; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180-81 (2000).

Here, Plaintiff's proposed remedy would be to enjoin challenged statutes that present no

impediment to the speech she wishes to engage in supporting particular candidates or political positions. The laws bar Plaintiff from taking photographs of her official voted ballot regardless of which candidate she votes for or what political message she seeks to convey. Plaintiff, as a candidate, remains free to take and share other photographs of herself taken in the voting enclosure, as long as the photographs do not include other voters or violate some other provision. And even for other voters, she can still take their picture if she first gets permission. She can also take photographs of a marked sample ballot. Nothing prevents her from promoting her preferred candidates, the act of voting in general, or any other particular message she wishes to convey. Thus, the relief sought here, an injunction against these challenged statutes, would provide no new relief to Plaintiff that she does not already have. As a result, Plaintiff has failed to establish redressability for standing purposes.

## II. PLAINTIFF LACKS STANDING AS TO COUNT TWO.

In Claim II, Plaintiff challenges the application of N.C.G.S. § 163-166.3(b) (what she terms the "Voting Enclosure Provision") to ballot selfies, arguing that that provision too violates the First Amendment. According to Plaintiff, this law is unconstitutional because it makes no exceptions for ballot selfies, and because it fails to provide "an 'objective, workable standard' to guide the chief judge in deciding whether to give a voter permission to take a selfie." [D.E.2, ¶ 173, 175 (citation omitted)].

As with the Ballot Photography Provisions, Plaintiff cannot satisfy the Article III standing requirements for her claim alleging that the Voting Enclosure Provision, as applied to ballot selfies, violates the First Amendment. Simply stated, this is because that particular law does not apply to ballot selfies; those photographs are prohibited by other laws. Section 163-166.3(b) prohibits photographing a voter within the voting enclosures, except with the permission of the voter being

photographed and the chief judge of the voting site. If the person taking the photograph is a candidate, like Plaintiff will be in the November 2024 general election, [D.E. 2, ¶ 115], then the only person whose permission is required is the voter, N.C.G.S. § 163-166.3(b). This means a voter can take a selfie if she obtains permission from the chief judge, and Plaintiff as a candidate can take a selfie without getting permission from anyone. *See id.* However, the law permits photography only where a voter or candidate seeks permission to take a photograph that is otherwise not prohibited by law. A chief judge cannot give permission for a voter (or a candidate, for that matter) to take a ballot selfie. It is other laws, not section 163-166.3(b), that apply to prohibit ballot selfies.

Thus, section 163-166.3(b) itself presents no injury to Plaintiffs, and any remedy enjoining that provision would provide no redress to Plaintiff. Moreover, even if injury and redressability could be met, which State Defendants do not concede, Plaintiff's alleged injury of being restricted in her speech is not traceable to the Voting Enclosure Provision, which does not prevent her from taking a photo of her ballot or otherwise engaging in such speech.

### III. THE ATTORNEY GENERAL IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY.

Even if Plaintiff could establish standing, Plaintiff cannot succeed on her claims against the Attorney General because the Eleventh Amendment bars suits brought against States (including state officials in their official capacity) in federal court, and the *Ex Parte Young* exception to that immunity does not apply here. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Alden v. Maine*, 527 U.S. 706, 727-28 (1999); *Waste Mgmt. Holdings, Inc v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001); *Ex Parte Young,* 209 U.S. 123, 159-60 (1908); *Frew v. Hawkins*, 540 U.S. 431, 437 (2004). *Ex parte Young* requires that the state official "must have some connection with the enforcement of the act, or else it is merely making

14

him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Mgmt.*, 252 F.3d at 331 (quotation omitted); *see also Ex parte Young*, 209 U.S. at 157.

Here, Plaintiff cannot demonstrate a sufficient connection between the Attorney General and prosecution or threat of prosecution under the challenged statutes. The Complaint lacks any allegation that the Attorney General has played any role whatsoever in the investigation or prosecution of any of the challenged laws. [D.E. 2, ¶¶ 21 and 202 (the only two paragraphs that refer to the Attorney General)]. The Complaint contains a single substantive allegation specific to the Attorney General, which states, "the Attorney General has legal authority to prosecute ballot selfies cases upon district attorney request. N.C. Gen. Stat. § 114-11.6." *Id.*, ¶ 21]. This is an inaccurate characterization of state law. Pursuant to section 114-11.6, there is a division within the Attorney General's office that has the authority to prosecute or assist in the prosecution of criminal cases, but only if that division is requested to do so by a district attorney and the Attorney General approves. There is no allegation that this occurred in Plaintiff's case or in any other case brought under the challenged statutes. [D.E. 2, ¶¶ 21 and 202].

Moreover, as the Fourth Circuit and other federal courts have stated, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Mgmt.*, 252 F.3d at 331 (quotation omitted); *see also Ex Parte Young*, 209 U.S. at 157 ("If, because [he was] law officer[] of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit … then the constitutionality of every act passed by the legislature could be tested by a suit against … the attorney general, based upon the theory that …[the] attorney general, might represent the state in

15

litigation involving the enforcement of its statutes. …[B]ut it is a mode which cannot be applied….") (quoting Fitts, 172 U.S. at 530, 43 L. Ed. at 541-42, 19 S. Ct. at 274-75); *McBurney v. Cuccinelli*, 616 F.3d 393, 400-01 (4th Cir. 2010) (holding that the Eleventh Amendment barred suit against the Attorney General under the state's FOIA because he did not have a specific statutory duty to enforce that law and his authority to issue advisory opinions did not present a sufficient nexus to satisfy the *Ex Parte Young* requirement of a "special relationship" to the enforcement of FOIA); *Okpalobi v. Foster*, 244 F.3d 405, 422 (5th Cir. 2001) (holding that the Eleventh Amendment barred suit against the Attorney General under a state tort statute providing a cause of action against medical doctors performing abortions because the Attorney General did not have the power or ability to enforce the statute).

More importantly, the statutes that do authorize prosecutions under sections 163-273 and 163-274 are controlled by N.C.G.S. § 163-278. That provision does not reference the Attorney General, but rather states that only "[t]he district attorney shall initiate prosecution and prosecute any violations of this Article." N.C.G.S. § 163-278(c). In fact, prior to 2014, the Attorney General had *some* express authority under this statute—to assist in investigations, but not prosecutions. *See* N.C.G.S. § 163-278 (2013). But the reference to the Attorney General was removed when the State Bureau of Investigations was reorganized and placed within the North Carolina Department of Public Safety. *See* 2014 N.C. Sess. Laws, ch. 100, sec. 17.1(g), (p).[11] The provisions governing prosecutions of election law violations, including violations of the laws that Plaintiff challenges, are now entirely silent as to the Attorney General's role in enforcing those violations.

Plaintiffs have not alleged, nor can they, that the Attorney General is prosecuting or

---

[11] Available at https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2013-2014/SL2014-100.pdf, last visited October 15, 2024.

16

threatening to prosecute this crime. [D.E. 2, ¶¶ 21 and 202]. In this case, the district attorney in question, District Attorney Freeman, has already filed a sworn declaration to the Court that she will not prosecute Plaintiff for any violation of the challenged laws so long as this litigation remains pending with this Court. [D.E. 42-1]. Therefore, there is no threat of prosecution from District Attorney Freeman and no threat of referral for prosecution by District Attorney Freeman to the Attorney General. *Id.* Even if such a referral were to occur, which Plaintiff has not alleged (D.E. 2, ¶¶ 21 and 202), the Attorney General must still accept the referral, which Plaintiff has not alleged to have ever occurred. *Id.*

Additionally, a review of the Opinions issued by the Attorney General's Office, pursuant to N.C.G.S. § 114-2(5), reveals no instance in which the Attorney General has issued an Opinion regarding the statute under challenge.[12] A search of the opinions issued by the North Carolina appellate courts similarly revealed no instance in which the Attorney General defended a conviction under the challenged statutes.[13]

Accordingly, because Plaintiff cannot show a connection between the Attorney General's enforcement authority and the challenged statutes, the *Ex parte Young* exception to the Eleventh Amendment does not apply, and the State's immunity bars the claims against the Attorney General.

Space left blank intentionally.

---

[12] Available at https://ncdoj.gov/legal-services/legal-opinions-directory/, last visited October 15, 2024. Terms searched within the online directory included: "ballot", "165.1", "166.3", "273", and "274".
[13] The undersigned utilized Lexis.com.

## CONCLUSION

For the foregoing reasons, State Defendants' motion to dismiss should be granted.

Respectfully submitted this the 18th day of October, 2024.

        **JOSHUA H. STEIN**
        **Attorney General**

        /s/ Terence Steed
        Terence Steed
        Special Deputy Attorney General
        N.C. State Bar No. 52809
        E-mail: tsteed@ncdoj.gov

        Mary Carla Babb
        Special Deputy Attorney General
        N.C. State Bar No. 25713
        mcbabb@ncdoj.gov

        N.C. Department of Justice
        P.O. Box 629
        Raleigh, NC  27602-0629
        Telephone:  (919) 716-6567
        Facsimile:  (919) 716-6761

        *Attorneys for State Defendants*