IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:24-cv-00481-FL

| | |
|---|---|
| HOGARTH,<br><br>　Plaintiff,<br><br>V.<br><br>BRINSON BELL, ET AL.,<br><br>　Defendants. | **MEMORANDUM IN SUPPORT OF DISTRICT ATTORNEY FREEMAN'S MOTION TO DISMISS** |

Defendant District Attorney Lorrin Freeman provides this memorandum of law in support of her motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).[1]

## INTRODUCTION

Plaintiff Susan Jane Hogarth brings three as-applied First Amendment claims against District Attorney Freeman: (1) that N.C. Gen. Stat. §§ 163-166.3(c), 163-273(a)(1), 163-165.1(e) and 163-274(b)(1) burden Plaintiff's First Amendment freedoms by prohibiting or criminalizing her protected expression of taking a ballot selfie [DE 1, ¶ 141]; (2) that N.C. Gen. Stat. § 163-166.3(b) violates the First Amendment because it requires Plaintiff receive consent from the chief judge of the precinct to take a ballot selfie in elections where she is not a candidate [DE 1, ¶¶ 170-187]; and (3) that the State Board of Elections violated Plaintiff's First Amendment rights when it wrote a letter informing Plaintiff that taking a ballot selfie was unlawful. [DE 11, ¶¶ 188-204]

---

[1] District Attorney Freeman does not waive any other applicable defenses under Rule 12(b), including Rule 12(b)(6), as set out in the Consent Scheduling Order, entered October 15, 2024 [DE 50]

1

Plaintiff lacks standing to assert her claims against District Attorney Freeman because she has not suffered a non-speculative injury-in-fact. Simply put - Plaintiff faces no credible threat of prosecution by District Attorney Freeman for violation of any of the challenged statutory provisions. Even if she were able to establish an injury, that injury is not traceable to District Attorney Freeman because District Attorney Freeman has no connection to the facts Plaintiff uses to support her claimed injury. Moreover, District Attorney Freeman has disavowed prosecution of Plaintiff. Finally, Plaintiff fails to meet the redressability requirement because she can still engage in the type of speech she desires whether or not she takes a ballot selfie.

Claim Two also fails because the "Voting Enclosure Provision" does not prevent her from taking a photo of her ballot or otherwise engage in such speech. Claim Three also fails because Plaintiff pleads no connection – legal or factual – between the State Board's March 13, 2024 letter and District Attorney Freeman.

## STATEMENT OF FACTS

Plaintiff is a resident and registered voter in Wake County, North Carolina. [DE 1, ¶ 9] She is a member and past Chair of the Libertarian Party of North Carolina [*Id.* ¶ 114] and will appear on the November 5, 2024 ballot as a candidate for North Carolina State Senate District 13. [*Id.* ¶ 116] She has taken and shared "ballot selfies" and intends to do so again. [*Id.*] On primary election day, March 5, 2024, Plaintiff went to her polling place, received a paper ballot, entered a voting booth, cast her vote for president and governor, and remained an additional 45 seconds to use her cell phone to take a picture of herself in the voting booth, holding up her voted ballot and showing a sign in the voting booth prohibiting photography. [*Id.* ¶¶ 53-57, 59] Plaintiff alleges no more than three other voters entered the enclosure, no

voter had to wait to access a voting booth, and no poll worker notified her that her time in the booth had expired or that she was taking too long to exit the voting booth. [*Id.* ¶¶ 54, 61-63] No one at the polling place said anything to Plaintiff about taking a photograph of her voted ballot or of herself in the voting enclosure, and Plaintiff asked no one for permission to take the photograph. [*Id.* ¶¶ 64-65] Plaintiff later shared her photograph on social media. [*Id.* ¶ 10, 67]

Approximately a week later, Plaintiff received a letter, dated March 13, 2024, authored by Defendant Danielle Brinton, a State Board of Elections investigator. [DE 11-3] The letter explained that N.C. Gen. Stat. § 163-166.3(c) makes it unlawful to "photograph, videotape, or otherwise record the image of a voted ballot for any purpose not otherwise permitted under law." [*Id.*] The stated purpose of the letter was "to explain the law and request that you [Plaintiff] take the post down." [*Id.*] The letter does not use the word "prosecution" and makes no mention of referral for criminal prosecution to the district attorney. [*Id.*] The letter provided Ms. Brinton's contact information and informed Plaintiff she could contact Ms. Brinton with any questions. [*Id.*] There is no allegation that Plaintiff contacted Defendant Brinton.

On March 22, 2024, Plaintiff's attorney submitted a public records request seeking documents "concerning violations and investigations into potential violations of N.C.G.S. § 163-166.3(c)" and documents "discussing the prohibition on 'ballot selfies' or 'ballot photography.'" [DE 11-2, ¶ 3, DE 11-4] On August 22, 2024, Plaintiff downloaded publicly available information regarding referral of all elections cases to district attorneys. [DE 11-2, ¶¶ 17-18, DE 11-15, 11-16, 11-7] This information shows that since 2015, just two cases of photographing a voted ballot were referred to district attorneys for prosecution – Durham

County in 2020 and Granville County in 2023. [DE 11-15, pp. 16, 20] There is no record of a criminal prosecution resulting from either of these referrals. There are no allegations that any North Carolina voter has been criminally prosecuted in North Carolina for photographing voted ballots.

Plaintiff does not intend to take down her social media post on X [DE 1, ¶ 106], and whether she votes in person or not, she intends to take ballot selfies with her voted ballot in future elections and share these photographs on social media. [*Id*. ¶¶ 111-13] Plaintiff intends to vote in person on November 5, 2024, and will take a photograph of herself in the voting booth with her completed ballot, including the portion of her ballot showing her vote for Libertarian Party presidential candidate, and share her photographs on social media. [*Id*. ¶¶ 118-123] Plaintiff contends she is in immediate risk of criminal prosecution when she engages in this conduct on November 5, 2024 [*Id*. ¶ 128] and that she faces an ongoing and credible threat of prosecution for her March 5, 2024 ballot selfie. [*Id*. ¶ 131]

District Attorney Lorrin Freeman is the elected district attorney for Wake County. [*Id*. ¶ 20, DE 42-1 ¶ 2] District attorneys in North Carolina are specifically authorized to prosecute violations of certain voting-related statutes, including those challenged here. N.C. Gen. Stat. § 7A-61, 163-278. The State Board of Elections has not referred a "photographing a ballot" case to District Attorney Freeman[2] for prosecution. [DE 11-15] District Attorney Freeman had no knowledge or involvement with the State Board's March 13, 2024 letter. [DE 42-1, ¶ 7] Prior to the filing of this lawsuit, District Attorney Freeman had no knowledge of Plaintiff or her photograph, and had not threatened Plaintiff with criminal prosecution for her March

---

[2] District Attorney Freeman has been the elected district attorney in Wake County since 2014.

4

5 "ballot selfie." [Id. ¶ 9] After Plaintiff filed her complaint, District Attorney Freeman affirmed that in the exercise of her prosecutorial discretion, she would not prosecute Plaintiff for the March 5 "ballot selfie" or the actions Plaintiff intends to take on November 5, as described in her complaint, and through this Court's resolution of this case. [DE 42-1]

## LEGAL STANDARD

A court must dismiss all or part of a complaint over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This threshold question must be addressed before considering the merits of the case. *Jones. v. Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A Rule 12(b)(1) motion may either (1) assert the complaint fails to allege facts upon which subject matter jurisdiction may be based, or (2) attack the existence of subject matter jurisdiction in fact apart from the complaint. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When a court scrutinizes pleadings, conclusory allegations are insufficient to establish subject matter jurisdiction. *Burgess v. Charlottesville Sav. & Loan Ass'n*, 477 F.2d 40, 43 (4th Cir. 1973). When the defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*.

**ARGUMENT**

Article III of the Constitution limits judicial power to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). "The doctrine of standing gives meaning to these constitutional limits" by ensuring that legal questions are resolved in concrete—not academic—contexts. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). Standing is a threshold issue that must be determined first, because "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (cleaned up).

To invoke the jurisdiction of this Court, Plaintiff must demonstrate three things: (a) she has suffered an injury-in-fact; (2) her injury is traceable to District Attorney Freeman; and (3) a favorable decision by the Court would redress her injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Whether looking at the pleadings alone, or delving into facts outside the pleadings, Plaintiff is unable to establish she has standing to bring her claims against District Attorney Freeman.

I. **PLAINTIFF LACKS STANDING AS TO COUNT ONE**

   a. **Plaintiff has not suffered an injury-in-fact.**

To establish injury-in-fact, Plaintiff must show she has suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). If Plaintiff has not suffered an injury, there is no standing, and the matter should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

In a pre-enforcement challenge, there are two ways to satisfy the injury-in-fact requirement. First, a plaintiff may allege "an intention to engage in a course of conduct arguably affected by a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). Second, a plaintiff could make a "sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression."[3] *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (quoting *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013). A party making an as-applied challenge to a regulation must show how he or she suffered personal injury by the application of the regulation. *See Educ. Media Co. at Virginia Tech v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013).

"[T]here is a credible threat of future enforcement so long as the threat is not imaginary or wholly speculative, chimerical, or wholly conjectural." *Kenny*, 885 F.3d at 288 (citations and internal quotation marks omitted). To establish a credible threat of prosecution, a plaintiff must allege "fears of state prosecution" that are not "imaginary or speculative," *Babbitt*, 442 U.S. at 298, and are "actual and well-founded [enough to establish] that the statute will be enforced against them." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). "[P]ersons having no fears of state prosecution except those that are imaginary or speculative are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 (1971). "[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical," and "[t]hreat of prosecution is especially credible when defendants have not 'disavowed enforcement' if plaintiffs engage in similar conduct in the

---

[3] Plaintiff does not allege facts and makes no argument that she is chilled from taking "ballot selfies," so only the "credible threat of prosecution" prong is discussed in this brief.

future." *Id.* (quoting *Susan B. Anthony List*, 573 U.S. at 164, 165). Conversely, "where the government has 'disavowed enforcement' there is no credible threat of prosecution." *GenBioPro, Inc. v. Sorsaia*, No. 3:23-0058, 2023 U.S. Dist. LEXIS 76271, at *29 (S.D. W. Va. May 2, 2023) (citing *Susan B. Anthony List*, 573 U.S. at 163, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010). To demonstrate a "genuine threat," a plaintiff must show more than the fact that government officials stand ready to perform their general duty to enforce laws. *Poe v. Ullman*, 367 U.S. 497, 501 (1961).

Plaintiff contends that she faces "an ongoing and credible threat of prosecution for her March 5, 2024 ballot selfie from X" [DE 1, ¶ 131] and "credible threat of prosecution if she takes and shares a ballot selfie during the upcoming November 2024 election and subsequent elections, as she plans to do." [*Id.* ¶ 132] To support these conclusory statements, Plaintiff cites "the State Board's March 13, 2024 letter to Plaintiff threatening criminal prosecution, the State Board's and County Board's consistent warnings to voters that it is illegal to take ballot selfies, and the State Board's and County Board's investigations into and referrals for prosecution of past incidents of ballot selfies." [*Id.* ¶ 133] Plaintiff broadly claims the "Defendants'" "active enforcement" of North Carolina's ballot selfie ban forces her to "either take and share ballot selfies under the threat of criminal prosecution or to self-censor by forgoing expressing herself as such," [4] [*Id.* ¶ 124] but there are no facts to support her conclusory claim of "active enforcement" by District Attorney Freeman. In fact, beyond

---

[4] Plaintiff does allege that any intention to self-censor. Instead, she confidently proclaims she will "take a photograph of herself in the voting booth, holding her completed ballot so her vote can be seen," photograph herself showing her vote in the presidential race, and "commemorate and celebrate the occasion" by sharing her photographs with family and friends on social media. [DE 1, ¶¶ 121-123]

identifying her and her authority as a district attorney, Plaintiff makes no factual allegations against District Attorney Freeman whatsoever.

Plaintiff must show more than the fact District Attorney Freeman stands ready to perform her general duty to enforce laws. Plaintiff cannot even show that a criminal prosecution of a voter for violation of the challenged statutory provisions has ever occurred in North Carolina. *C.f. Kenny*, 885 F.3d at 289 (where, in concluding that "the presumption of a credible threat applie[d]," the Fourth Circuit considered that the statutes at issue were "regularly enforced against students like" the pertinent plaintiffs).

Plaintiff's allegation that she faces "immediate risk of criminal prosecution" [DE 1, ¶ 128] that is "highly credible" [*Id.* ¶ 133] is speculative, conjectural, and not supported by factual content, either within her pleading, or the within the record of this case. Her allegations support the opposite conclusion. Plaintiff contends that ballot selfies are "a popular form of political speech" [*Id.* ¶¶ 30, 49] and notes her own record of "flagrant, unenforced violations" of the law by taking and sharing ballot selfies in past elections with no criminal consequence. [*Id.* ¶¶ 49-50, 64-64] Plaintiff's characterization of the March 12 letter as a threat of criminal prosecution belies the plain language contained in it and its stated purpose. The letter does not mention "prosecution," nor does it discuss referral to the district attorney for prosecution.

Looking at the record created outside the pleadings only solidifies that Plaintiff faces no credible threat of criminal prosecution. To support her motion for preliminary injunction, Plaintiff provided public records showing that between 2020 and 2022, the State Board received 24 complaints about photographing a voted ballot. [DE 11-17] The State Board referred just one case to the Durham County District Attorney who did not initiate a criminal

prosecution.[5] [DE 11-15] Between 2015 and 2023, just one other case was referred for prosecution to the Granville County District Attorney, but there is no record of any resulting criminal prosecution. [*Id.*] The documentary record does not reflect any prosecution referrals to the Wake County District Attorney.

A prosecutor's discretion as to when and whether to prosecute is firmly rooted in American law and vital to the function of our criminal justice system. *See McCleskey v. Kemp*, 481 U.S. 279, 311 (1987); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("[T]he decision whether or not to prosecute, and what charge to file or bring . . . generally rests entirely [within the prosecutor's] discretion."); *State v. Diaz-Tomas*, 2022-NCSC-115, 382 N.C. 640, *cert. denied sub nom. Diaz-Tomas v. Carolina*, 143 S. Ct. 2638 (2023) ("[A] trial court may not invade the purview of the exclusive and discretionary power of a district attorney which was granted to the official through the provisions of the North Carolina Constitution and the statutory laws enacted by the General Assembly, absent a determination that the prosecutorial discretion was being applied in an unconstitutional manner;" *State v. Camacho*, 329 N.C. 589, 593 (1991) ("The clear mandate of [Article IV, Section 18] is that the responsibility and authority to prosecute all criminal actions in the superior courts is vested solely in the several District Attorneys of the State.")

District Attorney Freeman chose to exercise her prosecutorial discretion when she disavowed criminal prosecution of Plaintiff for violation of the challenged statutes while the Court resolves this matter. [DE 42-1] District Attorney Freeman also affirmed that she had no personal knowledge of Plaintiff or any of the facts alleged in her Complaint, no communication with the State Board about her, and never threatened Plaintiff with criminal

---

[5] The statute of limitations has expired to prosecute this case. N.C. Gen. Stat. § 15-1.

prosecution. [*Id.* Simply put, there was no credible threat of prosecution when this case was filed and there is no credible threat of prosecution now. Plaintiff has not demonstrated a non-speculative injury-in-fact sufficient to support standing in this case.

This is probably why Plaintiff has argued that she does not need to actually demonstrate a credible threat of prosecution, instead she contends the Court must presume a credible threat of prosecution, regardless of the facts or allegations, citing *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999). In *Bartlett*, the Fourth Circuit held, under specific circumstances addressing a facial constitutional challenge to campaign finance regulations, that "[a] non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents such a credible threat, and a case or controversy thus exists in the absence of compelling evidence to the contrary." *Id.* at 708. First, while the term "non-moribund" is not clearly defined, it does not appear the challenged statutory provisions can be said to be "non-moribund" because they are not newly enacted and there is no record of any criminal prosecution pursuant to them ever occurring in North Carolina since their enactment. Further, unlike this case, the *Bartlett* Court found no evidence suggesting that the district attorneys had any intention of refraining from prosecuting those who appeared to violate the plain language of the challenged statute. *Id.* at 711. More, *Bartlett* concerned general public dialogue surrounding an election, not expressive activity that can just as easily occur outside of the "unique context of a polling place" – a well-established non-public forum, *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 15 (2018) and "special enclave, subject to greater restriction." *Id.* at 12 (quoting *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680 (1992)). The Court should not presume a credible threat of prosecution on these facts because there is compelling evidence that none exists.

### b. If Plaintiff suffered an injury, it is not traceable to Freeman.

An injury is traceable if "there is a causal connection between the injury and the conduct complained of" by the plaintiff. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). There must be a "genuine nexus" between the defendant's conduct and the plaintiff's injury. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000). Traceability cannot be established where a plaintiff does not face a credible threat of prosecution.

There is no causal connection between Plaintiff's alleged injury and District Attorney Freeman. District Attorney Freeman had no knowledge of Plaintiff prior to her lawsuit, has never threated Plaintiff with criminal prosecution, and has disavowed prosecution of Plaintiff. [DE 42-1] District Attorney Freeman has never been referred a case of ballot photography for prosecution, nor has she prosecuted one. Finally, there is no record of a prosecution in North Carolina by any district attorney for ballot photography. *C.f. Susan B. Anthony List*, 573 U.S. at 161–166 (finding standing established where a plaintiff seeks to engage in conduct prohibited by the challenged statute, the state has prosecuted individuals in the past, and the state has not disavowed future prosecution.)

### c. Plaintiff's proposed remedy does not redress her alleged injury.

Redressability requires that it be "likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Beck*, 848 F.3d at 269; *see also Friends of the Earth, Inc.*, 528 U.S. at 180–81. But the challenged statutes do not impede her ability to engage in the expressive activity she wants – to "promote the candidate she typically votes for, show voters they can vote for third-party candidates, challenge the narrative that voters can only vote for major party candidates, encourage potential voters to

vote, commemorate her vote for posterity, express her personal pride in participating in the electoral process, and express her disagreement with North Carolina's ban on ballot selfies." [DE 1, ¶ 51] Plaintiff does not need the Court to enjoin the challenged statues for Plaintiff to engage in this speech.

## II. PLAINTIFF LACKS STANDING AS TO CLAIM TWO

As discussed in detail by the State Defendants, the Voting Enclosure Provision does not apply to ballot selfies. [DE 56, p. 13] Therefore, it cannot injure Plaintiff or be redressed by District Attorney Freeman, and is not traceable to her. But if the Court believes the Voting Enclosure Procedure does apply to ballot selfies, Plaintiff's claim fails for the same reasons Claim One fails.

## III. PLAINTIFF LACKS STANDING AS TO CLAIM THREE

Plaintiff's Third Cause of Action alleges that the State Board's March 13, 2024 letter violates the First Amendment. [DE 1, p. 30] It is unclear why this claim is brought against District Attorney Freeman. Plaintiff makes no allegation, and no inference can be drawn from the facts alleged, that District Attorney Freeman wrote the letter or participated in its creation. Moreover, District Attorney Freeman has affirmed for the Court that she did not participate in its creation or have any knowledge of it.[6] Plaintiff lacks standing to bring this claim against District Attorney Freeman.

## CONCLUSION

For all of the foregoing reasons, this Court should grant District Attorney Freeman's motion to dismiss.

---

[6] This claim also fails to provide sufficient factual material to state a claim against District Attorney Freeman, which will be more thoroughly addressed in a subsequent motion to dismiss, should it become necessary.

Respectfully submitted, this the 18th day of October, 2024.

JOSHUA H. STEIN
Attorney General

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Facsimile: (919) 716-6755
Email: eobrien@ncdoj.gov
*Counsel for Defendant Freeman*