# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| SUSAN HOGARTH, | Case No.: 5:24-cv-00481 |
| *Plaintiff,* | |
| | Hon. Louise W. Flanagan |
| v. | |
| | **PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(b)(1) MOTIONS TO DISMISS** |
| KAREN BRINSON BELL, *et al.*, | |
| *Defendants.* | |

Case 5:24-cv-00481-FL    Document 66    Filed 11/22/24    Page 1 of 50
PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iv

INTRODUCTION AND SUMMARY OF THE CASE .................................................. 1

STATEMENT OF FACTS ............................................................................................. 4

    A.    Ballot Selfies Uniquely Express Political Beliefs. ............................................ 4

    B.    Defendants Enforce North Carolina's Ballot Selfie Ban. ................................. 5

        1.    The State Board warns against, investigates, and threatens criminal consequences for taking or sharing ballot selfies. ....................................... 6

        2.    The County Board enforces the Ballot Selfie Ban at polling places, preventing ballot selfies or ordering they be deleted. ................................. 7

        3.    District Attorney Freeman has the authority to investigate and prosecute violations of the Ballot Selfie Ban. ................................................................. 8

        4.    The Attorney General has the authority to investigate and prosecute violations of the Ballot Selfie Ban. ................................................................. 8

    C.    Defendants Enforce the Ballot Selfie Ban Against Hogarth, Who Seeks Injunctive and Declaratory Relief. ................................................................... 9

    D.    Defendants Abortively Sought to Enforce the Ballot Selfie Ban Against Hogarth Again During This Litigation. ........................................................... 11

STANDARD OF REVIEW ........................................................................................... 12

ARGUMENT .................................................................................................................. 13

I.    The Ballot Selfie Ban and the State and County Boards' Enforcement of it Injure Hogarth's First Amendment Rights. ......................................................... 14

    A.    Banning ballot selfies injures Hogarth and telling her to "say something else" does not cure her injuries ...................................................................... 15

    B.    There is a credible threat of enforcement of the Ballot Selfie Ban, against Hogarth and generally. ................................................................................... 17

        i.    The Ballot Selfie Ban presumptively and demonstrably creates a credible threat of prosecution. ..................................................................... 18

        ii.    Defendants have not overcome the presumption that the Ballot Selfie Ban creates a credible threat of enforcement. .................................................. 20

ii

C.    The Ballot Selfie Ban objectively chills speech................................................. 23

II.    Hogarth's Injury is Traceable to All Defendants Because Each Is Charged with Enforcing the Ballot Selfie Ban. ............................................................. 28

    A.    The State Board investigates, refers, and warns voters against taking ballot selfies. .................................................................................................... 29

    B.    The County Board investigates ballot selfies, warns voters against taking them, and enforces the Ban at polling places. .................................................. 32

    C.    Hogarth Has Standing to Sue District Attorney Freeman and the Attorney General because they have the authority to prosecute her for taking or sharing ballot selfies. ..................................................................... 36

        i.    Hogarth's injuries are traceable to District Attorney Freeman. .............. 37

        ii.    Hogarth's injuries are traceable to the Attorney General. ...................... 39

III.    Hogarth's Injury is Redressable Because Enjoining the Defendants Will Allow Her to Freely Take and Share Ballot Selfies. ...................................................... 40

CONCLUSION............................................................................................... 42

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ................................................................................................ 14

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett,*
   564 U.S. 721 (2011) ............................................................................................ 1, 14

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979) ................................................................................................ 17

*Bantam Books, Inc. v. Sullivan,*
   372 U.S. 58 (1963) ................................................................................... 26, 27, 32

*Blackburn v. Dare County,*
   486 F. Supp. 3d 988 (E.D.N.C. 2020) ................................................................. 36

*Bostic v. Schaefer,*
   760 F.3d 352 (4th Cir. 2014) .............................................................................. 35

*Bryant v. Woodall,*
   1 F.4th 280 (4th Cir. 2021) .................................................................................. 37

*City of Ladue v. Gileo,*
   512 U.S. 43 (1994) ................................................................................................ 16

*City of Lakewood v. Plain Dealer Publ'g Co.,*
   486 U.S. 750 (1988) .......................................................................................... 25, 26

*Coal. for Good Governance v. Kemp,*
   558 F. Supp. 3d 1370 (N.D. Ga. 2021) ............................................................. 1, 14

*Constantine v. Rectors & Visitors of George Mason Univ.,*
   411 F.3d 474 (4th Cir. 2005) ........................................................... 14, 23, 24

*Cooksey v. Futrell,*
   721 F.3d 226 (4th Cir. 2013) ........................................................................passim

*Correll v. Herring,*
   212 F. Supp. 3d 584 (E.D. Va. 2016) ............................................................. 22, 38

*Crookston v. Johnson,*
   370 F. Supp. 3d 804 (W.D. Mich. 2018) ............................................................. 14

*Disability Rts. S.C. v. McMaster*,
    24 F.4th 893 (4th Cir. 2022) ....................................................................... 29

*Edgar v. Haines*,
    2 F.4th 298 (4th Cir. 2021) ......................................................................... 28

*Ex parte Young*,
    209 U.S. 123 (1908) .................................................................................... 40

*FEC v. Cruz*,
    596 U.S. 289 (2022) ............................................................... 12, 15, 41, 42

*First Nat'l Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978) .................................................................................... 14

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ................................................................................. 3, 41

*Frank v. Lee*,
    84 F. 4th 1119 (10th Cir. 2023) ................................................................. 36

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) ................................................. 28, 35, 40, 41

*Grabarczyk v. Stein*,
    No. 5:19-CV-48- BO, 2019 WL 4235356 (E.D.N.C. Sept. 5, 2019)............................ 40

*Hill v. Williams*,
    No. 16-CV-02627-CMA, 2016 WL 8667798 (D. Colo. Nov. 4, 2016) ........... 1, 14, 21, 22

*Ind. C.L. Union Found., Inc. v. Ind. Sec'y of State*,
    229 F. Supp. 3d 817 (S.D. Ind. 2017) ................................................... 1, 14

*Kareem v. Cuyahoga Cnty. Bd. of Elections*,
    95 F.4th 1019 (6th Cir. 2024) ..........................................................passim

*Kenny v. Wilson*,
    885 F.3d 280 (4th Cir. 2018) ........................................................ 23, 24, 25

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) .......................................................... 4, 12, 27

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*,
    713 F.3d 187 (4th Cir. 2013) ........................................................ 28, 31, 34

*Laufer v. Naranda Hotels*, LLC,
    60 F.4th 156 (4th Cir. 2023) ...................................................................... 22

*Libertarian Party of Va. v. Judd,*
   718 F.3d 308 (4th Cir. 2013) ........................................................ 28

*Menders v. Loudoun Cnty. Sch. Bd.,*
   65 F.4th 157 (4th Cir. 2023) ........................................................ 24

*Meredith v. Stein,*
   355 F. Supp. 3d 355 (E.D.N.C. 2018) ........................................ 39

*Murthy v. Missouri,*
   144 S. Ct. 1972 (2024) ........................................................ 32, 40

*N. C. A. Philip Randolph Inst. v. N. C. State Bd. of Elections,*
   No. 1:20CV876, 2020 WL 6488704 (M.D.N.C. Nov. 4, 2020) ................ 31, 37, 38

*N. C. Right to Life, Inc. v. Bartlett,*
   168 F.3d 705 (4th Cir. 1999) ................................................ passim

*Nat'l Ass'n for Rational Sexual Offense L. v. Stein,*
   No. 1:17CV53, 2019 WL 3429120 (M.D.N.C. July 30, 2019) ................ 40

*National Press Photographers Association v. McCraw,*
   90 F.4th 770 (5th Cir. 2024) ........................................................ 36, 38

*Nat'l Rifle Ass'n of America v. Vullo,*
   602 U.S. 175 (2024) ........................................................ 31

*PETA v. N.C Farm Bureau Fed'n, Inc.,*
   60 F.4th 815 (4th Cir. 2023) ........................................................ 14

*Porter v. Clarke,*
   852 F.3d 358 (4th Cir. 2017) ........................................................ 22, 39

*Rideout v. Gardner,*
   838 F.3d 65 (1st Cir. 2016) ........................................................ 1, 5, 14

*S.C. Wildlife Fed'n v. Limehouse,*
   549 F.3d 324 (4th Cir. 2008) ........................................................ 29, 30, 33

*Sec'y of State of Md. v. Joseph H. Munson Co., Inc.,*
   467 U.S. 947 (1984) ........................................................ 13

*Silberberg v. Bd. of Elections,*
   272 F. Supp. 3d 454 (S.D.N.Y. 2017) ........................................ 1, 14

*Simon v. E. Kentucky Welfare Rts. Org.,*
   426 U.S. 26 (1976) ........................................................ 40

*Sup. Ct. of Va. v. Consumers Union of U. S., Inc.*,
446 U.S. 719 (1980) ............................................................................... 17, 36

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .................................................................... 13, 18, 20, 21

*Texas v. Johnson*,
491 U.S. 397 (1989) ................................................................................... 16

*United States v. Stevens*,
559 U.S. 460 (2010) .............................................................................. 21, 22

*Virginia v. Am. Booksellers Ass'n*,
484 U.S. 383 (1988) ................................................................................... 37

## Statutes

N.C. Gen. Stat. § 114-11.6 ...................................................................passim

N.C. Gen. Stat. § 114-2 ........................................................................ 9, 39

N.C. Gen. Stat. § 163-165.1 ................................................................... 5, 19

N.C. Gen. Stat. § 163-166.3 ........................................................... 5, 6, 19, 23

N.C. Gen. Stat. § 163-22 ...................................................................... 6, 30

N.C. Gen. Stat. § 163-273 .................................................................. 5, 6, 19

N.C. Gen. Stat. § 163-274 ........................................................... 5, 6, 19, 23

N.C. Gen. Stat. § 163-278 ............................................................ 6, 8, 30, 37

N.C. Gen. Stat. § 163-33 ................................................................... 7, 8, 33

N.C. Gen. Stat. § 7A-61 ...................................................................... 8, 37

## INTRODUCTION AND SUMMARY OF THE CASE

The First Amendment "has its fullest and most urgent application" to expression surrounding political campaigns. *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). Even though sharing how one votes for candidates or ballot issues is thus political speech at the heart of the First Amendment, North Carolina criminalizes voters taking and sharing photos of their own voted ballots and/or of themselves in voting enclosures. Colloquially known as "ballot selfies," these photos allow voters to express support for candidates like nothing else, by showing the world for whom they actually voted. When ballot selfie bans have faced constitutional challenges elsewhere, federal courts have invalidated them as infringements on voters' freedom of speech, save one instance where a state produced concrete and particularized evidence of actual voter fraud.[1] For present purposes, it is enough that in *every* prior ballot selfie ban challenge, the plaintiffs had standing to seek equitable relief against enforcement.[2] So too, here.

In March 2024, Plaintiff Susan Hogarth voted in North Carolina's primary and, after voting her ballot, took a few seconds to snap a ballot selfie and post it to social media. Two weeks later, she received a State Board of Elections letter citing one of five state statutory provisions that prohibit ballot selfies (collectively the "Ballot Selfie Ban") and threatening misdemeanor charges if she did not delete her post. So Hogarth brought

---

[1] *See Rideout v. Gardner*, 838 F.3d 65 (1st Cir. 2016); *Coal. for Good Governance v. Kemp*, 558 F. Supp. 3d 1370 (N.D. Ga. 2021); *Ind. C. L. Union Found., Inc. v. Ind. Sec'y of State*, 229 F. Supp. 3d 817 (S.D. Ind. 2017); *Hill v. Williams*, No. 16-CV-02627-CMA, 2016 WL 8667798 (D. Colo. Nov. 4, 2016). *But see Silberberg v. Bd. of Elections*, 272 F. Supp. 3d 454 (S.D.N.Y. 2017) (upholding ballot selfie ban based on history of voter fraud unique to New York).
[2] *See supra* n.1; *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019 (6th Cir. 2024) .

this suit to enjoin the State's Ballot Selfie Ban and protect the First Amendment rights of all North Carolinians to engage in core political expression—and she has standing to do so against each named Defendant. Yet the prosecuting authorities and government bodies statutorily charged with enforcing the Ballot Selfie Ban seek to avoid constitutional review by moving to dismiss on the asserted ground that Hogarth lacks standing to bring her challenge. Those motions fail on their merits.

First, Hogarth has sufficiently alleged injury in fact. The Defendants' statutory powers and actions establish a credible threat of enforcement of the Ban against taking or sharing ballot selfies, one that is presumed unless Defendants provide "compelling evidence to the contrary." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999). They have not done so here. Neither absence of prior prosecutions nor District Attorney Freeman's attempt to "disavow" prosecuting Hogarth can negate the threat North Carolina's Ballot Selfie Ban poses to Hogarth's speech.

The Ballot Selfie Ban and Defendants' enforcement of it also objectively chill protected speech—a separate constitutional injury Defendants ignore. The State Board of Elections investigates and refers violations of the Ban for prosecution, and chills speech deliberately by publicly warning voters at election time that taking ballot selfies is a crime. The Wake County Board of Elections warns voters online that ballot selfies are illegal and enforces the ban by stopping voters from taking them at the polling place. More to the point, both the State and County Boards admonished *Hogarth* for her ballot selfies and threatened punishment. And the Wake County District Attorney and North Carolina Attorney General are statutorily charged with seeking that punishment—and

2

have not disavowed their authority to prosecute. Defendants' enforcement authority and their efforts to stop voters, including Hogarth, from taking and sharing ballot selfies would chill a person of ordinary firmness from engaging in expression that uniquely communicates voters' political views.

Hogarth's First Amendment injury is "fairly traceable" to each Defendant, for much the same reasons. The State Board investigates and refers ballot selfies for prosecution, warns voters not to take or share them, and instructs voters to delete them, no matter where they were taken. The Wake County Board enforces the ballot selfie ban at polling places, and County Board officials instruct voters not to take, and to delete, the photos. District Attorney Freeman and the Attorney General both have authority to prosecute violations of North Carolina law, including the Ballot Selfie Ban.

Just weeks ago, *during this litigation*, County Board officials at the polling place started to bar Hogarth from taking ballot selfies when she voted in the general election—and presumably would have but for a limited injunction this Court had issued. By permanently enjoining each of the Defendants, Hogarth will be able to take and share ballot selfies without interference from election officials or fear of prosecution. Those are textbook redressable injuries. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Thus, all told, the allegations in Hogarth's complaint clearly establish standing, and the Court should deny each of the Defendants' motions to dismiss.

**STATEMENT OF FACTS**

**A.      Ballot Selfies Uniquely Express Political Beliefs.**

Susan Hogarth is a resident and registered voter in Wake County, North Carolina. (Verified Compl., ECF No. 1 ¶ 9.)[3] On March 5, 2024, she went to her polling place to vote in North Carolina's primary election. (*Id.* ¶ 53.) After Hogarth filled out her ballot, she took approximately 45 seconds to take a "ballot selfie"—a photograph of herself in the voting booth displaying her completed ballot:



(*Id.* ¶¶ 57–59.)

Ballot selfies like Hogarth's uniquely establish for whom or what citizens actually vote, and thus have "special communicative value" by allowing them to "communicate

---

[3] Because Defendants bring facial challenges to the Court's subject matter jurisdiction, it must take as true the facts alleged in Hogarth's Verified Complaint and Verified Supplemental Complaint. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

4

that the voter has in fact given his or her vote to that candidate." *Rideout v. Gardner*, 838 F.3d 65, 75 (1st Cir. 2016). Ballot selfies also allow voters to express multiple political messages in a unique, concise, and visually compelling way. Hogarth's March 5, 2024 ballot selfie, for example:

- Commemorated her vote for candidates she endorses and supports;
- Promoted down-ballot and third-party candidates;
- Encouraged potential voters to vote;
- Invited voters to consider voting for a third-party candidate;
- Challenged the idea that voters should vote for only major party candidates;
- Expressed her pride in having participated in the electoral process; and
- Contested North Carolina's laws banning ballot selfies.

(ECF No. 1 ¶¶ 51, 134.)

## B. Defendants Enforce North Carolina's Ballot Selfie Ban.

Five provisions of North Carolina law ban ballot selfies (the "Ballot Selfie Ban").

Four ban taking or sharing photographs of a completed ballot (the "Ballot Photography Provisions"), without exceptions for voters taking or sharing photos of their own ballots:

- N.C. Gen. Stat. § 163-166.3(c) prohibits photographing a completed ballot anywhere, whether in-person or absentee.
- N.C. Gen. Stat. § 163-273(a)(1) makes it a **Class 2 misdemeanor** for a voter to show their own completed ballot to anyone else, and § 163-273(b) demands election officials "cause any person committing any of the offenses set forth in subsection (a) of this section to be arrested and [] cause charges to be preferred against the person so offending in a court of competent jurisdiction."
- N.C. Gen. Stat. § 163-165.1(e) makes it a **Class 1 misdemeanor** to disclose the contents of any "electronic record" of a completed ballot, including one's own.
- N.C. Gen. Stat. § 163-274(b)(1) specifies, in a list of elections law crimes, that it is a **Class 1 misdemeanor** to disclose how a voter voted—even one's own vote—in violation of § 163-165.1(e).

5

A fifth provision (the "Voting Enclosure Provision") prohibits photographing any voter in a voting enclosure—rooms at polling places where voting occurs—without first getting permission from a county election official, with no exception for ballot selfies. N.C. Gen. Stat. § 163-166.3(b) (excepting only photographs of candidates).

Each of the Defendants play a critical role in enforcing the Ballot Selfie Ban.

### 1. The State Board warns against, investigates, and threatens criminal consequences for taking or sharing ballot selfies.

The North Carolina State Board of Elections ("State Board") supervises the State's primary and general elections. (Verified Compl., ECF No. 1 ¶ 11.) North Carolina law requires State Board members to distribute materials explaining elections laws to voters, to advise county election boards how to conduct elections, and to "compel observance of the requirements of the election laws by county boards of elections and other election officers." N.C. Gen. Stat. §§ 163-22(b)–(c). It must also investigate and report violations of election laws for prosecution. N.C. Gen. Stat. §§ 163-22(d), 163-273(b), 163-274, 163-278.

In carrying out its duties, the State Board regularly publicizes the Ballot Selfie Ban and enforces the law against those who take them. During elections, the State Board issues public statements in press releases and on social media warning voters not to take ballot selfies. (Verified Compl., ECF No. 1 ¶¶ 86–89.) The State Board website also warns that taking a photo of a completed ballot is illegal. (*Id.* ¶¶ 88–89.)

The State Board acknowledges ballot selfies express voters' feelings about voting. As its Executive Director, Defendant Brinson Bell, explained in a press release before the March 2020 primary election: "We understand wanting to photograph yourself

voting, especially with the popularity of selfies . . . However, there are legal ways to display your voting pride, such as wearing your 'I Voted' sticker or taking a picture outside of the precinct." (*Id.* ¶ 85.)

The State Board routinely investigates ballot selfies based on reports from the public and county elections officials, including the Board of Elections of Wake County, where Hogarth lives and votes. (*Id.* ¶¶ 95, 100–104.) State Board investigators also independently scour social media to identify North Carolina voters who have taken and shared ballot selfies online. (*Id.* ¶¶ 90–97, 101–103.) The State Board has received and investigated nearly 50 reports of voters photographing completed ballots since March 2016. (*Id.* ¶ 91.) Some of these reports even describe investigations of voters sharing photos of their completed *absentee* ballots taken outside polling places. (*Id.* ¶ 94.) The State Board also refers ballot selfie cases to North Carolina district attorneys for prosecution. (*Id.* ¶ 97.)

### 2. The County Board enforces the Ballot Selfie Ban at polling places, preventing ballot selfies or ordering they be deleted.

The Wake County Board of Elections ("County Board") is required by statute to appoint elections officers—including chief judges, judges, and assistants—and to issue instructions to guide elections officers and voters in Wake County. N.C. Gen. Stat. § 163-33. (Verified Compl., ECF No. 1 ¶ 16.) County Board officials monitor polling places and act to prevent voters from violating elections laws, including the Ballot Selfie Ban. (Verified Suppl. Compl., ECF No. 65 ¶ 5–21.) The County Board also posts warnings to voters on its website that photographing a voted ballot is illegal. (Verified Compl., ECF No. 1 ¶¶ 98–99.) The County Board investigates violations of the Ballot Selfie Ban and

reports violations to the State Board. N.C. Gen. Stat. § 163-33. (Verified Compl., ECF No. 1 ¶ 16.) On November 8, 2022, the County Board's then-director reported to the State Board a Wake County voter who had allegedly violated the Ban. (*Id.* ¶ 101–03.)

### 3. District Attorney Freeman has the authority to investigate and prosecute violations of the Ballot Selfie Ban.

Defendant Lorrin Freeman is the Wake County District Attorney. (*Id.* ¶ 20.) She is responsible for "prosecut[ing] in a timely manner in the name of the State all criminal actions and infractions requiring prosecution in the superior and district courts of [her] prosecutorial district." N.C. Gen. Stat. § 7A-61. (Verified Compl., ECF No. 1 ¶ 20.) Although District Attorney Freeman "disavowed" prosecuting Hogarth—while this case is pending—for some conduct the Ballot Selfie Ban prohibits (Freeman Mot. Dismiss Mem., ECF No. 59 at 10), she has a statutory duty to "investigate any violations of" North Carolina election laws, including the Ballot Selfie Ban, and is authorized to "initiate prosecution and prosecute any violations" thereof. N.C. Gen. Stat. § 163-278. (Verified Compl., ECF No. 1 ¶ 20; *accord* Freeman Mot. Dismiss Memo., ECF No. 59 at 4 ("District attorneys in North Carolina are specifically authorized to prosecute violations of certain voting-related statutes, including those challenged here.").)

### 4. The Attorney General has the authority to investigate and prosecute violations of the Ballot Selfie Ban.

North Carolina law grants the Attorney General power to prosecute violations of the Ballot Selfie Ban. (Verified Compl., ECF No. 1 ¶ 21.) The Attorney General has the power to prosecute ballot selfies and assist district attorneys in the prosecution of ballot selfies, upon district attorney request. N.C. Gen. Stat. § 114-11.6. (Verified Compl., ECF No. 1 ¶ 21.) In fact, North Carolina law establishes a Special Prosecution Division of the

Attorney General's Office, which must assist in or prosecute criminal cases when the Attorney General approves such a request from a district attorney. N.C. Gen. Stat. § 114-11.6. (Verified Compl., ECF No. 1 ¶ 21; *accord* State Defs.' Mot. Dismiss Mem., ECF No. 56 at 15 ("Pursuant to section 114-11.6, there is a division within the Attorney General's office that has the authority to prosecute or assist in the prosecution of criminal cases[.]").) The Attorney General also has a duty "to appear for the State in any other court or tribunal in any cause or matter, civil or criminal, in which the State may be a party or interested." N.C. Gen. Stat. § 114-2(1).

## C. Defendants Enforce the Ballot Selfie Ban Against Hogarth, Who Seeks Injunctive and Declaratory Relief.

After taking her primary election ballot selfie on March 5, 2024, Hogarth submitted her ballot, exited the polling place, and posted the ballot selfie to X.[4] (Verified Compl., ECF No. 1 ¶¶ 53–66.) Her post bore a caption endorsing the candidates she voted for and protesting that "Laws against #ballotselfie are bullshit." (*Id.* ¶¶ 66–70.) Two weeks later, Hogarth received a letter from the State Board dated March 13, 2024, threatening prosecution for her ballot selfie. (*Id.* ¶ 72, Ex. A.) In the letter, State Board Investigator Danielle Brinton warned Hogarth four times that taking and sharing ballot selfies is illegal. (*Id.* ¶¶ 72–73, Ex. A.) She wrote that Hogarth's ballot selfie was a "violation[] of election laws" and threatened her with a "Class 1 Misdemeanor." (*Id.* ¶¶ 72, 80, 81, Ex. A.) Brinton demanded that Hogarth "take down the post." (*Id.* ¶¶ 72, 83, Ex. A.) Hogarth refused, and her March 5, 2024 ballot selfie post remains public on

---

[4] "X" is the name of the social media platform formerly known as "Twitter." (Verified Compl., ECF No. 1 ¶ 66.)

X. (*Id.* ¶¶ 105–106.) Hogarth took and shared ballot selfies in prior elections (*id.* ¶¶ 49–50, 107–13), and intends to vote in future elections, either in person or absentee, and in conjunction with doing so, to take and share ballot selfies. (*Id.* ¶¶ 107–13.)

On August 22, 2024, Hogarth filed her Verified Complaint against State Board and County Board officials, the Wake County District Attorney, and the North Carolina Attorney General seeking declaratory and injunctive relief against the Ballot Selfie Ban. (*Id.* ¶¶ 11–23, 124–134.) Hogarth brings three declaratory and injunctive relief claims: (1) a challenge to the Ballot Photography Provisions, as applied to ballot selfies, against all Defendants (*id.* ¶¶ 135–69); (2) a challenge to the Voting Enclosure Provision, as applied to ballot selfies, against all Defendants (*id.* ¶¶ 170–187); and (3) an as-applied challenge to the threat of prosecution from the State Board's March 13, 2024 letter against the State Defendants and District Attorney Freeman. (*Id.* ¶¶ 188–204.)

On August 27, 2024, Hogarth filed a Motion for Preliminary Injunction (ECF Nos. 9, 11), which Defendants opposed. (ECF Nos. 40, 41, 42.) The Court heard oral argument on the motion on October 7, 2024, during which District Attorney Freeman agreed to a limited preliminary injunction against her prosecution of Hogarth for taking or sharing ballot selfies during the pendency of this case (Mot. Hr'g Tr., ECF No. 52 at 33:13–34:9), which the Court entered on October 21, 2024 (ECF No. 60.)[5] Responding to Defendants' stated intentions to seek dismissal by disputing subject matter jurisdiction, and for failure to state a claim, the Court ordered bifurcated briefing, commencing with standing. (*Id.* at 35:15–35:24, 43:8–44:24.)

---

[5] The Court clarified the injunction via text-only order on October 25, 2024.

**D.    Defendants Abortively Sought to Enforce the Ballot Selfie Ban Against Hogarth Again During This Litigation.**

On October 26, 2024, the day after the Court clarified its limited injunction order, Hogarth voted at an early voting polling place in Wake County. (Verified Suppl. Compl., ECF No. 65 ¶ 5.) Hogarth filled out her ballot, then took less than a minute to photograph herself with it, with a "no photos" sign in the background. (*Id.* ¶¶ 8–12.) While she took her ballot selfie, Hogarth heard County elections official call to her from across the room, "you cannot take a picture of your ballot, you need to delete that, please." (*Id.* ¶¶ 13–14.) Hogarth told the elections official that the Court's order protected her ability to take ballot selfies without fear of prosecution. (*Id.* ¶ 15.) Hogarth waited while the elections official conferred with the precinct's chief judge. (*Id.* ¶ 16.) Only after the chief judge received permission from "the Board of Elections" did the elections official allow Hogarth to submit her ballot and leave without deleting her ballot selfies. (*Id.* ¶¶ 16–21.) On November 6, 2024, Hogarth filed a Verified Supplemental Complaint alleging the facts of the elections officials' efforts to stop her from taking and sharing ballot selfies when she voted on October 26, 2024. (ECF No. 65.)

Defendants their filed Rule 12(b)(1) motions to dismiss on October 18, 2024. (Defs. Mots. Dismiss, ECF Nos. 53, 55, 58.) In support, the State Board and Attorney General ("State Defendants") principally argue Hogarth is not injured because she can express herself in "other ways," and that any injury she suffers in not traceable to them because they cannot criminally prosecute her. (State Defs.' Mot. Dismiss Mem., ECF No. 56 at 2.) The County Board Defendants argue Hogarth's injuries are not traceable to them due to failure to allege a connection between the County Board and criminal prosecution

under the Ban, or that the County Board prohibited her from taking ballot selfies. (County Board Mot. Dismiss Mem., ECF No. 54.) And District Attorney Freeman argues Hogarth cannot allege injury or traceability because Freeman "disavowed" prosecuting Hogarth, and she has not shown evidence of prior prosecutions under the Ban. (Freeman Mot. Dismiss Mem., ECF No. 59 at 10.)

## STANDARD OF REVIEW

Because Defendants "make[] a facial challenge to subject matter jurisdiction," the Court must afford Hogarth "the same procedural protection [she] would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192.[6] That means the Court must take the facts alleged in Hogarth's Verified Complaint and Verified Supplemental Complaint as true and deny Defendants' motions if Hogarth "allege[d] sufficient facts" to confer standing. *Id.* The Court must also "accept as valid" for this purpose the merits of Hogarth's First Amendment claims that the Ballot Selfie Ban unconstitutionally burdens her protected speech. *See FEC v. Cruz*, 596 U.S. 289, 298 (2022) (holding merits question of availability of "alternative" means to avoid speech restriction was irrelevant to standing inquiry).

And critically here, when laws threaten First Amendment rights, federal courts dispense with "rigid standing requirements" because in those cases "standing considerations . . . tilt dramatically toward a finding of standing." *Cooksey v. Futrell*,

---

[6] A facial challenge contends, as Defendants have done here, that a plaintiff has failed "to allege facts upon which subject matter jurisdiction can be based." *Kerns*, 585 F.3d at 192. Defendants do not make a factual challenge to subject matter jurisdiction because they do not contend "the jurisdictional allegations of the complaint are not true." *Id.* (County Board Mot. Dismiss Mem., ECF No. 54; State Defs. Mot. Dismiss Mem., ECF No. 56; Freeman Mot. Dismiss Mem., ECF No. 59.)

721 F.3d 226, 235 (4th Cir. 2013) (citations omitted). The standing requirements are relaxed in First Amendment cases because, "'when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.'" *Id.* (quoting *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984)).

## ARGUMENT

The Ballot Selfie Ban criminalizes political speech Hogarth wants to share. And Defendants have not only threatened her with prosecution for sharing a ballot selfie, but—in the most recent election—they tried to stop her from taking one in the first place. (Verified Compl., ECF No. 1 ¶¶ 72–83, Ex. A; Verified Suppl. Compl., ECF No. 65 ¶¶ 5–21.) Hogarth thus plausibly alleges "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (citation and internal quotation marks omitted). Specifically, the Ban itself and Defendants' enforcement of it create a credible threat of prosecution and chill ordinary people from engaging in protected political speech—injuries causally linked to every Defendant by law and action. As an injunction against each Defendant will foreclose enforcement of the Ban against Hogarth, it will redress the credible threat of prosecution and objective chill on her ability to take and share ballot selfies. The Court therefore should deny Defendants' Rule 12(b)(1) motions to

dismiss and allow Hogarth's claims to proceed to the merits stage, just as every First Amendment challenge to a statutory ballot selfie ban has elsewhere.[7]

## I. The Ballot Selfie Ban and the State and County Boards' Enforcement of it Injure Hogarth's First Amendment Rights.

North Carolina's Ballot Selfie Ban injures Hogarth by creating a credible threat of prosecution for, and objectively chilling, her protected First Amendment expression. The First Amendment protects photographs in the same way it protects the written and spoken word: "All manner of speech—from 'pictures, films, paintings, drawings, and engravings,' . . . qualify for the First Amendment's protections[.]" *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023). Those protections extend to both taking and sharing photographs. *PETA v. N.C Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 829 (4th Cir. 2023).

Ballot selfies are protected political speech at "the heart of the First Amendment's protection," *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978), which "has its fullest and most urgent application" to expression related to "campaign[s] for political office." *Freedom Club PAC*, 564 U.S. at 734. Ballot selfies uniquely and powerfully express political beliefs, allowing voters to "both express support for a candidate and communicate that the voter has *in fact* given his or her vote to that candidate." *Rideout*, 838 F.3d at 75 (emphasis added). Hogarth's ballot selfies express her political beliefs

---

[7] *See Rideout*, 838 F.3d 65; *Kareem*, 95 F.4th 1019; *Coal. for Good Governance*, 558 F. Supp. 3d; *Crookston v. Johnson*, 370 F. Supp. 3d 804 (W.D. Mich. 2018); *Silberberg*, 272 F. Supp. 3d at 454; *Ind. C.L. Union Found.*, 229 F. Supp. 3d 817; *Hill*, 2016 WL 8667798. None of these courts stopped the cases from proceeding for want of subject matter jurisdiction as to the defendants, which of course, each court had a duty to ensure existed throughout the cases, even if it meant raising it *sua sponte*. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005).

like nothing else can—by *proving* she voted in support of those beliefs. (Verified Compl., ECF No. 1 ¶¶ 51–54, 57.)

North Carolina's Ballot Selfie Ban and Defendants' enforcement of it injures Hogarth's First Amendment rights three distinct ways: (1) the Ban itself creates a presumption of a credible threat of prosecution, which Defendants have not overcome; (2) the Ban itself objectively chills speech, a distinct injury; and (3) Defendants' real-world attempts to stop voters from taking and sharing ballot selfies objectively chill speech. These constitute injury in fact that support standing.

### A. Banning ballot selfies injures Hogarth and telling her to "say something else" does not cure her injuries.

Hogarth has a First Amendment right to express her political beliefs through ballot selfies, and in assessing standing, the Court must "accept as valid the merits" of her claim and thus assume the Ballot Selfie Ban "unconstitutionally burdens speech." *Cruz*, 596 U.S. at 298. Suggesting Hogarth express her message other ways, as do Defendants, not only misses the constitutional point, but is irrelevant to standing.

Defendants argue Hogarth cannot show injury-in-fact because "[s]he remains free to engage in speech . . . in myriad other ways." (State Defs.' Mot. Dismiss Mem., ECF No. 56 at 2.) But as the Supreme Court recently explained, there is "no support in . . . standing jurisprudence" for the proposition that a "legally available 'alternative'" method of expression nullifies a plaintiff's injury. *Cruz*, 596 U.S. at 298. This is because permitting a plaintiff to use only an alternative to her preferred form of speech would violate rights that the Court, at this stage, must assume she has. *Id*. Just as the ability to pass handbills does not deprive a homeowner of the First Amendment right to put up

lawn signs, *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994), that Hogarth can still "express" her political views through other avenues does not deprive her of her First Amendment right to take and share ballot selfies.

The Supreme Court has long recognized that prohibiting particular forms of expression violates the First Amendment. In *Texas v. Johnson*, the government could not justify its prohibition on burning American flags by the existence of, as the dissent urged, available alternative forms of speech. 491 U.S. 397, 420 (1989); *see also id.* at 437 (Stevens, J., dissenting) (arguing ban should have survived because of "an available, alternative mode of expression—including uttering words critical of the flag"). The First Amendment does not permit the government to foreclose one type of expression on the promise that speakers can express themselves other ways. In *City of Ladue v. Gilleo*, for example, the Supreme Court invalidated an ordinance prohibiting signs on residential property over the government's objection that the plaintiff "remain[ed] free to convey [her] desired messages by other means, such as . . . letters, handbills, flyers, telephone calls, newspaper advertisements, bumper stickers, speeches, and neighborhood or community meetings." 512 U.S. at 56. The Supreme Court recognized that the medium was part of the message—that, despite these many other ways to communicate, the plaintiff's specific choice "carrie[d] a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means." *Id.*

Even setting aside that the Court must "accept as valid" the merits of Hogarth's First Amendment arguments, the First Amendment protects ballot selfies, and that is what matters.

## B. There is a credible threat of enforcement of the Ballot Selfie Ban, against Hogarth and generally.

The Ballot Selfie Ban's "mere existence" injures Hogarth by presumptively creating a credible threat of enforcement. *N.C. Right to Life*, 168 F.3d at 711. The Court must give effect to that presumption because the Ballot Selfie Ban comprises "non-moribund statute[s] that facially restrict" her speech, and Defendants have not presented "compelling evidence to the contrary." *Id.* at 710.

A credible threat of enforcement creates a cognizable injury for standing purposes because plaintiffs are "not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)*; see also Sup. Ct. of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 737 (1980) ("If prosecutors and law enforcement personnel cannot be proceeded against for declaratory relief, putative plaintiffs would have to await the institution of state-court proceedings against them in order to assert their federal constitutional claims."). Therefore, a plaintiff with "an intention to engage in a course of conduct arguably affected with a constitutional interest" has standing to challenge a statute proscribing that protected conduct when the statute presents a credible threat of enforcement. *Babbitt*, 442 U.S. at 298. And the threatened enforcement "need not even be a criminal prosecution." *Cooksey*, 721 F.3d at 238 n.5. The Ballot Selfie Ban injures Hogarth because the Court must presume the Ban creates a credible threat of enforcement and Defendants cannot overcome that presumption.

### i. The Ballot Selfie Ban presumptively and demonstrably creates a credible threat of prosecution.

Hogarth squarely alleges she has taken and intends to continue taking ballot selfies. (Verified. Compl., ECF No. 1 ¶¶ 161–62, 179–80.) And Defendants do not contest that the Ballot Selfie Ban facially proscribes Hogarth's past and future ballot selfies. (Defs.' Mot. Dismiss Mems., ECF Nos. 54, 56, 59.) Defendants must confront the presumption of a credible threat of enforcement by presenting "compelling evidence" that the statute is moribund, *N. C. Right to Life*, 168 F.3d at 710; *Cooksey*, 721 F.3d at 237–38, but they cannot.

The State and County Boards' history of past enforcement of the Ballot Selfie Ban, *including against Hogarth herself*, demonstrates a threat of enforcement against her that is not, as District Attorney Freeman claims, "imaginary," "speculative," "chimerical," or "conjectural" (Freeman Mot. Dismiss Mem., ECF No. 59 at 7). A "history of past enforcement," though unnecessary, is affirmative evidence a statute is not moribund. *Driehaus*, 573 U.S. at 164; *Kareem*, 95 F.4th at 1025 ("Although past enforcement is not necessary to establish a credible threat of enforcement," it is "good evidence that the threat . . . is not chimerical."). And the "history of past enforcement" courts consider is not limited to criminal prosecutions. In *Driehaus*, a single past complaint from a private citizen to a state commission, alleging the plaintiff violated the statute at issue, sufficed to establish credible threat of enforcement. 573 U.S. at 164. Warnings from a government agency to comply with a statute or risk criminal penalty— even when that agency can only refer cases for prosecution—are also evidence a statute is non-moribund. *Cooksey*, 721 F.3d at 233, 237–38. For example, *Cooksey* held a credible

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

threat of prosecution existed after state officials, in writing and by phone, demanded plaintiff change the content of his website. *Id*.

In *Kareem*, another challenge to a ballot selfie ban, the Sixth Circuit held Ohio's ban presented a credible threat of enforcement without any historical evidence of criminal prosecutions under the law. 95 F.4th at 1025–27. Instead, plaintiff sufficiently alleged a credible threat of prosecution by citing the statute, the county elections board's repeated warnings that ballot selfies were illegal, and "one past instance in which the Board has ordered an individual to remove a ballot from display." *Id*. at 1027. Hogarth alleges at least as much as to the Ballot Selfie Ban in showing not only a "history of past enforcement," but a history of enforcement *against her*.

As in *Cooksey* and *Kareem,* the State and County Boards here have demanded Hogarth's compliance, making clear the Ban's provisions are non-moribund. As Hogarth alleges, the State Board threatened her with a criminal prosecution if she did not comply with the Ballot Selfie Ban. (Verified Compl., ECF No. 1 ¶¶ 72–83, Ex. A.) The State Board also warned Hogarth she violated N.C. Gen. Stat. § 163-166.3(c) by taking a ballot selfie and could be found guilty of a misdemeanor if she did not stop sharing it. (*Id*.)[8] Plus, the State Board regularly warns the public that taking and sharing ballot selfies is a crime,[9] and has investigated and referred for prosecution dozens of voters who shared ballot selfies. (*Id*. ¶¶ 9, 90–97, 101–103, 107.)

_____

[8] Because section 163-166.3(c) does not set out a criminal penalty, the State Board's threat also implicates the three other Ballot Photograph Provisions, which make it a misdemeanor for voters to share their ballot selfies. N.C. Gen. Stat. §§ 163-273(a)(1), 163-165.1(e), 163-274(b)(1); (Verified Compl., ECF No. 1 ¶¶ 36–41, Ex. A.)

[9] The State Board's public warnings are nearly identical to those in *Kareem. Compare* 95 F.4th at 1023 (The Ohio Board of Elections' social media post: "We love seeing all the voter pride, but

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

When it comes to the County Board, their officials tried to prevent Hogarth from taking ballot selfies less than a month ago. Citing the Ban, County Board officials ordered her to delete her photographs, relenting only after Hogarth informed them of this Court's Order protecting her from prosecution. (Verified Suppl. Compl., ECF No. 65 ¶¶ 5–21.) Ultimately, even were a credible threat of enforcement not presumed (and it must be), the State and County Boards' "history of past enforcement," against Hogarth and others, demonstrates a credible threat exists for purposes the standing analysis' injury-in-fact requirement. *Driehaus*, 573 U.S. at 164.

> ### ii. Defendants have not overcome the presumption that the Ballot Selfie Ban creates a credible threat of enforcement.

Defendants have not acknowledged, let alone met, their burden to overcome the presumption that a non-moribund statute like the Ballot Selfie Ban presents a credible threat of enforcement. District Attorney Freeman argues no credible threat of enforcement exists because Hogarth has not shown prior prosecutions under the Ban and Freeman "disavowed" prosecuting Hogarth while this case is pending. She is wrong on both fronts.

By arguing Hogarth must show a history of criminal prosecutions (Freeman Mot. Dismiss Mem., ECF No. 59 at 9–11) District Attorney Freeman tries to turn the presumption standard on its head. But it is *Defendants*' burden to overcome the presumption with "compelling evidence." *N. C. Right to Life*, 168 F.3d at 710. They have

---

know it is illegal in OH to post a picture of your voted ballot!") *with* (Verified Compl., ECF No. 1 ¶ 85 (State Board Director Brinson Bell's press release statement: "We understand wanting to photograph yourself voting, especially with the popularity of selfies . . . However, there are legal ways to display your voting pride[.]").)

not. The absence of prior prosecutions does not rebut the presumed credible threat, particularly because the threat of enforcement is not exclusive to "criminal prosecution." *Cooksey*, 721 F.3d at 238 n.5. In any case, Hogarth *has* alleged evidence of prior enforcement, including her own. *See supra* Section I.B.i; *Driehaus*, 573 U.S. at 164 (complaint to elections commission shows history of past enforcement); *Cooksey*, 721 F.3d at 237–38, 238 n.5 (threat of enforcement not limited to criminal prosecution and government warnings are evidence that statutes are non-moribund).

Nor does District Attorney Freeman's "disavow[al]" of Hogarth's prosecution (Freeman Mot. Dismiss Mem., ECF No. 59 at 10) negate a credible threat of it, as there is no legal barrier to her changing her mind. The First Amendment, "does not leave us at the mercy of *noblesse oblige*," and courts may not "uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010). Particularly when speech rights hang in the balance, there is real "danger in putting faith in governmental representations of prosecutorial restraint." *Id.*

Those principles hold in election-related challenges, including those involving ballot selfies. In *Hill v. Williams*, the court held written assurances that the defendant would not enforce Colorado's ballot selfie ban against the plaintiff did not divest the plaintiff of standing because, as here, the ban had not been held unconstitutional and "merely 'the exercise of prosecutorial discretion and judgment,'" shielded the plaintiff from prosecution. 2016 WL 8667798 at *5. Another election-related free speech case, relying on *North Carolina Right to Life*, held that where, as here, the plaintiff had

previously been warned their conduct violated the law, neither "post-disavowal of prosecutorial intent" nor "historical non-enforcement" ameliorated the credible threat of prosecution. *Correll v. Herring*, 212 F. Supp. 3d 584, 603 (E.D. Va. 2016).

Moreover, standing is judged at the time a plaintiff files their complaint. *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023). District Attorney Freeman's attempt to moot Hogarth's claims via a post-Complaint disavowal could succeed only if Freeman satisfies "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (holding even two million dollars in physical changes to a prison to redress prisoners' claims did not deprive them of standing to challenge the constitutionality of the previous conditions of their confinement). Freeman fails to carry that burden here, because she "retains the authority and capacity to repeat [the] alleged harm." *Id.*

Absent a ruling that the Ballot Selfie Ban is unconstitutional, Freeman retains prosecutorial discretion to charge Hogarth or refer her to the Attorney General for prosecution. *See Stevens*, 559 U.S. at 480; *Hill*, 2016 WL 8667798 at *5 (promise not to prosecute was insufficient to erase credible threat of prosecution). Freeman candidly admits her disavowal lasts only "while the Court resolves this matter." (Freeman Mot. Dismiss Mem., ECF No. 59 at 10.) It therefore has no effect on Hogarth's request for permanent relief. In other words, if the Court grants Defendants' motions and dismisses the case on a Thursday, nothing stops Defendants from prosecuting Hogarth for her ballot selfies on Friday. Plus, while Freeman disavowed prosecuting Hogarth for *some*

of the expressive conduct the Ban prohibits, she does not disavow *all* portions of the Ballot Selfie Ban.[10] Moreover, the Attorney General has not disavowed prosecuting Hogarth. (State Defs.' Mot. Dismiss Mem., ECF No. 56.)

As Defendants have not met their burden to present "compelling evidence" overcoming the presumption that the Ballot Selfie Ban is non-moribund, it presents a credible threat of enforcement to Hogarth, and she has standing to challenge it.

### C. The Ballot Selfie Ban objectively chills speech.

Standing also lies because a credible threat of prosecution is not Hogarth's only injury: The Ballot Selfie Ban separately injures her by objectively chilling protected expression in a manner "likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *Cooksey*, 721 F.3d at 236–38; *Kenny v. Wilson*, 885 F.3d 280, 288, 289 n.3 (4th Cir. 2018). Defendants ignore this injury entirely, arguing only that Hogarth is not *subjectively* chilled from taking and sharing ballot selfies. (Freeman Mot. Dismiss Mem., ECF No. 59 at 7.) That is not the test in this Circuit.

The Fourth Circuit, like every other (except the Fifth), uses an "objective" chill test. *Constantine*, 411 F.3d 474, 500 (holding plaintiff had standing to sue despite not alleging chill to her own speech). That means a law's chilling effect depends on its impact on a "person of ordinary firmness," not upon the "actual effect" of the conduct "on a particular plaintiff." *Id.* As the Fourth Circuit explained, "a subjective standard would

---

[10] *See* Pl.'s Mot. Clarify, ECF No. 61 (explaining the Court's limited injunction Order adopting Freeman's declaration (ECF No. 60) does not foreclose prosecuting Hogarth, or requesting the Attorney General do so, for (1) photographing her voted ballot outside the voting enclosure in violation of N.C. Gen. Stat. § 163-166.3(c); (2) sharing ballot selfies in violation of N.C. Gen. Stat. § 163-274(b)(1); or (3) photographing herself in the voting enclosure in violation of N.C. Gen. Stat. § 163-166.3(b)).

expose public officials to liability in some cases, but not in others, for the very same conduct, depending upon the plaintiff's will to fight." *Id.* Regardless of whether Hogarth decides to self-censor, both the Ban and Defendants' enforcement of it are objectively chilling.

Objective chill is a distinct injury from credible threat of enforcement. In *Kenny*, the Fourth Circuit held student plaintiffs had standing to challenge two statutes—one criminalizing "disturbing" students or teachers, and the other criminalizing "disorderly" conduct—because plaintiffs had plausibly alleged objective chill to student speech based on the threat of arrest. 885 F.3d at 288–89, 289 n.3. The plaintiffs' allegations that the statutes chilled "the ability of students to speak out" because "student who fear arrest" would find it "more difficult" to "engage with the school" were "sufficient to allege an injury in fact" by objective chill, separate from their injury by credible threat of prosecution. *Id* at 289 n.3.*; see also Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 165 (4th Cir. 2023) (parents established objective chill injury by alleging school policy caused their student children to refrain from speaking out for fear of investigation and reputational damage.)

The Ballot Selfie Ban objectively chills speech two ways. First, its Ballot Photography Provisions' criminal penalties, and the Voting Enclosure Provision's conferral of unfettered authority on polling place officials, chill voters of ordinary firmness from taking and sharing ballot selfies. Second, Defendants' repeated efforts to stop voters from taking or sharing ballot selfies likewise chill ordinary voters.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

The Ballot Selfie Ban's mere existence likely causes North Carolinians of ordinary firmness to fear consequences like arrest, civil fines, investigations, and reputational harm if they take or share a ballot selfie. When statutes like the Ballot Photography Provisions are "aimed directly at plaintiffs" and force them to either self-censor "or risk criminal prosecution," courts recognize "the statute's mere existence risks chilling First Amendment rights." *N. C. Right to Life*, 168 F.3d at 711; *see also Cooksey*, 721 F.3d at 236 (government warnings to change website content under threat of statutory punishment created a "non-speculative and objectively reasonable chilling effect."). Each Ballot Photography provision is "aimed directly at" ballot selfies and each requires Hogarth either to comply—that is, stop engaging in First Amendment-protected activity—or "risk criminal prosecution." *N. Carolina Right to Life*, 168 F.3d at 711. And three of the Ballot Photography Provisions explicitly make violations misdemeanors. (Verified Compl., ECF No. 1 ¶¶ 33–43.) As in *Kenny*, the threat of enforcement will make it "more difficult" for a person of ordinary firmness to take and share ballot selfies, which is "sufficient to allege an injury in fact." 885 F.3d at 289 n.3.

Further, when a statute like the Voting Enclosure Provision requires speakers to obtain permission from a government official prior to engaging in expressive activity, the "mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). So speakers who wish to engage in expression requiring government pre-approval have standing to challenge the laws requiring approval even

if they haven't yet asked for permission. *Id.* at 755–56 ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office . . . *whether or not he applied for a license.*"). The Voting Enclosure Provision expressly prohibits taking photos of voters in the voting booth without permission from a chief judge but places no limits on chief judges' discretion. (Verified Compl., ECF No. 1 ¶¶ 44–48.) That unfettered licensing scheme alone confers standing as to that provision.[11]

Second, the State Board's and County Board's efforts to enforce the Ballot Selfie Ban—including their actions against Hogarth—are likely to deter a person of ordinary firmness from taking or sharing ballot selfies. Government warnings to comply with a statute or risk sanction objectively chill speech. *Cooksey*, 721 F.3d at 236–37. Even when those warnings do not *explicitly* threaten a sanction, "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963).

*Cooksey* is instructive. There, the Fourth Circuit held a diet blogger had standing to sue State Board of Dietetics officials who threatened an injunction and monitoring if he did not make changes to his website to comply with state statutes. 721 F.3d at 236–37. Dietetics Board officials asked the blogger to change and remove content, warning

---

[11] The State Defendants argue the Voting Enclosure Provision does not injure Hogarth because it does not ban photographing a ballot. (*See* State Defs.' Mot. Dismiss Memo., ECF No. 56 at 14.) But Hogarth also wants to be free to photograph herself in the voting enclosure, like in her March 2024 ballot selfie. (Verified Compl., ECF No. 1 ¶ 179–180.) The Voting Enclosure Provision thus injures her as well.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

they would "continue to monitor" his website and that they had "statutory authority" to seek an injunction. *Id.* at 231, 236–37. The court explained that the Board's "actions would be 'likely to deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Id.* at 236. When the government warns that something is illegal, like taking ballot selfies, ordinary people will refrain from doing it because they fear the consequences the government may impose.

The State and County Boards' enforcement actions are likely to chill a person of ordinary firmness from taking or sharing ballot selfies. The State Board's regular warnings—in press releases, on its website, and on social media—that sharing ballot selfies is illegal, its investigations of ballot selfies, and its referrals for prosecution (Verified Compl., ECF No. 1 ¶¶ 85–97), would not be "lightly disregard[ed]" by the ordinary person. *Bantam Books*, 372 U.S. at 68. The State Board's March 13, 2024, letter, invoking its duty to investigate, reciting a criminal statute that it said Hogarth had violated, and demanding Hogarth remove her post,[12] would also "likely [] deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.; see also Correll*, 212 F. Supp. 3d at 601 ("[A] particularized, objectively chilling threat of enforcement may arise from informal correspondence issued by a state official.").

---

[12] The State Board disputes Hogarth's characterization of the letter, claiming it was not threatening Hogarth just "informing her" of the Board's concerns. (State Defs.' Mot. Dismiss Mem., ECF No. 56 at 12.) But at the Motion to Dismiss stage, the Verified Complaints' facts must be accepted as true and interpreted in the light most favorable to Hogarth. *Kerns*, 585 F.3d at 192. Moreover, the State Board undermines its own argument by acknowledging "it has *instructed* voters to remove" ballot selfies "from social media when it has learned of their existence." (State Defs.' Mot. Dismiss Mem., ECF No. 56 at 5) (emphasis added). Such "instructions" from a state agency are not something voters would "lightly disregard." *Bantam Books*, 372 U.S. at 68.

Likewise, the County Board official's October 26, 2024 enforcement of the Ban against Hogarth at the polling place, warning "you cannot take a picture of your ballot, you need to delete that," would chill a person of ordinary firmness from engaging in the expression again (or for the first time) and made even Hogarth "anxious." (Verified Suppl. Compl. ¶ 18.) The Ballot Selfie Ban's objective chill of protected speech is a second injury-in-fact that independently supports standing.

## II. Hogarth's Injury is Traceable to All Defendants Because Each Is Charged with Enforcing the Ballot Selfie Ban.

Hogarth's injuries are "fairly traceable" to each Defendant because there is "a sufficient connection between the plaintiff's injury and the conduct of the defendant." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013). Establishing a sufficient connection is not a high bar requiring "strict proof of causation" but rather requires only a "genuine nexus." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000). A defendant need not be the "last link in the causal chain" to be properly sued. *Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013). So long as each Defendant "is at least in part responsible" for Hogarth's injuries, standing lies and this Court has jurisdiction. *Id.*; *Libertarian Party*, 718 F.3d at 316.

Like the injury-in-fact requirement, the traceability standard is also "somewhat relaxed in First Amendment cases, given that even the risk of punishment could chill speech." *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021) (citations omitted). Defendants with "supervisory authority" or responsibility for "carrying out" a challenged policy also have sufficient connections to establish traceability. *S.C. Wildlife*

*Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). Dismissal for lack of standing is thus appropriate only if a defendant has "no role in enforcing the law at issue." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022).

Hogarth sufficiently alleges each Defendant has a "sufficient connection" and "genuine nexus" with her injuries: The State Board is responsible for "carrying out" the Ballot Selfie Ban. (Verified Compl., ECF No. 1 ¶ 11.) It investigates violations, (*id.* ¶¶ 9, 95, 90–97, 100–04, 107), refers voters who take ballot selfies for criminal prosecution (*id.* ¶¶ 11, 97), and sent Hogarth herself a stern demand letter threatening prosecution. (*Id.* ¶¶ 72, 81, 83, Ex. A) The County Board, in its own words, "carr[ies] out" the Ban "on the ground," (County Board Br. Opp'n Prelim. Inj. Mot., ECF No. 40 at 3–5; *accord* County Board Mot. Dismiss Mem., ECF No. 54 at 8), something Hogarth experienced firsthand on October 26, 2024. (Verified Suppl. Compl., ECF No. 65 ¶¶ 5–21.) And the District Attorney and Attorney General are "empowered to prosecute violations" of the Ballot Selfie Ban. (Verified Compl., ECF No. 1 ¶¶ 20–21; Freeman Br. Opp'n Prelim. Inj. Mot., ECF No. 42 at 7.) All Defendants thus have direct connections to enforcing the Ballot Selfie Ban, making them proper defendants in a lawsuit to enjoin it.

## A. The State Board investigates, refers, and warns voters against taking ballot selfies.

Hogarth's injuries are traceable to the State Board because it is directly responsible for "carrying out" and enforcing North Carolina's prohibition against ballot selfies both in the polling place and outside of it. *S.C. Wildlife Fed'n*, 549 F.3d at 333. At the polling place, the State Board has a duty to "compel observance of the require-ments of the election laws by county boards of elections and other election officers." N.C.

Gen. Stat. § 163-22(c) (Verified Compl., ECF No. 1 ¶ 11). It has "supervisory authority" over county boards and local election officials to ensure they apply the Ballot Selfie Ban to prevent voters from taking ballot selfies in the polling place. *S.C. Wildlife Fed'n*, 549 F.3d at 333 (holding authority and responsibility to carry out challenged statute establishes requisite connection for standing). (*Accord* State Defs.' Mot. Dismiss Mem., ECF No. 56 at 5 (noting the State Board "has a duty to 'compel observance of the requirements of the election laws by county boards of elections and other election officers'").)

Beyond polling place responsibilities, the State Board regularly issues statements warning that taking a ballot selfie is illegal and could result in prosecution. (Verified Compl., ECF No. 1 ¶¶ 86–89.) It also "investigat[es] any violations" of the Ballot Selfie Ban, and routinely refers ballot selfie cases for prosecution. N.C. Gen. Stat. § 163-278 (Verified Compl., ECF No. 1 ¶¶ 11, 97; *accord* (State Defs.' Mot. Dismiss Mem., ECF No. 56 at 5 (noting State Board responsibility for "investigat[ing] when necessary or advisable, the administration of election laws."))). Its letter threatening Hogarth with criminal consequences after she shared her March 2024 ballot selfie online confirms the genuine nexus between the State Board and Hogarth's injuries. (Verified Compl., ECF No. 1 ¶¶ 72, 81, 83, Ex. A.)

The State Board nonetheless argues it must hold actual "prosecutorial authority" to be responsible for the harm Hogarth and other voters experience. (State Defs.' Mot. Dismiss Mem., ECF 56 at 12). Not so—its power to refer her for prosecution suffices. *See*, *e.g.*, *N. C. A. Philip Randolph Inst. v. N. C. State Bd. of Elections*, No. 1:20CV876,

2020 WL 6488704, at *5 (M.D.N.C. Nov. 4, 2020). In *Randolph Institute*, the court held the State Board was a proper defendant insofar as it referred election law violations to district attorneys for prosecution. *Id.* The court held there was "clearly a causal connection" because the State Board "initiated the causal chain" even if it was not the "last link" in that chain. *Id.*; *accord, Lansdowne, LLC*, 713 F.3d at 197. The same is true here as there is "clearly a causal connection" between a State Board referral and prosecution under the Ballot Selfie Ban.

Similarly, in *Cooksey*, the Fourth Circuit held a plaintiff "easily satisfie[d]" the causation requirement to sue the North Carolina State Board of Dietetics after it had "instructed" him to take down portions of his website. 721 F.3d at 238. Hogarth similarly easily satisfies the causation requirement given the State Board's demand letter that instructed her to remove her tweet. (Verified Compl., ECF No. 1 ¶¶ 72, 81, 83, Ex. A.)

The State Board also ignores the ways its "informal censorship"— including its thinly-veiled threats of criminal prosecution and its warnings that ballot selfies are unlawful—harm Hogarth as much as direct censorship. The First Amendment "prohibits government officials from relying on the threat of invoking legal sanctions and other means of coercion to achieve the suppression of disfavored speech." *Nat'l Rifle Ass'n of America v. Vullo*, 602 U.S. 175, 189 (2024) (alteration adopted) (quoting *Bantam Books*, 372 U.S. at 67). That is because "informal censorship" like a threat of prosecution is just as effective at achieving "the suppression of disfavored speech." *Id.* at 175, 189.

In *Bantam Books*, the Supreme Court held a state commission that sent letters to book publishers urging them to stop distributing books could be sued for First

Amendment violations. 372 U.S. at 71. It held the commission was a proper defendant even though publishers were "free to ignore the Commission's notices," and the commission could impose only "informal sanctions" such as "threat[s]" or "other means of coercion, persuasion, and intimidation." *Id.* at 67–68. Likewise, here, the State Board's informal censorship, which imposes harm the State Board's briefing ignores, injures Hogarth regardless of whether the State Board can force her to comply with its letter or compel a district attorney to prosecute.[13]

The link between the State Board's actions and Hogarth's injuries is even stronger than what the Sixth Circuit held sufficient in *Kareem*. There, the court held a voter's injury by being unable to take ballot selfies was traceable to the Ohio Secretary of State and an Ohio county board of elections based on their public statements declaring ballot selfies illegal and one instance in which the board ordered an individual (who was not the plaintiff) to take down a ballot selfie. *Kareem*, 95 F.4th at 1025–27. The State Board here not only issues public statements and instructions to other voters but sent a demand letter to Hogarth herself. Her injuries are thus traceable to the State Board.

## B. The County Board investigates ballot selfies, warns voters against taking them, and enforces the Ban at polling places.

Hogarth's First Amendment injuries are traceable to the County Board Defendants because those officials are, in the County Board's own words, "boots on the

---

[13] The State Board's citation to *Murthy v. Missouri*, 603 U.S. 43, 68 n.8 (2024), is inapposite. (State Defs.' Mot. Dismiss Mem., ECF No. 56 at 12.) In *Murthy,* any future injury the plaintiffs could suffer depended on the wholly independent actions of non-governmental social media platforms whose actions were not contingent on those of the federal officials sued. *Id.* at 57–58. In contrast, here, Hogarth sues state actors who cooperate to investigate and prosecute violations of state law—and the State Board's own actions independently injure Hogarth by objectively chilling her speech. *See supra* Section I.C.

ground" enforcing the Ballot Selfie Ban. (County Board Br. Opp'n Prelim. Inj. Mot., ECF No. 40 at 3–5; *accord* County Board Mot. Dismiss Mem., ECF No. 54 at 8.) So, like the State Board, they are statutorily responsible for "carrying out" the ban, *S.C. Wildlife Fed'n*, 549 F.3d at 333, both inside the polling place and outside of it. N.C. Gen. Stat. § 163-33. (Verified Compl. ¶¶ 16, 98-99.)

The County Board is responsible for issuing "instructions to guide elections officers and voters; appoint[ing] all elections officers including chief judge, judges, and assistants." (*Id.* ¶ 16.) The County Board's elections officers are thus the officials on the ground at polling places, intervening when North Carolinians like Hogarth try to take ballot selfies. (Verified Suppl. Compl., ECF No. 65 ¶ 27.)

The facts alleged in Hogarth's Verified Supplemental Complaint regarding the events of October 26, 2024 (ECF No. 65), belie the County Board's objection that its role is purely "ministerial." (County Board Br. Opp'n Prelim. Inj. Mot., ECF No. 40 at 4.) When Hogarth visited the polling place to cast her ballot and take a ballot selfie, officials employed or directed by the County Board, including a poll worker and a precinct chief judge, commanded her to stop taking ballot selfies, detained her, ordered her to delete her photo, and then consulted with the County Board (and perhaps others) to determine if she was free to go. (Verified Suppl. Compl., ECF No. 65 ¶ 14–19.) Without this Court's Order, "Wake County elections officials would not have allowed Hogarth to take a ballot selfie or leave the polling place with her ballot selfies when she voted on October 26, 2024." (*Id.* ¶ 27.) And in that case, had Hogarth refused to stop taking ballot selfies or refused to delete her photos, Wake County elections officials would have had a statutory

duty to direct police to arrest her. *See* N.C. Gen. Stat. § 163-273(b) ("Election officers shall cause any person committing any of the offenses set forth . . . to be arrested and shall cause charges to be preferred against the person so offending in a court of competent jurisdiction."); *see also* N.C. Gen. Stat. § 163-48 (providing chief judges of precincts "may order the arrest of any person violating any provision of the election laws").

Chief judges appointed by the County Board are also responsible for enforcing the Voting Enclosure Provision at polling places and determining whether voters may take a photograph of a voter, as the County Board concedes. (Verified Compl. ¶¶ 172–75; *accord* County Board Mot. Dismiss Mem., ECF No. 54 at 7–8.) Were there any doubt, its argument that "the chief judge should [] have some leeway in keeping order," (County Board Mot. Dismiss Mem., ECF No. 54 at 8), effectively concedes that enforcement of the Voting Enclosure Provision is traceable to the County Board.

The County Board also enforces the Ballot Selfie Ban outside the polling place. Like the State Board, it warns on its website that it is illegal to photograph voted ballots anywhere, and voters in the voting enclosure without permission. (Verified Compl., ECF No. 1 ¶¶ 98–99.) The County Board also "investigates violations of election laws" that encompass the Ballot Selfie Ban, including by monitoring social media for ballot selfies posted by Wake County residents. (*Id.* ¶¶ 14, 16, 101–103.) And it "reports violations to the State Board," including reporting a voter's ballot selfie in 2022. (*Id.*)

So even though the County Board is not the "last link in the causal chain" that might result in Hogarth's prosecution, *Lansdowne,* 713 F.3d at 197, there is still a

"genuine nexus" between its actions the credible threat of enforcement. *Friends of the Earth*, 204 F.3d at 161; *accord Kareem*, 95 F.4th at 1025–27 (voter's injury was traceable to a county board of election that had made public statements against ballot selfies and sent a letter ordering an individual to take one down). Likewise, the objective chilling effect preventing voters like Hogarth from exercising their constitutional rights and taking a ballot selfie is "fairly traceable" to the actions of the County Board. *See Cooksey*, 721 F.3d at 238 (holding the traceability element "easily satisfy[ied]" in light of the chilling effect of State officials' enforcement actions). And like the State Board, the County Board ignores this chilling effect in its motion.

The role County Board officials play in enforcing the Ballot Selfie Ban is akin to that played by circuit court clerks in *Bostic v. Schaefer*, 760 F.3d 352, 372 (4th Cir. 2014), where two same-sex couples sued a clerk to challenge Virginia marriage laws preventing recognition of their marriage. The Fourth Circuit held the couples' injuries were traceable to the clerk because the clerk had a "role in granting and denying applications for marriage licenses" and was thus responsible for the "enforcement of the allegedly unconstitutional Virginia Marriage Laws." *Id.* at 371 n.3, 372. Here, the County Board argues its officials merely enforce state law and instructions they receive from the State Board. (County Board Mot. Dismiss Mem., ECF No. 54 at 8.) As in *Bostic*, that's enough. Just as the court clerks in *Bostic* had a "role" the enforcement of the state's marriage laws, County Board officials play a "role" in the "enforcement" of the Ballot Selfie Ban here.

The primary case the County Board relies on, involving a challenge to a North Carolina county's COVID-19 travel restrictions, *Blackburn v. Dare County*, 486 F. Supp. 3d 988 (E.D.N.C. 2020), *aff'd*, 58 F. 4th 807 (4th Cir. 2023), is inapposite. In that case, the court held individual towns in the county were not proper defendants because plaintiffs did not allege the towns played any significant enforcement role in the regulation the county promulgated and enforced. *Id.* At 994–95. But here, the County Board has a direct, "on the ground" enforcement role (County Board Mot. Dismiss Mem., ECF No. 54 at 8), and can even order voters not to take ballot selfies and have them arrested if they do not comply. The County Board Defendants are not just proper defendants, but necessary parties for complete relief.

### C. Hogarth Has Standing to Sue District Attorney Freeman and the Attorney General because they have the authority to prosecute her for taking or sharing ballot selfies.

Hogarth's injuries are traceable to District Attorney Freeman and the Attorney General because they have the power to prosecute her for taking or sharing ballot selfies. (Verified Compl., ECF No. 1 ¶¶ 20–21.) Prosecutors are the "natural targets for [Section] 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law." *Consumers Union of U. S., Inc.*, 446 U.S. at 736. So when a district attorney has "authority to prosecute crimes . . . the credible threat of prosecution is traceable to her." *Frank v. Lee*, 84 F. 4th 1119, 1135 (10th Cir. 2023).

The same is true for injuries resulting from chill to First Amendment liberties. Because prosecutors "are charged with prosecuting individuals who violate criminal laws," any resulting "chill from the threat of enforc[ement]" is fairly traceable to their offices. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 784–85 (5th Cir. 2024).

36

Injuries resulting from pre-enforcement chill are likewise traceable to prosecutors because "self-censorship" is "a harm that can be realized even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).

### i. Hogarth's injuries are traceable to District Attorney Freeman.

Here, District Attorney Freeman is statutorily charged with prosecuting ballot selfies. Freeman admits her office is "specifically empowered to prosecute violations" of all "the challenged statutes." (Freeman Br. Opp'n Prelim. Inj. Mot., ECF No. 42 at 7.) And North Carolina law grants broad authority to its district attorneys to enforce election laws. N.C. Gen Stat. § 163-278 (Freeman Decl., ECF No. 42-1 ¶ 3.) It is thus Freeman's statutory duty to prosecute Ballot Selfie Ban violations. *Id*. § 163-278(c) ("district attorneys *shall* initiate prosecution and prosecute any violations") (emphasis added). She can also rely on her plenary power to enforce criminal laws to investigate and prosecute violations. *Id*. §§ 114-11.6, 7A-61.

Courts in the Fourth Circuit routinely hold injuries arising from criminal laws fairly traceable to prosecutors based solely on their authority to enforce the challenged laws. *See e.g., Bryant v. Woodall*, 1 F.4th 280, 286–88 (4th Cir. 2021) (finding that a North Carolina district attorney could be sued despite "North Carolina's historic non-enforcement of the challenged statutes"). For instance, in *Randolph Institute*, two organizations sued all 42 district attorneys in the State of North Carolina challenging a law making it a felony for potentially eligible voters with a criminal history to vote. No. 1:20CV876, 2022 WL 446833, *1, *8 (Feb. 14, 2022) . The court held plaintiffs' injuries were traceable to all 42 district attorneys, because they had statutory authority to prosecute violations of the law, explaining it was irrelevant that "many" district

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

attorneys had "declined to bring charges under the challenged statute" because that did not "negate their ability to do so." *Id.* at *8.

Hogarth likewise sufficiently pleads causation insofar as Freeman has statutory authority to prosecute violations of the Ballot Selfie Ban. In the Sixth Circuit's ballot selfie challenge, the court reversed dismissal for lack of standing, holding the plaintiff could establish causation "because the alleged violation of her First Amendment rights is fairly traceable to" the defendant prosecutors who "play a role in enforcing the . . . prohibitions." *Kareem*, 95 F.4th at 1027.

District Attorney Freeman insists, however—without citation to authority—that a past criminal prosecution or her own subjective intent to charge Hogarth is required for traceability. (Freeman Mot. Dismiss Mem., ECF No. 59 at 12.) Not so. Hogarth need only show her injuries, credible threat of enforcement and objective chill, are fairly traceable to Freeman's authority. As explained above, "past enforcement is not necessary to establish a credible threat of enforcement." *Kareem*, 95 F.4th at 1025; *see also McCraw*, 90 F.4th at 785 (holding plaintiff's injuries were "fairly traceable" to prosecutor generally, bolstered by prosecutor having previously brought similar charge against a dissimilar party). Freeman's lack of knowledge of Hogarth is immaterial because she is nonetheless charged with investigating and enforcing the Ballot Selfie Ban against all North Carolinians (including Hogarth). N.C. Gen. Stat. § 114-11.6.

Nor is Freeman's "disavowal" of prosecution material as a matter of law, because it fails to disavow the Ballot Selfie Ban in its entirety and, by its own terms, lasts only for the pendency of this litigation. *Correll*, 212 F. Supp. 3d at 603 (prosecutors were

subject to suit despite "post-litigation disavowal of prosecutorial intent and "historical non-enforcement against a similarly situated group") *see also supra* Section I.B (discussing *N.C. Right to Life*, 168 F.3d at 711 and *Porter*, 852 F.3d at 364). If Freeman's approach were credited, a prosecutor could promise not to prosecute the plaintiff during the pendency of a constitutional challenge, secure dismissal based on that promise, and then, with the case over, resume prosecuting the plaintiff (whereupon, presumably, she would sue and start the cycle again). That is no way to protect the Constitution.

### ii. Hogarth's injuries are traceable to the Attorney General.

The Attorney General is likewise statutorily empowered to prosecute ballot selfies under the Ban. The Attorney General must "appear for the State in any other court or tribunal in any cause or matter, civil or criminal, in which the State may be a party or interested." N.C. Gen. Stat. § 114-2(1). And North Carolina statutes charge the Attorney General with defending "all actions in the appellate division in which the State shall be interested." *Id.* That means the Attorney General may "appear" in any case against Hogarth, civil or criminal, to uphold the Ballot Selfie Ban. The Attorney General also has the power to prosecute ballot selfies and assist district attorneys in the prosecution of ballot selfies, upon district attorney request. N.C. Gen. Stat. § 114-11.6.

That is more than enough for standing. This Court has found jurisdiction over injunctive relief claims against the Attorney General in similar circumstances. In *Meredith v. Stein*, 355 F. Supp. 3d 355, 361 (E.D.N.C. 2018), for instance, it held the Attorney General was "precisely the part[y] to whom plaintiff's injury is 'fairly traceable,'" based on the Attorney General's authority to assist in prosecutions under N.C. Gen. Stat. § 114-11.6. Likewise, in *Grabarczyk v. Stein*, No. 19-CV-48, 2019 WL

4235356, at *3 (E.D.N.C. Sept. 5, 2019), the Court held the Attorney General could be sued based on "authority to prosecute or assist in the prosecution of criminal cases."[14]

The Attorney General provides no authority for his insistence that his connection is "too attenuated" to Hogarth's constitutional injuries. Hogarth has demonstrated her injuries are linked to the Attorney General's statutory authority, and that link is only strengthened by the lack of any affirmative disavowal of his authority or intent to prosecute her for violating the Ballot Selfie Ban.[15] Hogarth's injuries are "fairly traceable" to District Attorney Freeman and the Attorney General, and Hogarth has standing to sue them in her challenge to the Ballot Selfie Ban.

## III. Hogarth's Injury is Redressable Because Enjoining the Defendants Will Allow Her to Freely Take and Share Ballot Selfies.

Hogarth's injury would be redressed by the relief that she seeks: An injunction against the Defendants' enforcement of the Ballot Selfie Ban, including for her March 2024 ballot selfie. "The redressability requirement ensures that a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Friends of the Earth*, 204 F.3d at 162. "If a defendant's action causes an injury, enjoining the action . . . will

---

[14] For the same reason, the Attorney General falls under the immunity exception of *Ex parte Young* since he has more than "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *see Nat'l Ass'n for Rational Sexual Offense L. v. Stein*, No. 17-CV-53, 2019 WL 3429120, at *5 (M.D.N.C. July 30, 2019) (holding Attorney General's "statutory authority to prosecute or assist in the prosecution of criminal actions" creates "enough of a connection to the enforcement of North Carolina criminal laws" to satisfy *Ex parte Young*).

[15] As already discussed, any reliance on *Murthy v. Missouri* is misplaced given *Murthy* involved the wholly independent conduct of non-state actors that were not before the court. *See supra* n.13. Likewise in *Simon v. Eastern Kentucky Welfare Rights Organization.*, 426 U.S. 26 (1976), the Court held it was "speculative at best" that an injunction against a law would lead private hospitals to alter their policies. *Id.* at 43. By contrast, here, there is nothing speculative about the impact of an injunction on Hogarth's ability to take ballot selfies.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS

typically redress that injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). In *Cooksey*, the Fourth Circuit held the plaintiff blogger "easily" established redressability where a ruling enjoining enforcement of a statute that chilled and threatened his speech would allow him to provide advice online without fear of penalty. 721 F.3d at 238.

Such is also the case here. An injunction against the Ballot Selfie Ban would "redress [Hogarth's] harm by preventing enforcement" of the Ballot Selfie Ban. *Cruz*, 596 U.S. at 301. This would obviate the Ban's objective chill on her ability to take ballot selfies and end the credible threat of its prosecution and enforcement. The State Board could no longer threaten to punish her for taking or sharing ballot selfies, the County Board could not prevent her from taking ballot selfies at polling places, and the District Attorney and Attorney General could not prosecute her for violating the Ban. Hogarth "personally would benefit in a tangible way from the court's intervention." *Friends of the Earth*, 204 F.3d at 162.

Defendants argue an injunction "would provide no new relief" because Hogarth can communicate her political message in other ways. (State Defs.' Mot. Dismiss Mem., ECF No. 56 at 13; Freeman Mot. Dismiss Mem., ECF No. 59 at 12–13.) Of course an injunction would provide relief: Hogarth would be able to take and share ballot selfies. That is the definition of redressability. Moreover, as discussed above, on a Rule 12(b)(1) motion, the Court must "accept as valid the merits" of Hogarth's First Amendment claims, *Cruz*, 596 U.S. at 298, and therefore must reject Defendants' argument that the "challenged statutes do not impede her ability to engage in the expressive activity she

wants." (Freeman Mot. Dismiss Mem., ECF No. 59 at 12.) Requiring Hogarth to engage in a "legally available alternative" to ballot selfies, after all, would "require [her] to forgo the exercise of a First Amendment right [the Court] must assume [she] has." *Cruz*, 596 U.S. at 298; *see also supra* Section I.A. Because an injunction will allow Hogarth to freely take and share ballot selfies, her injury is redressable.

## CONCLUSION

North Carolina's Ballot Selfie Ban prohibits and criminalizes Hogarth's political expression of recording and sharing herself participating in our country's core democratic function: voting. The Ban creates a credible threat of enforcement and objectively chills Hogarth's speech, injuries traceable to each Defendant and redressable only by an injunction. For these reasons, this Court should deny Defendants' Motions.

Dated: November 22, 2024.

Respectfully submitted,

/s/ James M. Dedman IV
JAMES M. DEDMAN IV
  (NC Bar # 37415)
GALLIVAN WHITE & BOYD P.A.
6805 Carnegie Blvd, Ste. 200
Charlotte, NC, 28211
(704)-552-1712
jdedman@gwblawfirm.com

ERIC SPENGLER
  (NC Bar # 47165)
SPENGLER + AGANS PLLC
352 N. Caswell Rd.
Charlotte, NC 28204
(704) 999-8733
eric@sab.law

/s/ Jeffrey D. Zeman
JEFFREY D. ZEMAN*
  (Pa. Bar No. 328570)
DANIEL M. ORTNER*
  (Ca. Bar No. 329866)
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
jeff.zeman@thefire.org
daniel.ortner@thefire.org

*Special Appearance pursuant to Local
Rule 83.1(e)

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Jeffrey D. Zeman
JEFFREY D. ZEMAN
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 12(B)(1) MOTIONS TO DISMISS