IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:24-cv-481-FL

| | |
|---|---|
| SUSAN JANE HOGARTH, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' RESPONSE** |
| | ) **IN OPPOSITION TO** |
| SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections, et al., | ) **PLAINTIFF'S** |
| | ) **MOTION FOR JUDGMENT ON** |
| | ) **THE PLEADINGS** |
| | ) |
| Defendants. | ) |

Defendants Sam Hayes, State Board Executive Director, the members of the State Board, Danielle Brinton, State Board Investigator ("State Board Defendants"), the Director and members of the Wake County Board of Elections ("County Board Defendants"), and Wake County District Attorney Lorrin Freeman ("DA Freeman"), all named in their official capacities only (collectively "Defendants"), provide this response in opposition to Plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) [D.E. 90]

## NATURE OF THE CASE AND BACKGROUND

Defendants incorporate by reference the Nature of the Case, Procedural History, and Statement of Facts from their Memorandum in Support of their Motion for Judgment on the Pleadings. [D.E. 89 at 1-6]

## ARGUMENT

**I. STRICT SCRUTINY DOES NOT APPLY TO THE BALLOT PHOTOGRAPHY PROVISIONS**

Plaintiff's argument that the Ballot Photography provisions (N.C.G.S. §§ 163-166(c), -273(a), -165(e), and -274(b)(1)) are unconstitutional hinge on the application of strict scrutiny. [Pl.

Mem. Supp. Mot. J. on the Pleadings at 11-22, D.E. 91] However, Plaintiff brings an as-applied challenge to the Ballot Photography Provisions, challenging the application of these viewpoint neutral laws to photographs taken inside the voting place—a nonpublic forum. As a result, regardless of whether the Ballot Photography Provisions are content neutral, the nonpublic forum standard in *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018) applies instead of strict scrutiny.

First, Plaintiff's claims are limited to "ballot selfies" inside the voting place because Plaintiff challenges the Ballot Photography Provisions as-applied to her "ballot selfies." *See* [D.E. 2 ¶¶ 6, 26, 163, 166, 167; Prayer for Relief ¶ C] An as-applied challenge is "based on a developed factual record and the application of a statute to a specific person." *Richmond Med Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc); *see also Educ. Media Co. at Va. Tech. v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013) (same). As the Seventh Circuit has explained, when "confronted with an as-applied challenge, [a court] examine[s] the facts of the cases before [it] exclusively, and not any set of hypothetical facts under which the statute might be unconstitutional." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 501 (7th Cir. 2011); *see also Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011) ("An as-applied challenge is one that charges an act is unconstitutional as applied to a plaintiff's specific activities even though it may be capable of valid application to others."). Accordingly, the scope of Plaintiff's allegations define the nature of her challenge and limited nature of the issues before the court.

According to the Verified Complaint, on March 5, 2024, Plaintiff voted in person in the primary election. [D.E. 2 ¶ 1] Then, "[u]sing her cell phone camera, [Plaintiff] then took a photo of herself in the voting booth, holding up her ballot to show who she voted for." *Id.* ¶ 57. This photograph also included "a sign in the voting booth prohibiting photography." *Id.* ¶ 58. Likewise,

2

Plaintiff's Supplemental Verified Complaint explains that she voted early in-person at an early voting site in Wake County on October 26, 2024. [D.E. 65 ¶ 5] Plaintiff entered the voting enclosure, *id.* ¶ 7, and "[a]fter completing her ballot, while still in the voting booth, [Plaintiff] used her cell phone camera to take ballot selfies," *id.* ¶ 11. The allegations of Plaintiff's Complaint and Supplemental Complaint highlight that Plaintiff's conduct took place in a polling place, a "non public forum" that "at least on Election Day, [is] government-controlled property set aside for the sole purpose of voting." *Mansky*, 585 U.S. at 12.

Second, Plaintiff argues that the Ballot Photography Provisions are not content neutral, and therefore they are "presumptively unconstitutional" and subject to strict scrutiny. [D.E. 91 at 11-13] However, strict scrutiny does not apply because, as *Mansky* clarified, "the government has much more flexibility to craft rules limiting speech" in a nonpublic forum, and the government "may reserve such a forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Mansky*, 585 U.S. at 11-12 (internal citation and quotation omitted). For the reasons outlined in Defendants' Memorandum in Support of their Motion for Judgment on the Pleadings, the Ballot Photography Provisions are viewpoint neutral and reasonable. [D.E. 89 at 8-12] And as the Supreme Court further explained, "the government may impose some content-based restrictions on speech in nonpublic forums, including restrictions that exclude political advocates and forms of political advocacy." *Id.* at 12. Even then those content-based restrictions in nonpublic forums are not subject to strict scrutiny—the question is whether "the State [has drawn] a reasonable line. Although there is no requirement of narrow tailoring in a nonpublic forum, the State must be able to articulate some sensible basis for distinguishing what may come in from what must stay out" of the voting place. *Id.* at 16.

The cases Plaintiff cites in support of applying strict scrutiny do not counsel a different analysis. Nearly all of Plaintiff's cases predate the Supreme Court's 2018 analysis in *Mansky*. *See Rideout v. Gardner*, 123 F. Supp. 3d 218 (D.N.H. 2015), *aff'd* 838 F.3d 65 (1st Cir. 2016); *Ind. C.L. Union Found., Inc. v. Ind. Sec'y of State*, 229 F. Supp. 3d 817 (S.D. Ind. 2017); *Hill v. Williams*, No. 16-CV-02627-CMA, 2016 WL 8667798 (D. Colo. Nov. 4, 2016); *Rogers v. Madison Cty. Clerk*, No. 2016-SC-3147, 2017 WL 3475008 (Ill. Cir. Ct. July 20, 2017). Although the state trial court in *Wisconsin v. Buzzell* applied strict scrutiny, it did not conduct a forum analysis or address *Mansky* at all, instead relying on the pre-*Mansky* district court case *Ind. C.L. Union Found., Inc. v. Ind. Sec'y of State*, 229 F. Supp. 3d 817. *See* Ex. 1, Nov. 27, 2023 Oral Ruling Tr. at 8:6-16. As a result, these cases do not address whether any of the state statutes at issue satisfied the nonpublic forum standard in *Mansky*. Indeed, in the most recent federal case Plaintiff cites since *Mansky*, the district court analyzed the statutes at issue and applied *Mansky* to the statute that applied to conduct occurring in a nonpublic forum.

In *Coalition for Good Governance v. Kemp*, the plaintiffs sought preliminary injunctive relief on, *inter alia*, two provisions of Georgia law that "proscribe the use of photographic or other electronic monitoring or recording devices (i) to '[p]hotograph or record the face of an electronic ballot marker while a ballot is being voted or while an elector's votes are displayed on such electronic ballot marker'; or (ii) to '[p]hotograph or record a voted ballot.'" 558 F. Supp. 3d 1370, 1378 (N.D. Ga. 2021). In assessing the likelihood of success on the plaintiffs' First Amendment claims, the court explained that "[r]estrictions on speech in nonpublic forums are subjected to a more limited review and are constitutional" as long as they satisfy the *Mansky* standard. *Id.* at 1384.

4

In evaluating the Georgia law that "proscribe[d] photographing or recording the fact of an electronic ballot marker while a ballot is being voted or while an elector's votes are displayed on the screen," the court explained that it "necessarily applie[d] only to polling stations." *Id.* at 1386. Because polling stations are a nonpublic forum, the court applied *Mansky*. *Id.* Under *Mansky*, the plaintiffs failed to show a likelihood of success on the merits because "the state of Georgia's proffered interests in protecting the secrecy of the ballot at the polling place and preventing fraud, including vote payment schemes, provide a reasonable basis for the limited restriction on photography and other forms of recording in that specific space." *Id.*

Although the court found that the second provision, which "prohibit[ed] any photography or recording of any voted ballot in public and nonpublic forums alike," did not satisfy strict scrutiny, this analysis does not apply to the Ballot Photography Provisions here. *Id.* Notably, in later deciding a motion to dismiss, the court reasoned that dismissal was inappropriate because it could not determine the type of forum where the statute would apply. The court explained that "[d]etermining the type of forum where the rules would apply and selecting the appropriate level of review requires the type of substantive merits inquiry that is not appropriate on a motion to dismiss." No. 1:21-cv-02010-JPB, 2021 WL 12299010 at *16 (N.D. Ga. Dec. 9, 2021).

This Court does not face the same dilemma that would lead it to employ different standards. Rather, Plaintiff's Complaint and Supplemental Complaint make plain the type of forum where the Ballot Photography Provisions apply: Plaintiff photographed her voted official ballot "in the voting booth" [D.E. 2 ¶¶ 57, 58; D.E. 65 ¶ 11], a nonpublic forum, and the forum-based analysis in *Mansky* applies.

That the Ballot Photography Provisions could apply to a different plaintiff outside of a nonpublic forum does not impact this Court's analysis in this case either. This as-applied challenge

5

is "based on a developed factual record and the application of a statute to a specific person." *Richmond Med Ctr.*, 570 F.3d at 172. Plaintiff here challenges the application of the Ballot Photography Provisions to her in-person voting in the voting enclosure. Furthermore, that Plaintiff posted the photograph to social media after leaving the voting booth does not alter the forum analysis. As the district court explained in *Silberberg v. Board of Elections of New York*, 272 F. Supp. 3d 454, 477 (S.D.N.Y. 2017), "the posting of a photograph of a marked ballot to social media requires two steps: the taking of the photograph and the electronic transmission of that photograph. Because the first step must take place in a non-public forum . . . it is appropriate to assess the impact of the statute as a restriction of speech taking place in a non-public forum."

Plaintiff photographed her voted ballot in a nonpublic forum, and *Mansky* provides the appropriate forum-based standard.

## II. THE BALLOT PHOTOGRAPHY AND VOTING ENCLOSURE PROVISIONS SATISFY CONSTITUTIONAL REVIEW.

Plaintiff argues that the Ballot Photography and Voting Enclosure Provisions do not satisfy constitutional review. [D.E. 91 at 11-25] However, in challenging the Ballot Photography Provisions, Plaintiff overlooks the State's longstanding interests in preventing voter intimidation and election fraud in the form of vote-buying. These interests satisfy the forum-based standard in *Mansky*, as well as any level of constitutional review. Likewise, Plaintiff's argument that the Voting Enclosure Provision lacks a workable standard ignores the statutory context. When viewed as part of the statutory scheme, the Voting Enclosure Provision has objective, workable standards, and is a reasonable means to the State's reasonable ends.

### A. North Carolina Has Compelling Interests, and the Ballot Photography Provisions Satisfy Strict Scrutiny.

Strict scrutiny is not the appropriate standard to evaluate the Ballot Photography Provisions, as discussed above. But even these laws were subject to strict scrutiny, the Ballot Photography Provisions satisfy that standard for the reasons stated in Defendants' Memorandum in Support of Motion for Judgment on the Pleadings. [D.E. 89 at 17-19] Furthermore, Plaintiff's argument discounts states' "compelling interests in preventing voter intimidation and election fraud." *Burson v. Freeman*, 504 U.S. 191, 206 (1992); [D.E. 89 at 14-17] In doing so, Plaintiff argues that North Carolina cannot provide evidence to prove its compelling interests are other than "merely conjectural." [D.E. 91 at 14] But Plaintiff overstates the need for such evidence.

The plurality in *Burson* explained that "because a government has such a compelling interest in securing the right to vote freely and effectively, this Court never has held a State 'to the burden of demonstrating empirically the objective effects on political stability that [are] produced' by the voting regulation in question." 504 U.S. at 208-09 (quoting *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986)). Likewise, the plurality reasoned that "'[l]egislatures . . . should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided the response is reasonable and does not *significantly impinge* on constitutionally protected rights.'" *Id.* (quoting *Munro*, 479 U.S. at 195-96). This approach makes sense because, "[e]ven when applying strict scrutiny . . . the government may, in appropriate circumstances, carry its burden by relying 'solely on history, consensus, and 'simple common sense.'" *United States v. Carter*, 669 F.3d 411, 418 (4th Cir. 2012) (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995)). Here, as Defendants explained, the Ballot Photography Provisions are rooted in history, consensus, and common sense, and are narrowly tailored to those compelling interests. [D.E. 89 at 17-19]

**B.    The Ballot Photography Provisions and the Voting Enclosure Provision are Reasonable.**

As explained in Section I, *supra*, the *Mansky* standard applies to the Ballot Photography Provisions. And Plaintiff concedes that *Mansky* applies to the Voting Enclosure Provision. Under *Mansky*, both the Ballot Photography Provisions and the Voting Enclosure Provision are constitutional so long as they are viewpoint neutral and reasonable. Plaintiff has not argued that Ballot Photography or Voting Enclosure Provisions are not viewpoint neutral. Accordingly, the only question for the Court is whether they are reasonable.

Under *Mansky*, "the government's means and ends must both be 'reasonable.'" *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F. 4th 179, 198 (4th Cir. 2022). Reasonable ends are something other than "compelling interests." *Id.* (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808-09 (1985)). In assessing what constitutes reasonable ends, the Fourth Circuit looked to *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974). *See White Coat*, 35 F. 4th at 198.

In *Lehman*, the Supreme Court determined whether a prohibition on "political advertising" on city-owned public transit was constitutional. 418 U.S. at 299. The plurality opinion explained that commercial advertising space on public transit was not a public forum because the advertising space was part of the "commercial venture." *Id.* at 303. However, "[b]ecause state action exist[ed] . . . the policies and practices governing access to the transit system's advertising space must not [have] be[en] arbitrary, capricious, or invidious." *Id.* The plurality concluded there was no First or Fourteenth Amendment violation because the city advanced "reasonable legislative objectives" designed to "minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience." *Id.* at 304.

8

The State likewise has reasonable legislative objectives here. As explained in Section II.A, *supra*, the State has compelling interests in preventing voter intimidation and election fraud through a vote-buying scheme. For the same reasons, those interests are "reasonable legislative objectives." *See* [D.E. 89 at 14-17] The state also has reasonable legislative objectives in eliminating delays and distraction at polling places, and maintaining and protecting the privacy of other voters. §

The statutes at issue here pursue those objectives. The Ballot Photography Provisions work to protect voter privacy and prevent voter intimidation and vote-buying by maintaining the secrecy of the voted ballot in limiting its disclosure, including self-disclosure (N.C.G.S. § 163-273(a)(1), disclosure by a third party (N.C.G.S. § 163-165.1(e); N.C.G.S. § 163-274(b)(1)), or disclosure by photograph (N.C.G.S. § 163-166.3(c)). The Voting Enclosure Provision likewise protects these interests by prohibiting an unconsented image of a voter being taken within the voting enclosure. Accordingly, the State has pursued "reasonable ends."

Under *Mansky*, "nonpublic-forum speech restrictions must be capable of reasoned application.'" *White Coat*, 35 F.4th at 199 (quoting *Mansky*, 585 U.S. at 23). "This does not require eliminating all discretion but merely that any discretion must be guided by 'objective, workable standards.'" *Id.* at 199 (quoting *Mansky*, 585 U.S. at 4).

The Ballot Photography Provisions have "objective, workable standards." For example, N.C.G.S. § 163-165.1(e) limits access to voted ballots and records of individual voted ballots to "elections official performing their duties" absent certain court or administrative orders. The statute further prohibits disclosure to "members of the public in such a way as to disclose how a particular voter voted, unless a court orders otherwise." The remaining Ballot Photography Provisions are "capable of reasoned application": whether a voter "allow[s] his ballot to be seen

9

by any person," N.C.G.S. § 163-273(a)(1); whether someone "who has access to an official voted ballot or record to knowingly disclose[s] . . . how an individual has voted that ballot,' *id.* § 163-274(b)(1); or whether a photograph contains an image of a voted ballot, *id.* § 163-166.3(c), are "objective, workable standards" that clearly define proscribed conduct.

In arguing that the Voting Enclosure Provision is unreasonable, Plaintiff contends that the statute is not capable of reasoned application. Not so. Both the Ballot Photography Provisions and the Voting Enclosure Provision, when viewed together, provide "objective, workable standards" that are "capable of reasoned application." For example, N.C.G.S. § 163-166.3(c), restricts the photograph of the image of a voted ballot. In Plaintiff's challenge to the Voting Enclosure Provision as applied to ballot selfies, N.C.G.S. § 163-166.3(c) provides a clear standard: the voter must give their permission, and the photograph must not contain the image of a voted official ballot. This is not unfettered discretion. These are clear, objective standards that allow for reasoned application.

Notably, although the Fourth Circuit has equated *Mansky*'s reasonableness standard as "akin to some kind of so-called intermediate scrutiny," *White Coat*, 35 F. 4th at 198, the reasonableness standard is different than the intermediate scrutiny other courts have applied to restrictions on ballot photography. For example, the district court's application of intermediate scrutiny in *Indiana Civil Liberties Union Foundation* required Indiana's statute to be "narrowly tailored to serve significant government interests," 229 F. Supp. 3d at 827 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), and the court found that the statute did not serve compelling interests and lacked narrow tailoring, *id.* at 827-28. The First Circuit in *Rideout* likewise demanded that the statute be narrowly tailored. 838 F.3d at 71-72 (quoting *Ward*, 491 U.S. at 798). So too the district court in *Hill*. 2016 WL 8667798, at *9. But as the Fourth Circuit

10

Case 5:24-cv-00481-FL    Document 92    Filed 08/01/25    Page 10 of 12

explained, under *Mansky*, "there is no 'requirement that the restriction be narrowly tailored or that the Government's interest be compelling.'" *White Coat*, 35 F. 4th at 198 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808-09 (1985)). In other words, while the reasonableness standard may be similar to some kind of intermediate scrutiny, it does not employ the same requirements.

Plaintiff's reliance on a pre-*Manksy* case, *News & Observer Publishing Co. v. Raleigh Durham Airport Authority*, 597 F.3d 570, 577 (4th Cir. 2010), does not warrant a different conclusion. For starters, *White Coat* outlines the "capable of reasoned application" standard that *Mansky* prescribes here. But even assuming the balancing test outlined in *News & Observer* applies, the Ballot Photography and Voting Enclosure Provisions satisfy it. The "degree and character of the impairment of the protected expression" here is minimal when "discounted by any mitigating alternatives that remain." *News & Observer*, 597 F.3d at 577. While Plaintiff would be unable to take a photo of her voted ballot in the ballot enclosure, many alternatives remain for her chosen speech. She remains free to post to social media, attend rallies, donate to campaigns, and volunteer. She can even use a sample ballot to convey the same messages she seeks to convey with a voted ballot. [D.E. 89 at 10-11]

Furthermore, the asserted justifications here are valid. *News & Observer*, 597 F.3d at 577. States have well-established interests in "protecting voters from confusion and undue influence," *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality op.), and "in preserving the integrity of its election process," *id.* (quoting *Eu v. San Francisco Cty. Democratic Central Comm.*, 489 U.S. 214, 228-29 (1989)). These asserted interests outweigh the minimal impact on Plaintiff's expression. Accordingly, even if the test in *News & Observer* applies, the Ballot Photography and Voting Enclosure Provisions satisfy that test.

11

Case 5:24-cv-00481-FL    Document 92    Filed 08/01/25    Page 11 of 12

# CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings should be denied.

Respectfully submitted this the 1st day of August, 2025.

/s/ Rogert A. Askew
Roger A. Askew, NCSB # 18081
Senior Deputy County Attorney
E-mail: Roger.Askew@wake.gov

/s/ Allison P. Cooper
Allison P. Cooper, NCSB # 34160
Senior Deputy County Attorney
E-mail: Allison.Cooper@wake.gov

Wake County Attorney's Office
Post Office Box 550
Raleigh, North Carolina 27602
Telephone: (919) 856-5500

*Attorneys for County Board Defendants*

**JEFF JACKSON**
**Attorney General**

/s/ Ryan C. Grover
Ryan C. Grover
Special Deputy Attorney General
N.C. State Bar No. 53703
E-mail: rgrover@ncdoj.gov

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
E-mail: tsteed@ncdoj.gov

/s/ Mary L. Lucasse
Mary L. Lucasse
Special Deputy Attorney General
N.C. State Bar No. 39153
E-mail: mlucasse@ncdoj.gov

*Attorneys for State Board Defendants*


/s/Elizabeth O'Brien
Elizabeth O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
E-mail: eobrien@ncdoj.gov

*Counsel for Defendant Freeman*

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6400