**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| SUSAN JANE HOGARTH,<br><br>*Plaintiff*,<br>v.<br><br>SAM HAYES, et al.,<br><br>*Defendants*. | Case No.: 5:24-cv-00481-LF<br><br>Hon. Louise W. Flanagan<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Ballot Photography Provisions Must Survive Strict Scrutiny and Fail Any Level of First Amendment Review. .......... 2

- A. Defendants Cannot Avoid Strict Scrutiny by Misconstruing Hogarth's Facial As-Applied Challenge. .......... 2
- B. The Ballot Photography Provisions Violate the First Amendment No Matter the Test Applied. .......... 5

II. The Voting Enclosure Provision Violates the First Amendment Because It Is Not "Reasonable." .......... 8

CONCLUSION .......... 10

**TABLE OF AUTHORITIES**

**Cases**

*Burson v. Freeman*,
504 U.S. 191 (1992) .......... 6

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) .......... 10

*Coal. for Good Governance v. Kemp*,
558 F. Supp. 3d 1370 (N.D. Ga. 2021) .......... 4

*Coal. for Good Governance v. Kemp*,
No. 1:21-CV-02070-JPB, 2021 WL 12299010 (N.D. Ga. Dec. 9, 2021) .......... 4

*Educational Media Co. at Virginia Tech v. Insley*,
731 F.3d 291 (4th Cir. 2013) .......... 4

*Glover v. RDU Airport Auth.*,
No. 5:23-CV-00704-M, 2025 WL 89093 (E.D.N.C. Jan. 14, 2025) .......... 8

*Hegwood v. City of Eau Claire*,
676 F.3d 600 (7th Cir. 2012) .......... 5

*Ind. C.L. Union Found., Inc. v. Ind. Sec'y of State*,
229 F. Supp. 3d 817 (S.D. Ind. 2017) .......... 4, 7

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) .......... 1, 2, 3

*Krasno v. Mnookin*,
No. 22-3170, 2025 WL 2180825 (7th Cir. Aug. 1, 2025) .......... 9

*Lehman v. City of Shaker Heights*,
418 U.S. 298 (1974) .......... 7

*Minn. Voters All. v. Mansky*,
585 U.S. 1 (2018) .......... 3, 7, 8, 9

*Multimedia Pub. Co. of S.C. v. Greenville-Spartanburg Airport Dist.*,
991 F.2d 154 (4th Cir. 1993) .......... 3, 7

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,
597 F.3d 570 (4th Cir. 2010) .......... 7, 8, 9, 10

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
460 U. S. 37 (1983) ..... 3

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ..... 1

*Richmond Medical Center for Women v. Herring*,
570 F.3d 165 (4th Cir. 2009) ..... 5

*Rideout v. Gardner*,
838 F.3d 65 (1st Cir. 2016) ..... 4, 5, 6

*Rogers v. Madison County Clerk*,
No. 2016-SC-3147, 2017 WL 3475008 (Ill. Cir. Ct. July 20, 2017) ..... 4

*Se. Promotions, Ltd. v. Conrad*,
420 U.S. 546 (1975) ..... 9

*State v. Buzzell,*
No. 2022-cv-000361 (Wis. Ct. App. Nov. 27, 2023) ..... 4

*Surita v. Hyde*,
665 F.3d 860 (7th Cir. 2011) ..... 5

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994) ..... 5, 6

*United States v. Carter*,
669 F.3d 411 (4th Cir. 2012) ..... 6

*Wash. Post v. McManus*,
944 F.3d 506 (4th Cir. 2019) ..... 6

*White Coat Waste Project v. Greater Richmond Transit Co.*,
35 F.4th 179 (4th Cir. 2022) ..... 7, 8

**Statutes**

N.C. Gen. Stat. § 163-166.3(b) ..... 8

## INTRODUCTION

After two Rule 12(c) filings and full preliminary injunction and Rule 12(b)(1) briefing, it finally becomes clear why the constitutional defense of North Carolina's Ballot Selfie Ban has seemed so off-track: Defendants miscomprehend Plaintiff Susan Hogarth to have mounted only an "as-applied challenge … based on … application of a statute to a specific person." (ECF No. 92 at 5–6 (cite and internal quotation omitted; ellipses added)). While the Complaint has as-applied claims, it *also* brings and seeks relief insofar as the challenged laws are facially unconstitutional as applied broadly to an entire type of expression, *i.e.*, ballot selfies. (Verified Compl. ¶¶ F & H, ECF No. 2 (respectively seeking injunctions against enforcement of the ban "against *anyone* who takes or shares their ballot selfie" and "against Hogarth" (emphasis added)). This type of facial as-applied challenge is well-grounded in American law. *See*, *e.g.*, *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). By working from the mistaken premise that Hogarth's claims are strictly as-applied to her past selfies, Defendants ignore her facial as-applied challenge seeking to protect all North Carolinians' First Amendment rights and thus fail to mount a proper constitutional defense to it.

This appears to be what led Defendants to lean so heavily on trying to squeeze a defense into a somewhat less demanding nonpublic analysis. But to survive Hogarth's facial as-applied claims, the Ballot Photography Provisions must withstand strict scrutiny as they single out a type of expression for disfavored treatment statewide, *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015), and they cannot. And no matter what level of scrutiny this Court applies to any provision of

the Ban—strict, intermediate, or even nonpublic forum analysis—the laws fail, facially and as-applied, because all forms of scrutiny require government interests in burdening speech to be real, yet Defendants come to the Court empty-handed. This Court should thus hold the Ballot Selfie Ban unconstitutional and grant Hogarth judgment on the pleadings.

## ARGUMENT

### I. The Ballot Photography Provisions Must Survive Strict Scrutiny and Fail Any Level of First Amendment Review.

#### A. Defendants Cannot Avoid Strict Scrutiny by Misconstruing Hogarth's Facial As-Applied Challenge.

The effort to cram this entire lawsuit into nonpublic forum analysis mistakenly presumes Hogarth challenges the Ballot Photography Provisions only as applied to her and her past selfies in voting enclosures. (ECF No. 92 at 2 (citing ECF No. 2 ¶¶ 6, 26, 163, 166, 167, C).) But she also facially challenges them pre-enforcement as they apply to *all* North Carolina voters and *all* ballot selfies, whether in or outside voting enclosures. (*See* ECF No. 2 ¶¶ A–J.) When facial as-applied claims, like Hogarth's, "reach beyond the [plaintiff's] particular circumstances," the Court treats them as "a facial challenge to the extent of that reach." *John Doe*, 561 U.S. at 194.

*Doe* provides a useful example. There, a ballot-referendum-petition sponsor and some of the petition's signers sought to enjoin Washington state's public records act, as applied to ballot referendum petitions. *Id.* at 193. Construing the challenge's scope, the Supreme Court explained how facial as-applied challenges work:

> The claim is "as applied" in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is "facial" in that it is not limited to plaintiffs'

particular case, but challenges application of the law more broadly to all referendum petitions.

*Id.* at 194. The Court accordingly reviewed the challenged statute "with respect to referendum petitions in general." *Id.* at 202. Hogarth, too, challenges the Ballot Photography Provisions' constitutionality with respect to ballot selfies in general, and Defendants' failure to understand that infects nearly every argument they make.

Principally, mistaking Hogarth's facial as-applied challenge for one strictly "as applied" to her past ballot selfies leads Defendants to argue the Ballot Photography Provisions need survive merely the standard for speech regulations for government-controlled property. (ECF No. 92 at 2–3 (citing *Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018)).) In *Mansky*, the Supreme Court applied the nonpublic forum test because the speech restriction at issue applied "only in a specific location: the interior of a polling place." 585 U.S. at 11. But nonpublic forum analysis does not control here, to Ballot Photography Provisions that—as Defendants concede—apply outside government property, including to photos of absentee ballots completed elsewhere. (State Board Answer ¶¶ 42, 93–94, 144, ECF No. 79.)

The Defendants' misunderstanding also fuels their mistaken argument that *Mansky* requires a different outcome from ballot selfie cases that predate it. (*See* ECF No. 92 at 4.) Nonpublic forum analysis long predated *Mansky*,[1] and ballot selfie bans

[1] *See, e.g.*, *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U. S. 37, 46 (1983) (holding content-based restrictions in nonpublic forums must be reasonable and viewpoint neutral); *Multimedia Pub. Co. of S.C. v. Greenville-Spartanburg Airport Dist.*, 991 F.2d 154, 159 (4th Cir. 1993) (same and explaining reasonableness test).

—before and after *Mansky*—have faced (and lost under) that standard.[2] Further, courts reviewing ballot selfie bans, both before *and after Mansky*, have invalidated the laws using standard First Amendment scrutiny, because the bans reached beyond government property.[3] Hogarth likewise challenges the Ballot Photography Provisions as they apply not just to her past selfies in the voting enclosure but to everyone, everywhere. (*See* ECF No. 2 ¶¶ A–J.) Standard First Amendment review accordingly applies, and that means strict scrutiny because the Provisions are content based, as previously explained. (*See* ECF No. 91 at 11–14.)

Defendants' confusion regarding Hogarth's claims also led them to rest their "as applied" argument on cases inapplicable to facial as-applied challenges. (ECF No. 92 at 2.) *Educational Media Co. at Virginia Tech v. Insley*, for example, examines only a personal as-applied claim—invalidating the challenged regulation "as applied to

---

[2] In *Rogers v. Madison County Clerk,* for instance, the court invalidated a ballot selfie ban that applied only to polling places under both intermediate scrutiny and as an unreasonable regulation of a nonpublic forum. *See* No. 2016-SC-3147, 2017 WL 3475008, at *1–2 (Ill. Cir. Ct. July 20, 2017). And in the post-*Mansky Coalition for Good Governance v. Kemp* the court analyzed one provision applicable to only polling places (a ban on photographing electronic voting screens) under nonpublic forum analysis, while enjoining a provision that applied everywhere (a general ban on voted-ballot photography) under strict scrutiny. *See* 558 F. Supp. 3d 1370, 1386 (N.D. Ga. 2021). Defendants' retort that the *Kemp* court later declined to determine forum type (ECF No. 92 at 5) says nothing because the court had before it only a Rule 12 motion on which it did not need to reach the issue in refusing to dismiss. *Coal. for Good Governance v. Kemp*, No. 1:21-CV-02070-JPB, 2021 WL 12299010 (N.D. Ga. Dec. 9, 2021). The important point remains that the court held strict scrutiny applied when it did reach the issue, such as when necessary to find likely success on the merits to grant a preliminary injunction. *Kemp*, 558 F. Supp. 3d at 1386.

[3] *See Rideout v. Gardner*, 838 F.3d 65, 75 (1st Cir. 2016) (applying intermediate scrutiny); *Ind. C.L. Union Found., Inc. v. Ind. Sec'y of State*, 229 F. Supp. 3d 817, 828 (S.D. Ind. 2017) (applying strict scrutiny); *State v. Buzzell,* No. 2022-cv-000361 (Wis. Ct. App. Nov. 27, 2023) (applying strict scrutiny).

the College Newspapers" that sued, as the court had already resolved their separate facial claim. 731 F.3d 291, 296, 302 (4th Cir. 2013). *Richmond Medical Center for Women v. Herring*, similarly, addressed a facial challenge to a partial-birth abortion ban while declining to address the plaintiff's as-applied challenge. 570 F.3d 165, 172, 180 (4th Cir. 2009). And the Seventh Circuit cases Defendants cite addressed strictly as-applied claims for damages, which Hogarth does not seek. *See Hegwood v. City of Eau Claire*, 676 F.3d 600, 604 (7th Cir. 2012) (deciding case only as applied to the plaintiff's activity and expressly not reaching facial claim); First Am. Compl. 1001–03, *Hegwood*, No. 09-cv-350 (W.D. Wis. Aug. 3, 2009), 2009 WL 5075804; *Surita v. Hyde*, 665 F.3d 860 (7th Cir. 2011) (deciding only whether qualified immunity shielded defendants from damages for past actions against plaintiff). (*See generally* ECF No. 92 at 2 (citing above cases)). Defendants' authority thus lacks relevance to Hogarth's challenge to the Ballot Photography Provisions on their face, as applied to all ballot selfies, and efforts to limit the Court's review to nonpublic fora is ultimately a fatal foundational error.

### B. The Ballot Photography Provisions Violate the First Amendment No Matter the Test Applied.

Defendants cannot justify the Ballot Photography Provisions under any level of scrutiny given the failure to substantiate the asserted interests in the restrictions. As Hogarth explained (*see* ECF No. 91 at 11–18), Defendants' inability to prove their "recited harms are real, not merely conjectural," means the Provisions fail the governmental interest requirement of either strict or intermediate scrutiny. *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (broadcast requirement failed intermediate

scrutiny without significant governmental interest); *see also Rideout*, 838 F.3d at 72 (declining to resolve whether strict scrutiny applied to ballot-selfie ban where it failed even intermediate scrutiny because state failed to support its asserted interests).

Defendants still fail to support their assertion that the Ballot Photography Provisions further North Carolina's "interests in preventing voter intimidation and election fraud," arguing instead that Hogarth "overstates the need for such evidence." (ECF No. 92 at 6–7.) But the requirement to substantiate asserted governmental interests is bedrock law. *See Turner*, 512 U.S. at 664. Even the Second Amendment case Defendants cite to claim they can carry their burden with "history" or "common sense" (ECF No. 92 at 7) ultimately held the government cannot justify restricting rights "with unsupported intuitions." *United States v. Carter*, 669 F.3d 411, 418 (4th Cir. 2012) (holding "common sense" insufficient under intermediate scrutiny to justify banning drug users from possessing firearms). Rather, "tangible evidence" is required. *Id.*; *see also Wash. Post v. McManus*, 944 F.3d 506, 521–22 (4th Cir. 2019) (requiring states show speech restrictions are "impelled by the facts on the ground"). Defendants attempt to avoid that by relying on the historical analysis from *Burson v. Freeman*, 504 U.S. 191, 200 (1992) (ECF No. 92 at 7), but that fails because, as explained (ECF No. 93 at 13–14), *Burson* examined only the need for polling place restrictions, not restrictions everywhere. The failure to provide anything more than "unsupported intuitions" dooms the Ballot Photography Provisions, like other ballot selfie bans. *See, e.g.*, *Rideout*, 838 F.3d at 73 (distinguishing *Burson* and noting New Hampshire's lack of tangible evidence to support its ban); *Ind. C.L. Union Found.*,

229 F. Supp. 3d 817, 824–25 (holding asserted interests failed strict scrutiny's "compelling interest" prong when unsubstantiated).

It also renders the Provisions unreasonable in a nonpublic forum because, even there, unsubstantiated interests cannot justify a total content-based ban on speech. For example, a total ban on newspaper racks inside airport terminals failed the Fourth Circuit's nonpublic forum test because the airport failed to support its asserted interests. *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 581 (4th Cir. 2010). (*See* ECF No. 93 at 16–17.) Defendants try to avoid this binding Fourth Circuit precedent by arguing "*Mansky* prescribes" the only standard now (ECF No. 92 at 8–11)—but the Fourth Circuit test survived *Mansky*, as indicated by its application both before and after *Mansky*. *See Multimedia*, 991 F.2d at 162 (before); *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 198 (4th Cir. 2022) (after). *Mansky* may provide another test for speech restrictions in nonpublic fora (that they must be capable of reasoned application), *see* 585 U.S. at 23, but it is in addition to, not instead of the Fourth Circuit's "reasonably necessary" test.

That much is clear from how *White Coat*, although analogizing to *Mansky* to invalidate a similar ban on "political" speech, clarified that the Fourth Circuit's "akin to … intermediate scrutiny" test still applies. 35 F.4th at 198–99 (citing *Multimedia*, 991 F.2d at 159).[4] And just this year, this Court applied the Fourth Circuit's test—

[4] Defendants' reliance on *White Coat*'s citation of *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974) (ECF 92 at 8), is misplaced because *White Coat* merely noted the *Lehman* Court held public bus systems could constitutionally regulate "some class of politically charged advertisements" in a nonpublic forum, 35 F.4th at 198, but the

not *Mansky*—to hold that banning a ride-share driver from airport grounds for saying "ass" in a parking lot was not "reasonably necessary" to preserve the forum's purpose. *Glover v. RDU Airport Auth.*, No. 5:23-CV-00704-M, 2025 WL 89093, at *2 (E.D.N.C. Jan. 14, 2025). Because the Ballot Photography Provisions fail the Fourth Circuit's test—and every other more stringent First Amendment standard—due to failure to support the State's asserted interests,[5] the Provisions are unconstitutional.

## II. The Voting Enclosure Provision Violates the First Amendment Because It Is Not "Reasonable."

The Voting Enclosure Provision as applied to ballot selfies is an "unreasonable" speech restriction in a nonpublic forum under the Supreme Court and Fourth Circuit tests, because Defendants neither establish the required limiting guidance nor offer sufficient proof their interests in enforcing it outweigh the burden on political speech. *See Mansky*, 585 U.S. at 16; *News & Observer*, 597 F.3d at 577. It is "incapable of reasoned application" under *Mansky* because North Carolina gives elections officials no guidance regarding when to grant or deny voters permission to photograph themselves in voting enclosures, *see Mansky*, 585 U.S. at 21, but rather leaves discretion entirely to "the chief judge of the precinct" to decide whether to allow a particular selfie. N.C. Gen. Stat. § 163-166.3(b). The supposedly "clear standard" Defendants assert requires "the voter [to] give their permission, and the photograph must not

---

"political" nature of speech in that sense is irrelevant here—and in any case, the Fourth Circuit held banning all political ads was unreasonable. *Id.* at 198, 203.

[5] Defendants also still do not explain, let alone establish, the inadequacy of state laws directly addressing their asserted harms, so the Ballot Photography Provisions fail strict or intermediate scrutiny for lack of tailoring, too. (*See* ECF Nos. 91 at 18–22 (citing statutes that prevent all of Defendants' harms without banning ballot selfies).)

contain the image of a voted official ballot." (ECF No. 92 at 10.) But nothing requires officials to grant a voter who meets those conditions permission to photograph themselves, with or without a voted ballot. The "standard" (*Id.* at 10) thus allows election officials to grant or deny permission for any ballot selfie based on no more than the official's whim or mood—precisely what *Mansky* cautioned against. 585 U.S. at 22 (warning of "unfair or inconsistent enforcement" of speech bans).

For example, earlier this year, the Seventh Circuit held unreasonable University of Wisconsin-Madison's policy of prohibiting "off-topic" comments on its social media accounts because, as here, the University tasked officials with enforcing an "'indeterminate prohibition' … through sheer discretion without 'objective, workable standards.'" *Krasno v. Mnookin*, No. 22-3170, 2025 WL 2180825, at *12–13 (7th Cir. Aug. 1, 2025) (citing *Mansky*, 585 U.S. at 21). Likewise here. Election officials enforce the Voting Enclosure Provision through their "sheer discretion," lacking any "objective, workable standards." *Id.*

Defendants also fail to rebut Hogarth's arguments that the Voting Enclosure Provision flunks the Fourth Circuit's reasonableness test. The ban's "degree and character" is far from "minimal" (ECF No. 92 at 11 (citing *News & Observer*, 597 F.3d at 577)), where the law bans an entire medium of expression: ballot selfies, which have unique communicative properties. (ECF No. 91 at 10–11.) The Supreme Court has been clear that freedom of speech, even on government property, cannot be limited "on the plea that it may be exercised in some other place," *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975) (quotation marks omitted), or in some other

way. *See City of Ladue v. Gilleo*, 512 U.S. 43, 56, 57 n.16 (1994) (that speaker can use "another medium … to carry the same messages" does not alter government's First Amendment duty to independently justify speech restrictions). Finally, as elsewhere, Defendants advance their asserted justifications for the Voting Enclosure Provision's validity without substantiation (ECF No. 92 at 11), which cannot meet their burden. *See News & Observer*, 597 F.3d at 577.

**CONCLUSION**

For the reasons above and previously stated, the Court should grant Hogarth judgment on the pleadings and issue a permanent injunction against enforcement of the Ballot Selfie Ban.

Respectfully submitted,

/s/ James M. Dedman IV
JAMES M. DEDMAN IV
(NC Bar # 37415)
GALLIVAN WHITE & BOYD P.A.
6805 Carnegie Blvd, Ste. 200
Charlotte, NC, 28211
(704)-552-1712
jdedman@gwblawfirm.com

ERIC SPENGLER
(NC Bar # 47165)
SPENGLER + AGANS PLLC
352 N. Caswell Rd.
Charlotte, NC 28204
(704) 999-8733
eric@sab.law

/s/ Jeffrey D. Zeman
JEFFREY D. ZEMAN*
(PA Bar No. 328570)
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
jeff.zeman@thefire.org

DANIEL A. ZAHN*
(D.C. Bar No. 90027403)
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
daniel.zahn@thefire.org

*Special Appearance pursuant to Local Rule 83.1(e)

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.2(f)(3), I hereby certify this brief contains 2,773 words, as calculated by Microsoft Word version 16.99.2, and therefore falls within the L.R. 7.2(f)(3)(A) word limit of 2,800 words for a reply memorandum.

/s/ Jeffrey D. Zeman
JEFFREY D. ZEMAN
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2025, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Jeffrey D. Zeman
Jeffrey D. Zeman
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION