IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:24-cv-481-FL

SUSAN JANE HOGARTH,

    Plaintiff,

v.

SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections, et al.,

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Sam Hayes, State Board Executive Director, the members of the State Board, Danielle Brinton, State Board Investigator ("State Board Defendants"), the Director and members of the Wake County Board of Elections ("County Board Defendants"), and Wake County District Attorney Lorrin Freeman ("DA Freeman"), all named in their official capacities only (collectively "Defendants"), provide this reply in support of their motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). [D.E. 88.]

## ARGUMENT

In her Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings [D.E. 93] ("Plaintiff's Opposition"), Plaintiff argues that the Ballot Photography Provisions and the Voting Enclosure Provision violate the First Amendment. But in doing so, Plaintiff broadens the scope of her Complaint and Supplemental Complaint beyond their allegations, improperly limits the *Anderson/Burdick* balancing test, and misapplies the reasonableness standard of *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018).

# I. PLAINTIFF'S AS-APPLIED CHALLENGE TO THE BALLOT PHOTOGRAPHY PROVISIONS IS LIMITED TO BALLOT SELFIES IN THE VOTING ENCLOSURE.

In an effort to overcome the deficiencies in her pleadings, Plaintiff attempts to broaden the scope of her Complaint in two ways. First, Plaintiff appears to invoke a facial challenge to the Ballot Photography Provisions. [D.E. 93 at 6.] Additionally, Plaintiff tries to broaden her challenge outside of photographs in the voting enclosure and invokes absentee balloting. [D.E. 93 at 18-21.] Because both of these positions are inconsistent with the allegations of Plaintiff's Complaint, the Court should not entertain those extraneous arguments and instead grant Defendants' Motion for Judgment on the Pleadings.

First, Plaintiff's Opposition claims that "[t]he Ballot Photography Provisions facially violate the First Amendment as applied to ballot selfies." [D.E. 93 at 6.] But a facial challenge and an as-applied challenge are not the same. *See White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 204 (4th Cir. 2025) ("An as-applied challenge is one which depends on the identity or circumstances of the plaintiff. A facial challenge can be decided without regard to its impact on the plaintiff asserting the facial challenge." (cleaned up)). And Plaintiff's invocation of a facial challenge to the Ballot Photography Provisions is inconsistent with her pleadings and briefing, which have consistently articulated that Plaintiff has asserted an as-applied challenge to the Ballot Photography Provisions. *See* [D.E. 2 ¶¶ 6, 26, 163, 166-67; D.E. 91 at 7, 11, 14.] To the extent that Plaintiff attempts to make a facial challenge to the Ballot Photography Provisions, Plaintiff has not asserted such a claim in her Complaint or Supplemental Complaint, and Plaintiff is bound by the allegations in her pleadings. *See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

2

Second, Plaintiff attempts to take her challenge outside the confines of the voting enclosure. Plaintiff argues that "voters can fill out absentee ballots in a park, at their kitchen table, or in any number of areas 'far away from the polling place.'" [D.E. 93 at 8 (quoting *Rideout v. Gardner*, 123 F. Supp. 3d 218, 230 (D.N.H. 2015).] And in arguing that Plaintiff has standing to challenge absentee ballots, Plaintiff asks "how a plaintiff with standing to challenge generally applicable statutes . . . could be prevented from challenging all aspects of their application." [*Id.* at 18.] Because "[t]he [Ballot Photography] Provisions apply anywhere a voter takes or shares a ballot selfie," Plaintiff argues that "there is no legal or logical basis for separating out selfies of absentee ballot." [*Id.* at 18-19.] But Plaintiff ignores her own allegations and conduct, which serve to limit her claims about ballot selfies to those taken in the voting enclosure.

Defendants explained in their Response in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Defendants' Opposition") that Plaintiff brings an as-applied challenge to the Ballot Photography Provisions, which limits Plaintiff's challenge to the circumstances of her case. [D.E. 92 at 2-3.] Accordingly, Plaintiff's Complaint and Supplemental Complaint, which clearly identify Plaintiff's conduct as taking place in the voting enclosure, limit her challenge to ballot selfies in the voting enclosure. [*Id.*] Plaintiff's last-ditch effort to invoke a 20-year old absentee vote does not change this analysis. Plaintiff's Complaint and Supplemental Complaint shape the scope of her as-applied challenge, and Plaintiff makes no allegation that she photographed her voted ballot in 2004. Accordingly, Defendants are entitled to judgment on the pleadings.

## II. *ANDERSON/BURDICK* REVIEW IS NOT LIMITED TO ELECTION MECHANICS.

In arguing that the Ballot Photography Provisions are subject to strict scrutiny, Plaintiff rejects both the nonpublic forum standard articulated in *Mansky* and the *Anderson/Burdick* balancing test. [D.E. 93 at 8.] But Plaintiff also mistakenly limits *Anderson/Burdick* to "election

mechanics." [D.E. 93 at 8.] *Anderson/Burdick* is not so limited, and if the Court declines to apply the *Mansky* standard, the Ballot Photography Provisions should be analyzed under the *Anderson/Burdick* balancing test.

The Fourth Circuit has applied the *Anderson/Burdick* balancing test where necessary to balance First Amendment interests with statutes that are part of a complex electoral scheme. In *Fusaro v. Cogan*, 930 F. 3d 241, 244 (4th Cir. 2019), the Fourth Circuit was faced with a First Amendment challenge to a Maryland statute that limited disclosure of Maryland's list of registered voters to in-state voters and for purposes related to the electoral process. The plaintiff challenged the statute, contending that it violated the Free Speech Clause of the First Amendment by favoring some political speakers over others, and violated the First Amendment because it restricted speech based on content and was unconstitutionally vague. *Id.* at 247. The court considered that the restrictions implicated First Amendment interests because the list was "closely tied to political speech," the statute imposed "content- and speaker-based conditions on access to and use of the List," and "suspect conditions may be subject to First Amendment scrutiny." *Id.* at 250. In assessing what level of scrutiny to apply to the statute, the court recognized the tension between access to government records, which "is ordinarily not subject to any First Amendment constraints," and the "content- and speaker-based restrictions . . . [that] implicate[d] the concern at the heart of the Free Speech Clause." *Id.* at 256.

The Fourth Circuit reasoned that "[a] key consideration" was "the context" of the statute. *Id.* at 257. The release of government information was "fundamentally a policy question," but "[e]qually important" was the statute's place in a "'complex[] election code[]' enacted by the Maryland legislature to regulate federal and state elections, including all the practical and logistical details thereof." *Id.* Considering these interests, the Fourth Circuit explained the rationale behind

4

the *Anderson/Burdick* balancing test. *Id.* at 257-58. The court concluded that "[a]lthough the *Anderson-Burdick* test has generally been applied to claims concerning ballot access, its careful balancing of the very interests implicated by [the plaintiff's] claim le[]d [the court] to 'borrow' that standard" to the disclosure rule. *Id.* at 258. Specifically, the plaintiff's challenges "oblige[d] [the court] to resolve the tension between the deference that the courts owe to legislatures in areas meriting careful regulation and the need to protect 'fundamental' First Amendment rights." *Id.* Resolving that tension "is the precise balancing required by the *Anderson-Burdick* analysis." *Id.*

That balancing of First Amendment rights with areas meriting careful regulation is what the Ballot Photography Provisions call for. The Ballot Photography Provisions are part of North Carolina's complex election code to which the courts owe the legislature deference, even if those restrictions implicate First Amendment concerns. Given these competing interests, the *Anderson/Burdick* balancing test is an appropriate standard to determine whether the Ballot Photography Provisions are constitutional.

Plaintiff argues that the Ballot Photography Provisions do not satisfy the *Anderson/Burdick* balancing test, contending that the burden is severe compared to the government's interests. [D.E. 93 at 18.] But in doing so, Plaintiff repeatedly diminishes the State's legitimate, compelling interests. The Supreme Court has acknowledged that a State has "a compelling interest in ensuring that an individual's right to vote is not undermined" by fraud, undue influence, or intimidation. *Burson v. Freeman*, 504 U.S. 191, 199 (1992). And Plaintiff cannot argue that there is no evidence of the State's concerns; even Plaintiff acknowledges that the State has referred four investigations of vote-buying schemes for prosecution since 2015. *See* North Carolina State Board of Elections, 2015- 22 Referred Cases, https://s3.amazonaws.com/dl.ncsbe.gov/Investigations/NCSBE%20Referred%20Cases%202015-2022.pdf (last visited August 12, 2025). Accordingly, for the reasons

outlined in Defendant's Memorandum in Support of their Motion for Judgment on the Pleadings, the Ballot Photography Provisions satisfy the *Anderson/Burdick* balancing test. [D.E. 89 at 12-17.]

The Parties appear to agree that the *Mansky* standard governs Plaintiff's challenge to the Voting Enclosure Provision [D.E. 91 at 22-26; D.E. 89 at 19-23.] Nonetheless, Plaintiff argues that the Voting Enclosure Provision is beyond the scope of *Anderson/Burdick* and would not survive its balancing test. [D.E. 93 at 23.] However, if the Court decides not to apply the *Mansky* standard, for the same reasons that the Ballot Photography Provisions would fall within the scope of and satisfy the *Anderson/Burdick* balancing test, so too would the Voting Enclosure Provision.

### III. THE BALLOT PHOTOGRAPHY PROVISIONS AND THE VOTING ENCLSOURE PROVISION ARE REASONABLE.

In arguing that the Ballot Photography Provisions are subject to strict scrutiny, Plaintiff rejects the nonpublic forum standard articulated in *Mansky*. [D.E. 93 at 8.] Defendants' Memorandum in Support of their Motion for Judgment on the Pleadings and Defendants' Opposition outline why the nonpublic forum analysis set forth in *Mansky* applies to this case [D.E. 89 at 8-10; D.E. 92 at 1-6], and Defendants do not repeat those arguments here. But Plaintiff also argues that the Ballot Photography Provisions and the Voting Enclosure Provision are not reasonable. Despite Plaintiff's attempts to narrow the scope of reasonableness review, the Ballot Photography and Voting Enclosure Provisions satisfy the *Mansky* standard.

First, Plaintiff argues that the Ballot Photography Provisions are not reasonable under *News & Observer Publishing Co. v. Raleigh-Durham Airport Authority*, 597 F.3d 570 (4th Cir. 2010). Specifically, Plaintiff argues that North Carolina's interests are unsupported, and that the prohibition on ballot selfies is not connected to any of the State's asserted interests. [D.E. 93 at 17.] Although the court in *News & Observer* considered the evidence supporting the State's asserted interests balanced against prohibited conduct, neither *Mansky* nor *White Coat* articulated

any such burden. And the Supreme Court in *Mansky* acknowledged the historical background surrounding regulation of polling places, 585 U.S. at 13-14, and reasoned that "[c]asting a vote is a weighty civic act," which meant that "[t]he State may reasonably decide that the interior of the voting place should reflect that distinction." *Id.* at 15. In any event, as explained in Section II, *supra*, the State has compelling interests, and has referred four vote-buying schemes for prosecution within the last ten years. Furthermore, prohibiting photographs of a voted ballot inside a polling place, while allowing other types of photographs, ensures voter secrecy and limits vote buying while allowing for other forms of expression. As explained in Defendants' Opposition, the Ballot Photography Provisions satisfy *News & Observer* because the "degree and character of the impairment of the protected expression" is minimal when "discounted by any mitigating alternatives that remain." 597 F.3d at 577.

Second, Plaintiff argues that the Voting Enclosure Provision does not survive *Mansky* because it lacks an objective, workable standard. [D.E. 93 at 22.] However, as explained in Defendants' Memorandum in Support of their Motion for Judgment on the Pleadings and Defendants' Opposition, the Voting Enclosure Provision has clear, objective standards that allow for reasoned application. [D.E. 89 at 21-22; D.E. 92 at 10.]

Accordingly, the Ballot Photography and Voting Enclosure Provisions are reasonable.

## CONCLUSION

For the foregoing reasons, for the reasons in Defendant's memorandum in support of their motion for judgment on the pleadings, and for the reasons in Defendants' Opposition, Defendants' motion for judgment on the pleadings should be granted.

7

Respectfully submitted this the __ day of August, 2025.

                                        **JEFF JACKSON**
                                        **Attorney General**

| | |
|---|---|
| /s/ Roger A. Askew | /s/ Ryan C. Grover |
| Roger A. Askew, NCSB # 18081 | Ryan C. Grover |
| Senior Deputy County Attorney | Special Deputy Attorney General |
| E-mail: Roger.Askew@wake.gov | N.C. State Bar No. 53703 |
| | E-mail: rgrover@ncdoj.gov |
| /s/ Allison P. Cooper | |
| Allison P. Cooper, NCSB # 34160 | /s/ Terence Steed |
| Senior Deputy County Attorney | Terence Steed |
| E-mail: Allison.Cooper@wake.gov | Special Deputy Attorney General |
| | N.C. State Bar No. 52809 |
| Wake County Attorney's Office | E-mail: tsteed@ncdoj.gov |
| Post Office Box 550 | |
| Raleigh, North Carolina 27602 | /s/ Mary L. Lucasse |
| Telephone: (919) 856-5500 | Mary L. Lucasse |
| | Special Deputy Attorney General |
| *Attorneys for County Board Defendants* | N.C. State Bar No. 39153 |
| | E-mail: mlucasse@ncdoj.gov |
| | |
| | *Attorneys for State Board Defendants* |
| | |
| | /s/Elizabeth O'Brien |
| | Elizabeth O'Brien |
| | Special Deputy Attorney General |
| | N.C. State Bar No. 28885 |
| | E-mail: eobrien@ncdoj.gov |
| | |
| | *Counsel for Defendant Freeman* |
| | |
| | North Carolina Department of Justice |
| | Post Office Box 629 |
| | Raleigh, North Carolina 27602-0629 |
| | Telephone: (919) 716-6400 |

8

Case 5:24-cv-00481-FL     Document 95     Filed 08/15/25     Page 8 of 8