IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-481-FL

| | | |
|---|---|---|
| SUSAN JANE HOGARTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAM HAYES, in her official capacity as | ) | |
| Executive Director of the North Carolina | ) | |
| State Board of Elections; FRANCIS X. DE | ) | |
| LUCA, in his official capacity as Chair of | ) | |
| the North Carolina State Board of Elections; | ) | |
| JEFF CARMON, in his official capacity as | ) | |
| Secretary of the North Carolina State Board | ) | |
| of Elections; STACY EGGERS IV, | ) | |
| ROBERT RUCHO, and SIOBHAN | ) | |
| O'DUFFY MILLEN, in their official | ) | |
| capacities as Members of the North | ) | |
| Carolina State Board of Elections; | ) | ORDER |
| DANIELLE BRINTON, in her official | ) | |
| capacity as Investigator for the North | ) | |
| Carolina State Board of Elections; OLIVIA | ) | |
| MCCALL, in her official capacity as | ) | |
| Director of the Wake County Board of | ) | |
| Elections; ERICA PORTER, in her official | ) | |
| capacity as Chair of the Wake County | ) | |
| Board of Elections; ANGELA HAWKINS, | ) | |
| in her official capacity as Secretary of the | ) | |
| Wake County Board of Elections; GREG | ) | |
| FLYNN, GERRY COHEN, and KEITH | ) | |
| WEATHERLY, in their official capacities | ) | |
| as Members of the Wake County Board of | ) | |
| Elections; LORRIN FREEMAN, in her | ) | |
| official capacity as Wake County District | ) | |
| Attorney, | ) | |
| | ) | |
| Defendants. | | |

This matter is before the court upon the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (DE 88, 90). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motion is granted, and plaintiff's is denied.

## STATEMENT OF THE CASE

In complaint filed August 22, 2024, plaintiff seeks declaratory and injunctive relief against five North Carolina election procedure statutes she alleges infringe her First Amendment-protected right to take so-called "ballot selfies." She also seeks fees and costs under 42 U.S.C. § 1988. Plaintiff sued four groups of defendants:

1. Sam Hayes, Francis De Luca, and Jeff Carmon, in their official capacities as executive director, chair, and secretary, respectively, of the North Carolina State Board of Elections; Stacy Eggers IV, Robert Rucho, and Siobhan O'Duffy Millen in their official capacities as members of the North Carolina State Board of Elections; and Danielle Brinton, in her official capacity as investigator for the North Carolina State Board of Elections (collectively, the "State Board");

2. Olivia McCall, Erica Porter, and Angela Hawkins, in their official capacities as director, chair, and secretary, respectively, of the Wake County Board of Elections; and Greg Flynn, Gerry Cohen, and Keith Weatherly, in their official capacities as members of the Wake County Board of Elections (collectively, the "Wake County Board");

3. Lorrin Freeman ("Freeman"), in her official capacity as Wake County District Attorney; and

4. The North Carolina Attorney General, previously Josh Stein, now Jeff Jackson ("Jackson"), in his official capacity.

2

On November 5, 2024, plaintiff filed an unopposed motion for leave to file a verified supplemental complaint under Federal Rule of Civil Procedure 15(d). This supplemental complaint contained additional allegations about plaintiff's experience in early voting during the 2024 general election. The court granted the motion November 6, 2024, and plaintiff duly filed the supplemental complaint the same day.

On March 28, 2025, the court largely denied the various defendants' motion to dismiss under Rule 12(b)(1). The court granted them insofar as they sought the dismissal of Jackson, but permitted plaintiff's claims against all other defendants to proceed. (See generally Order (DE 74)).

The parties filed the instant motions on Jule 11, 2025. The parties have filed respective responses and replies to the motions, which are ripe for ruling.

## STATEMENT OF FACTS

The facts alleged are unchanged from the court's March 28, 2025, ruling on defendants' motions to dismiss, so the court re-produces its summary thereof here.

Plaintiff is a resident and registered voter of Wake County, North Carolina, who has voted in "nearly every" national election since 2014. (Compl. (DE 2) ¶ 9). Plaintiff has taken and shared "ballot selfies," which are voters' photos of their own completed ballots or of themselves in the voting booth, to 1) promote the candidates she votes for; 2) show voters they can vote for third-party candidates; 3) "challenge the narrative that voters can only vote for major party candidates"; 4) encourage potential voters to vote; 5) commemorate her vote; 6) express her pride in participating in the electoral process; and 7) express her disagreement with North Carolina's ban on "ballot selfies." (Id. ¶¶ 30, 50–51). Plaintiff alleges that the five electoral procedure statutes she challenges together operate to ban "ballot selfies." (Id. ¶¶ 31–48).

On March 5, 2024, plaintiff went to her precinct's polling place to vote in a primary election. (Id. ¶¶ 52–53). From the time plaintiff arrived at the polling place to the time she left, no more than three other voters entered the voting enclosure. (Id. ¶ 54). Plaintiff entered the voting booth, voted, then took a photo depicting herself, her ballot, and a voting booth sign prohibiting photography. (Id. ¶¶ 55–58). Taking the photo took approximately 45 seconds. (Id. ¶ 59). Nobody had to wait to access a voting booth while plaintiff voted, no poll worker notified plaintiff that her time had expired or that she was taking too long to exit, and nobody said anything to plaintiff about the photograph. (Id. ¶¶ 61–64). After taking the photograph, plaintiff shared it on the social network formerly known as twitter, along with a criticism of ballot photography laws and an endorsement of her preferred candidates. (Id. ¶¶ 66–70).

Plaintiff received a letter dated March 13, 2024, from defendant Danielle Brinton, informing plaintiff that photographing a completed ballot is unlawful, threatening plaintiff with criminal prosecution, warning plaintiff that she had committed a crime by taking the photograph and by sharing it on social media, and demanding that plaintiff take the photo down from social media. (Id. ¶¶ 72–83). The letter warned plaintiff four times that photographing a completed ballot is unlawful. (Id. ¶ 81).

The North Carolina State Board of Elections warns voters on its website and in press releases that "ballot selfies" are illegal, and it investigates reports thereof. (Id. ¶¶ 85–90). Between March, 2016, and March, 2024, the State Board investigated at least 50 reports of photography of completed ballots, and it refers individuals who have taken such photos to district attorneys for prosecution. (Id. ¶¶ 91, 97). Similarly, the Wake County Board warns voters that photography of completed ballots is illegal, and reported a violation of those laws to the State Board on November 8, 2022. (Id. ¶¶ 98–99, 101).

Plaintiff has not taken down her "ballot selfie," and does not intend to. (Id. ¶¶ 105–06). Plaintiff intends to vote in future elections in Wake County, and to take "ballot selfies" for social media. (Id. ¶¶ 107, 111–13). Plaintiff stood as a candidate for state senate in the November 2024, general election. (Id. ¶ 116).

On October 25, 2024, plaintiff went to an early polling place in Wake County to vote. (Suppl. Compl. (DE 65) ¶ 5). When she arrived, four voters waited in line ahead of her. (Id. ¶ 6). When plaintiff entered the voting enclosure, "the majority" of the more than 50 voting booths were available. (Id. ¶ 7). Plaintiff filled out her ballot, which took approximately two minutes. (Id. ¶¶ 9–10). While in the voting booth, plaintiff took more "ballot selfies," which included her voted ballot, herself with a "no photos" sign posted next to the voting booth, and herself holding up her voted ballot. (Id. ¶ 11). This photography took less than one minute. (Id. ¶ 12). As plaintiff took her last photograph, a poll worker approached plaintiff and ordered her to delete her photographs. (Id. ¶ 14). Plaintiff advised the poll worker that a court had ordered she could take her "ballot selfies," which the poll worker confirmed with the State and/or Wake County Boards. (Id. ¶¶ 15–20). Nobody had to wait to vote while plaintiff took her "ballot selfies," and no election official told plaintiff her time had expired, that plaintiff was disrupting the polling place, that plaintiff was intimidating other voters, or that plaintiff was violating the privacy of other voters. (Id. ¶¶ 22–26). Plaintiff alleges that without this court's order permitting plaintiff to take "ballot selfies" when she voted in the 2024 general election, officials would have prevented plaintiff from doing so. (Id. ¶ 27).

**COURT'S DISCUSSION**

A.     Standard of Review

"After the pleadings are closed[,] . . . a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  In reviewing a motion for judgment on the pleadings, the court "appl[ies]

the same standard as a 12(b)(6) motion to dismiss."  Mayfield v. Nat'l Ass'n for Stock Car Auto

Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-

pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not

consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[1]

B.     Analysis

 Resolution of the instant motions hinges on three questions: 1) whether plaintiff lodges a

facial or as-applied challenge; 2) which standard of review applies to her claims in light of the

answer to the first question; and 3) whether the defendants' asserted interests satisfy the applicable

standard of review.   The court concludes that plaintiff lodges an as-applied challenge

notwithstanding her arguments to the contrary, that nonpublic forum analysis is therefore

---

[1]     Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

applicable, and that defendants' interests are sufficient to sustain the statutes under that relatively lenient standard of review.

1.      Five Challenged Statutes

Plaintiff, as described in the court's March 28 order, challenges five North Carolina voting statutes.  The court re-produces its discussion thereof here.

The first statute is N.C. Gen. Stat. § 163-166.3(c).  This short provision states that:

(c) Photographing Voted Ballot Prohibited. – No person shall photograph, videotape, or otherwise record the image of a voted official ballot for any purpose not otherwise permitted under law.

Id.

The second statute is N.C. Gen. Stat. § 163-273(a)(1).  This similarly brief statute states:

(a) Any person who shall, in connection with any primray or election in this State, do any of the acts and things declared in this section to be unlawful, shall be guilty of a Class 2 misdemeanor.  It shall be unlawful:
        (1) For a voter, except as otherwise provided in this Chapter, to allow his ballot to be seen by any person.

Id.

The third statute is N.C. Gen. Stat. § 163-165.1(e).  This statute states that:

(e) Voted ballots and paper and electronic records of indvidual voted ballots shall be treated as confidential, and no person other than elections officials performing their duties may have access to voted ballots or paper or electronic records of individual voted ballots except by court order or order of the appropriate board of elections as part of the resolution of an election protest or investigation of an alleged election irregularity or violation.  Voted ballots and paper and electronic records of individual voted ballots shall not be disclosed to members of the public in such a way as to disclose how a particular voter voted, unless a court orders otherwise. Any person who has access to an official voted ballot or record and knowingly discloses in violation of this section how an individual has voted that ballot is guilty of a Class 1 misdeamanor.

Id.

7

The fourth statute is N.C. Gen. Stat. § 163-274(b)(1), which states:

(b) Class 1 Misdemeanor. – Any person who, in connection with any primary or election in this State, violates any provision of this subsection, is guilty of a Class 1 misdemeanor. It shall be unlawful to do any of the following:
      (1) For any person who has access to an official voted ballot or record to knowingly disclose in violation of [N.C. Gen. Stat. §] 163-165.1(e) how an individual has voted that ballot.

Id.

Plaintiff refers to these four provisions together as the "ballot photography provisions." (Compl. ¶ 141). The court does likewise for the sake of convenience.

The final statute, N.C. Gen. Stat. § 163-166.3(b), which plaintiff labels the "voting enclosure provision," (Compl. ¶¶ 170–84), provides in relevant part that:

(b) Photographing Voters Prohibited. – No person shall photograph, videotape, or otherwise record the image of any voter within the voting enclosure, except with the permission of both the voter and the chief judge of the precinct. If the voter is a candidate, only the permission of the voter is required.

Id.

2.      Facial or As-Applied Challenge

The court first confronts whether plaintiff advances a facial or as-applied challenge to the statutes. The answer to this question determines the applicable standard of review for reasons discussed below. The court concludes that plaintiff makes an as-applied challenge to the five statutes.

When a plaintiff makes a facial challenge to a statute, a court must assess the constitutionality of the challenged law without regard to its impact on the plaintiff. Educational Media Co. at Va. Tech., Inc. v. Insley, 731 F.3d 291, 298 n.5 (4th Cir. 2013). In contrast, an as-applied challenge is based on the "application of a statute to a specific person." Id. If a facial challenge succeeds, a statute cannot be enforced against anyone, whereas a successful as-applied

challenge renders a statute unenforceable only against the plaintiff, leaving it in place against anybody else. See Fisher v. King, 232 F.3d 391, 395 n.4 (4th Cir. 2000).

Plaintiff here makes an as-applied challenge to the five statutes. As defendants observe, plaintiff's pleadings and briefing throughout this case consistently express that she challenges the application of the challenged statutes to her own conduct of taking photographs inside voting booths. (See Compl. (DE 2) ¶¶ 1–2, 26, 109, 161–64, 166; Pl's Supp. Br. (DE 91) 13, 17).

Plaintiff's prayer for relief largely confirms this reading. It asks the court to provide declaratory and injunctive relief specifically for "ballot selfies" and those plaintiff took. (Compl. ¶¶ B–E, G–H). The exception here is paragraph F of the prayer for relief, which asks the court to "preliminarily and permanently enjoin the defendants from enforcing the [statutes] against anyone who takes or shares their own ballot selfie." (Id. ¶ F (emphasis added)). This portion of the prayer for relief clearly requests facial relief. However, the Supreme Court of the United States recently limited significantly the federal courts' authority to issue injunctive remedies, which bars this relief, at least as currently pleaded.

In Trump v. CASA, Inc., 145 S. Ct. 2540 (2025), the Supreme Court held that federal courts may not issue injunctive relief in favor of, or against, anybody not a party to the suit. See id. at 2551–52. "Neither declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs." Id. at 2552. Susan Jane Hogarth is the sole plaintiff to this suit, and so paragraph F of plaintiff's prayer for relief requests an injunction squarely barred by CASA. And shorn of paragraph F, the prayer for relief and the rest of the complaint present as-applied challenges.

Plaintiff resists this conclusion by citing to John Doe No. 1 v. Reed, 561 U.S. 186 (2010), for the proposition that a challenge can simultaneously be both facial and as-applied, in effect a

third category between the two.  But Reed held no such thing.  It instead acknowledged that it was difficult to determine whether the complaint there was properly characterized as mounting a facial or as-applied attack, before determining that it presented the former.  See id. at 194.

In sum, plaintiff presents an as-applied challenge to the five statutes.

3.      Applicable Standard of Review

Having concluded that plaintiff makes as-applied challenges, the court next concludes that nonpublic forum analysis is the appropriate standard of review.

As noted, a court considering an as-applied challenge, as here, assesses only the facts of the particular plaintiff's case and the application of the statute to her.  Plaintiff's allegations all concern the taking of "ballot selfies" during in-person voting on specific dates, inside a voting booth.  (See Compl. ¶¶ 1, 53–60; Suppl. Compl. (DE 65) ¶¶ 5–11).  The Supreme Court has squarely held that polling places during election periods are "nonpublic forums."  Minn. Voters Alliance v. Mansky, 585 U.S. 1, 12 (2018).  Though plaintiff presents arguments about the constitutionality of the statutes if applied to "ballot selfies" taken outside of a voting booth, under her as-applied challenge the court may assess only her particular conduct, which consisted of taking "ballot selfies" within a physical voting booth at a polling place. The Mansky nonpublic forum analysis therefore applies.

Elsewhere in her briefing, plaintiff cites several cases in which courts applied more demanding standards of review than the nonpublic forum analysis.  These cases do not alter the court's conclusion.  First, one decision in fact applied nonpublic forum analysis to the election rule at issue that was most analogous to those here, in that it prohibited photographing a ballot within the voting booth.  See Coal. for Good Governance v. Kemp, 558 F. Supp. 3d 1370, 1386 (N.D. Ga. 2021).  Another predated Mansky, and analyzed a statute that was not limited to voting booths.

See Ind. Civil Liberties Union Found., Inc. v. Ind. Sec'y of State, 229 F. Supp. 3d 817, 820 (S.D. Ind. 2017). A third, likewise, predated Mansky and discussed a statute that applied even outside voting booths. See Rideout v. Gardner, 123 F. Supp. 3d 218, 221 (D.N.H. 2015). These cases are unpersuasive, except the portion of Kemp just noted, because they arose in postures unlike plaintiff's cabined as-applied challenge here.

Nonpublic forum analysis is a relatively lenient standard of review for First Amendment challenges. The government, "no less than a private owner of property, retains the power to preserve the property under its control for the use to which it is lawfully dedicated." Mansky, 585 U.S. at 12. Accordingly, the government is permitted to "impose some content-based restrictions on speech in nonpublic forums, including restrictions that exclude . . . forms of political advocacy." Id. The government may "reserve [a nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Id. The former inquiry requires that the government assert both reasonable means and ends. See White Coat Waste Project v. Greater Richmond Transit Co., 35 F.4th 179, 198 (4th Cir. 2022).

4.    Application of Nonpublic Forum Analysis

As noted, a government restriction on speech applied to a nonpublic forum will be sustained if it is reasonable and does not discriminate based on viewpoint. Id.

All five statutes satisfy both these criteria.

First, the five provisions do not, by their plain text, discriminate based on viewpoint. None draws any distinction based on the party or candidate marked on a ballot, or even if a ballot is intentionally spoiled as a protest gesture. See Burdick v. Takushi, 504 U.S. 428, 438, 441 (1992) (noting that some voters pursue such gestures). Plaintiff does not attempt to argue otherwise.

11

The court therefore assesses whether defendants advance interests that are reasonable ends, and whether the statutes are reasonable means to achieve them. See White Coat Waste Project, 35 F.4th at 198.

Defendants assert several interests: 1) ensuring orderly elections; 2) limiting disruption at the polls; and 3) preventing vote-buying schemes and coerced voting. (Defs' Br. Supp. (DE 89) 10). The Supreme Court has recognized that the last rationale in particular is "compelling" enough to satisfy strict scrutiny, when applicable, when that doctrine's narrow tailoring requirement is also met. See Burson v. Freeman, 504 U.S. 191, 199–200 (1992). The court therefore focuses on that interest, which is therefore certainly a reasonable end.

Plaintiff attempts to undermine this interest by attacking the means chosen to advance it, by arguing that it is unconnected to reserving voting booths for their intended purposes, so removing it from nonpublic forum doctrine, and by relying upon The News & Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570 (4th Cir. 2010). Neither argument carries the day.

First, banning photographs of completed ballots and persons in a voting booth to prevent vote-buying and coercion is connected to maintaining the "right to vote freely … [and] protecting voters from confusion and undue influence." Freeman, 504 U.S. at 199 (emphases added); see also Mansky, 585 U.S. at 15. This prohibition prevents the use of the voted ballot or a person in a voting booth as proof of compliance in a vote-buying scheme, and protects voters from compulsion to disclose photographs of their ballot or themselves to ensure submission to a would-be vote intimidator's demands. The intended purpose of a voting booth is to serve as "an island of calm in which voter can peacefully contemplate their choices[,]" Mansky, 585 U.S. at 15, not a place in which a person votes in a manner procured by purchase, impelled by threats, or otherwise

12

influenced by others engaging in such conduct. Defendants' interests in preventing bribed and forced votes are connected to maintaining the integrity of the voting booth.

Second, News & Observer does not compel a different result. There, the court ruled against an airport's ban on newspaper racks in a terminal, even under nonpublic forum analysis. See News & Observer, 597 F.3d at 578. That case noted, however, that a defendant need not "adduce[] specific factual evidence that its interests were advanced by the" challenged statutes, or that the "expressive activity banned did interfere with the forum's intended use," and that a defendant is "entitled to advance its interests by arguments based on appeals to common sense and logic." Id. at 578–79. Under that standard, the court rejected two asserted interests as lacking any logically based connection to the ban, a third on the basis of a factually specific point controlled by a prior case about newspaper racks, and the fourth partially for this reason and also for not sweeping in other conduct that could work against that interest. See id. at 579–81.

The logic controlling the third interest just noted in News & Observer plainly is not applicable here. Meanwhile, defendants have not permitted other conduct that would work against its asserted interest in deterring vote-buying and coercion. The challenged statutes may permit other types of photography inside voting booths, but photographs that do not depict voted ballots or a voter in a voting booth would be of little interest to a would-be vote purchaser or intimidator.

Defendants assert sound arguments on "common sense and logic" that this interest is reasonable. News & Observer, 597 F.3d at 579. Common sense and logic support the proposition that photographs of voted ballots or voters, taken within voting booths, create opportunities for abuse through vote-buying and coercion, because the briber or intimidator could demand a photograph to ensure compliance with the bribe or threat, or the practice could instill fear in others that such a demand could be made.

13

Plaintiff faults defendants for failing to support their arguments with concrete examples of vote-buying or intimidation schemes foiled by the challenged statues. But the very absence of such schemes, by "common sense and logic," supports the notion that the statutes promote defendants' interest in preventing such schemes. And in any case, defendants are not required to "adduce[] specific factual evidence that its interests were advanced by the [statutes] or that the expressive activity banned did interfere with the forum's intended use." Id. at 578. Plaintiff cites Washington Post v. McManus, 944 F.3d 506, 521–22 (4th Cir. 2019) to the contrary, but that case involved a tailoring analysis under a different standard of review. See id.

Finally, plaintiff argues that the ban is not capable of "reasoned application" under Mansky because it leaves election officials with discretion to permit "ballot selfies" in some circumstances. This argument fails. The statute at issue in Mansky prohibited all "political" apparel near voting places. The Court held that the statute could not stand because it vested election officials with unlimited discretion to determine whether any given article of apparel was "political," even after noting that restrictions need not be "perfect[ly] [clear] and precise[.]" See Mansky, 585 U.S. at 16–17, 21. Indeed, statutes need not "eliminat[e] all discretion," such discretion need merely be guided "by objective, workable standards." White Coat Waste Project, 35 F.4th at 199.

The statutes here are a far cry from the entirely standardless term "political" in Mansky. The terms "voted ballots" § 163-165.1(e), and "to be seen" § 163-273(a)(1), are objective and readily understood. Likewise, stating "[n]o person shall photograph, videotape, or otherwise record the image of any voter within the voting enclosure," without permission from election officials is a workable standard. N.C. Gen. Stat. § 163-166.3(b).

Further, North Carolina election officials are given much clearer instructions than their Minnesota counterparts in Mansky. North Carolina officials are instructed to maintain "peace and

good order," to prevent attempts to "obstruct, intimidate, or interfere" with voters, and to prevent "riots, violence, tumult, or disorder." N.C. Gen. Stat. § 163-48. The provisions here would be more in line with the vague commands in <u>Mansky</u> if, for example, "photography" or "ballot" lacked objectively ascertainable meanings, and the statutes permitted election officials to decide what those words meant on an ad hoc basis. <u>Cf.</u> <u>Mansky</u>, 585 U.S. at 17.

In sum, defendants' interest in preserving the integrity and order of polling places is so strong it can satisfy strict scrutiny, so it is certainly strong enough to qualify as reasonable under nonpublic forum analysis. And the statutes are reasonable means to achieve that end, because they limit minimal expressive activity relative to defendants' interest just noted, defendants need not produce empirical evidence as plaintiff argues, and the statues are capable of reasoned application. For these reasons, plaintiff's as-applied challenge to the five statutes does not succeed.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (DE 88) is GRANTED. Plaintiff's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (DE 90) is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 9th day of March, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

15